**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL LOUGHRAN & <br> MARGARET LOUGHRAN, <br> On their own behalf and on behalf <br> Of all others similarly situated, <br><br>    Plaintiffs, <br><br>    v. <br><br> WELLS FARGO & COMPANY, <br> WELLS FARGO BANK, N.A. d/b/a <br> WELLS FARGO HOME MORTGAGE, <br> MCCALLA RAYMER LIEBERT PIERCE, LLC, <br> Individually and as Successor in interest to <br> Pierce & Associates, <br> PIERCE & ASSOCIATES, P.C., <br> MAYER BROWN LLP, <br> John Does 1-100. <br><br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br>  Case No: <br><br>  Judge: <br><br><br><br><br>  JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

**NOW COME** the Plaintiffs, Daniel Loughran & Margaret Loughran ("the Loughrans"),

individually and on behalf of all others similarly situated, by and through their attorney, and,

based on personal knowledge as to matters pertaining to Plaintiffs and, upon information and

belief following investigation of counsel as to matters pertaining to the Class, bring this class

action under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), the

Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et. seq.* ("ICFA")

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961-1968, and

for the following other causes of action: common law fraud, civil conspiracy, and intentional

infliction of emotional distress.

1

In furtherance thereof, Plaintiffs allege the following:

## Preliminary Statement

(Numbered Paragraphs resume at page 22 under "Class Common Factual Allegations")

### I. *Abusive & Deceptive Debt Collection Practices*

Wells Fargo Bank engaged in deceptive and unfair collection practices by filing foreclosure actions against its home loan (mortgage) borrowers ("homeowners") in the name of a third party. Wells Fargo Bank filed foreclosure actions against homeowners surreptitiously as the "trustee" identified in the Pooling & Servicing Agreements of its Mortgage-Backed Securities. Wells Fargo Bank then created false affidavits signed by employees of Wells Fargo Bank which misrepresented that the "trustee" was in possession of the original signed promissory notes. Actually, Wells Fargo Bank had possession of the original signed promissory notes. Moreover, Wells Fargo was the proper party entitled to enforce the promissory notes and to whom the homeowners were obligated to repay. Wells Fargo then created "Assignments of Mortgage" ("AOM") from Wells Fargo Bank to the "trustee" and filed the AOM in the local county land records offices and/or filed copies of the AOM in court pleadings, in further support of its false statements that the "trustee" was in possession of the promissory note.

### II. *Wells Fargo's Use of a False Name to Collect its Debts*

The "Trustee" named as Plaintiff in judicial foreclosure cases and/or as the buyer (highest or winning bidder) at an auction in judicial and non-judicial sales was another bank identified as "Trustee" in the pooling and servicing agreements that governed Wells Fargo Bank's Mortgage-Backed Securities. However, the "trustee" named in the pooling and servicing agreements was not a real trustee. The "trustee" named in the pooling and servicing agreements was designated a

"trustee" in the pooling and servicing agreements but the term is a misnomer that Wells Fargo Bank later used to deceive the homeowners and the courts.

Wells Fargo Bank loaned money to the homeowners. Or it might have bought the homeowners' promissory notes (loans) from other lenders. The homeowners' loans were evidenced by signed promissory notes which were secured by mortgages on the borrowers' homes. The secured signed promissory notes were Wells Fargo Bank's assets; hence, the term "Asset-Backed Securities." Wells Fargo Bank pooled those assets into a revocable trust and then sold investors certificates which gave the investors an interest in the income streams generated by the homeowners' monthly payments of principal and interest ("monthly payments").

Wells Fargo Bank was the "custodian" of the secured promissory notes which means that Wells Fargo Bank maintained possession of the secured promissory notes. In most, if not all, cases the original signed promissory notes were made payable to Wells Fargo by the homeowners or special indorsement to Wells Fargo from the original lender, and/or indorsed in blank by Wells Fargo and therefore payable to the holder in possession – i.e., Wells Fargo Bank. Therefore, Wells Fargo Bank, the holder in possession, not the "trustee," maintained legal title to the promissory notes.

Wells Fargo Bank, not the "trustee," administered the trust. Wells Fargo Bank also maintained the right to later "repurchase" or "substitute" the *individual* promissory notes and any REO properties acquired through foreclosure (assets) from the trust after foreclosure was initiated or *all* assets after another designated time and thereby effect an early retirement of all the certificates held by its investors. Wells Fargo Bank serviced the monthly payments made by the homeowners on the secured promissory notes.

The trust containing the promissory notes was governed by New York law regardless of choice of law principles and, therefore, the "trustee" identified in the pooling and servicing agreement, by law, has no fiduciary duties to the certificate holders. Thus, the "trustee" identified in the pooling and servicing agreements is not a trustee according to any legal definition or ordinary meaning commonly ascribed to the term. The actual trustee according to the ordinary meaning of the term is Wells Fargo Bank. In simple terms, Wells Fargo is like the grantor and trustee of a revocable trust and the beneficiaries are the holders of the certificates and Wells Fargo Home Mortgage.

### III. *Wells Fargo Bank's Motives*

Wells Fargo Bank and its foreclosure attorneys used the name of the "trustee" identified in the pooling and servicing agreements as the Plaintiff in foreclosure actions in order to deny that Wells Fargo Bank was the Note Holder and to defeat any affirmative defenses and/or counterclaims that the homeowners might assert against Wells Fargo Bank including, especially, those related to violations of foreclosure mitigation programs like the federal HAMP.

As a result of Wells Fargo Bank's actions, homeowners, after borrowing money from Wells Fargo Bank (their creditor) and making their monthly mortgage payments to Wells Fargo Bank (their servicer), upon default would later get sued by, as far as the least sophisticated consumer or even the average competent lawyer would conclude, a third party – e.g., US Bank, N.A., Deutschebank National Trust, or HSBC Bank – "as Trustee" for a Pooling & Servicing Agreement of a Mortgage-Backed Securities trust. In actuality, Wells Fargo Bank initiated the foreclosure action but directed its foreclosure attorneys to file as Plaintiff in the name of the "trustee" designated in the pooling and servicing agreements. Wells Fargo Bank's outside counsel – i.e., foreclosure attorneys ("debt collectors") and litigation attorneys – knowingly

maintained the façade, thereby conducting an association-in-fact "enterprise" as defined at 18 U.S.C. §1961(4). *Living Designs Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005); Roppo v. Travelers Commercial Ins. Co., 869 F.3d 568, 588 (7th Cir. 2017).*

As a result, the courts and the homeowners and any attorneys defending the homeowners believed that the designated "trustee" named as Plaintiff – e.g., US Bank, Deutschebank National Trust, or HSBC Bank – had legal title to and/or possession of the promissory notes for the benefit of the investors/certificate-holders.[1]

---

[1] For example, in the case of the Plaintiffs, Daniel Loughran & Margaret Loughran, a case in which the foreclosure plaintiff under the guise of the trustee of the Pooling and Servicing Agreement, US Bank, N.A., (*US Bank as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR1, Case Number 2011-CH-373, Grundy County, Illinois*) had previously denied it was Wells Fargo and had named Wells Fargo as a defendant and moved to default Wells Fargo for failure to file an appearance and answer to the foreclosure complaint, the following exchange took place in court:

THE COURT: So US Bank got this through a pooling agreement from Wells Fargo, got this in a bundle, correct?
MR. SMITH: That's not how it works.
MR. CALERO: Pooling and Servicing Agreement with Wells Fargo the servicer.
THE COURT: So, US Bank is the owner. Wells Fargo is the servicer.
MR. SMITH: No, your Honor, it's not. I read the pooling and servicing agreement. It's not what it is.
…
THE COURT: Okay. So plaintiff is US Bank and Wells Fargo. They're both listed in the caption.
MR. CALERO: Correct, Judge.
THE COURT: Okay. And you represent both?
MR. CALERO: Because it's held in a trust – we're the servicer, our client, Wells Fargo, is asking us to file the complaint – we have to file in the name of the trust. …
…
MR. SMITH: Well, can you ask him one question?
THE COURT: Actually, no. We're professionals. Turn and look him in the eye and ask him yourself.
MR. SMITH: Okay. Who did you get the note from? Who's your client? Which one? Wells Fargo or US Bank?
MR. CALERO: Wells Fargo.
MR. SMITH: So Wells Fargo had possession of the note. We have that on the record.
THE COURT: They have.
MR. SMITH: But you got it? Possession came from Wells Fargo, correct?
MR. CALERO: From our client, correct.
MR. SMITH: Do you know when? On what date?
MR. CALERO: Judge, I don't
MR. SMITH: Was it recently?
THE COURT: No. I agree.
MR. CALERO: He's just trying to trap me into a position.
THE COURT: I agree. …

If a homeowner asserted an affirmative defense or counterclaim in their answer to the foreclosure complaint, Wells Fargo Bank's foreclosure attorneys or more often its litigation attorneys would file an additional appearance on behalf of the foreclosure Plaintiff and falsely assert that the promissory note had been negotiated to the "trustee" falsely named as the Plaintiff in the foreclosure action and that the investors/certificate-holders owned the loans and were not liable for any violations committed by Wells Fargo Bank, the Servicer. Such false assertions were made and/or supported by false affidavits signed by Wells Fargo Bank's employees misrepresenting that the "trustee" had possession of the promissory note. The false affidavits would then be transmitted via wire using the internet and/or via the mail in violation of 18 U.S.C. §1343 & 18 U.S.C. § 1341, respectively, as part of a pattern of "racketeering activity." 18 U.S.C. § 1961(1). As a result, homeowners' affirmative defenses and/or counterclaims would be stricken and/or dismissed by the courts so that Wells Fargo Bank under the guise of the "Trustee" identified in its various pooling and servicing agreements with investors could obtain a foreclosure judgment against the homeowners. As a result, the homeowners would lose their homes (and often their litigation costs would increase) as a result of Wells Fargo Bank's and its outside counsels' (foreclosure attorneys' and often litigation attorneys') deception.

**IV. *Wells Fargo's Use of False, Deceptive, and Misleading Representations and Means in Connection with the Collection of Any Debts***

If a homeowner moved to compel the production of the original promissory note, Wells Fargo Bank would provide the original promissory note endorsed in blank to its foreclosure attorneys who would, in turn, present it to the courts to prove that the "trustee" fictitiously identified as the Plaintiff had possession of the note and thereby had standing to file the foreclosure action in the first place. Wells Fargo Bank could then obtain a foreclosure judgment

in the name of the "Trustee." In this way, Wells Fargo Bank was able to violate its HAMP obligations and get away with it.

Sometimes, perhaps, Wells Fargo Bank was not always immediately successful because of shoddy paperwork and a persistent homeowner and a court might rule that the "trustee" named as Plaintiff did not have standing at the time it filed the foreclosure action and the case might have been dismissed without prejudice. But due to the self-concealing nature of the fraud, it was never before evident that Wells Fargo Bank, not the "trustee," had filed the foreclosure action and was still the note holder. In other words, the Plaintiff was Wells Fargo impersonating the "trustee" designated in the PSA, making Wells Fargo Bank a "Debt Collector" for purposes of the Fair Debt Collection Practices Act under the "false name exception." 15 U.S.C. §1692a(6).

Moreover, the "trustee" named in the pooling and servicing agreements was not a trustee according to any legal definition or ordinary meaning commonly and traditionally ascribed to the word "trustee."

Wells Fargo Bank's conduct is a deceptive and unfair practice that violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et. seq.

Wells Fargo Bank is liable under the federal Fair Debt Collection Practices Act for at least one, if not all, of the following four reasons: (i) Wells Fargo regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, *Oppong v. First Union Mortg. Corp.*, 407 F.Supp.2d 658, 666-67 (E.D. Penn 2005)("Wells Fargo is a debt collector under the FDCPA because it frequently and consistently collects or attempts to collect on defaulted loans as a part of its business activities."), *aff'd*, *Oppong v. First Union Mortg Corp.*, 215 Fed. Appx. 114, 119, 2007 U.S. App. LEXIS 1912 at 11 (3rd Cir. 2007)(Unpublished opinion)("However, the District Court was correct to conclude that Wells

Fargo is a debt collector under the FDCPA because it 'regularly' collects debts owed to another."); 15 U.S.C. 1692a(6); and/or (ii) Wells Fargo, in the process of collecting its own debts uses any name other than its own which would indicate that a third person – the "trustee" – is collecting or attempting to collect such debts, *Vincent v. Money Store*, 736 F.3d 88, 104 (2nd Cir. 2013)("false name exception"); 15 U.S.C. 1692a(6); and/or (iii) Wells Fargo is designing, compiling, and furnishing *any* form – i.e., false affidavits and fraudulent assignments of mortgage – knowing that such forms would be used to create the false belief in the homeowners that a person other than Wells Fargo Bank is participating in the collection of the debts owed Wells Fargo Bank, when in fact such person – the "trustee" – is not so participating, *White v. Goodman, 200 F.3d 1016, 1019 (7th Cir.  2000); 15 U.S.C. 1692j*; and/or (iv) vicarious liability as a "debt collector" for the actions of its debt collection lawyers.  *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404 (3rd Cir. 2000)("We believe this is a fair result because an entity that is itself a "debt collector" – and hence subject to the FDCPA – should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.")  **See copy of** *Oppong v First Union Mortg Corp*(3rd Cir. 2007)(Unpublished opinion), attached hereto, pursuant to Federal Rules of Appellate Procedure Rule 32.1(b), as **Exhibit 1**.

## V.  *Statute of Limitations is Equitably Tolled*

The statute of limitations is equitably tolled due to the fraudulent concealment by Wells Fargo Bank.  *In re Lyons*, 130 B.R. 272, 279-80 (Bankr. N.D. Ill 1991).  When active concealment exists, the statute is tolled until there is actual discovery of the fraud.  *Id at 280.*  In such instance, the plaintiff is relieved from his obligation to use due diligence to discover the fraud.  *Id.*  Fraudulent concealment must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action.  *Id.*  Mere silence of the

defendant and failure of the plaintiff to learn of the right of action, alone, are not sufficient. *Id.* *"As a matter of law, a litigant's failure to comply fully and truthfully with discovery requests constitutes fraudulent concealment for purposes of tolling statute of limitations."* *Chicago Park Dist. v. North Western Transp. Co.*, 240 Ill. App. 3d 839, 859 (1st Dist. 1992)(*Citing Ostendorf v. International Harvester Company*, 89 Ill.2d 273, 285 (1982)).

In the case of the class, the plaintiff class is relieved from the obligation to discover the fraud due to the false affidavits and fraudulent AOM created and filed by Wells Fargo in all cases. In the case of the Plaintiff Representatives, it was their hyper-diligence, let alone due diligence, aided by Providence, which discovered and exposed the Defendants' fraud.[2]

**VI.** ***The "Trustee" identified in the Pooling and Servicing Agreement is a Trustee in Name Only While the Actual Trustee of the Revocable Trust is Wells Fargo Bank***

Black's Law Dictionary defines "trustee" as "one who stands in a fiduciary or confidential relation to another; esp., one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary." *Fleming v. Gordon (In re Gordon)*, 491 B.R. 691, 698 (Bankr. D. Md 2013)(*citing* Black's Law Dictionary "trustee" (9th ed. 2009)). Trustees, like attorneys, act on behalf of a party and have a fiduciary duty to that party. *SEC v. Smith*, 710 F.3d 87, 96 (2nd Cir. 2013)(*citing* Black's Law Dictionary "trustee" (9th ed. 2009)).

In *Rienecke v. Smith*, the United States Supreme Court stated:

> A trustee is not subsumed under the designation beneficiary. Both words have a common and accepted meaning; the former signifies the person who holds title to the res and administers it for the benefit of others; the latter the cestui que trust who enjoys the advantages of such administration. The ordinary meaning of the terms, which we are bound

---

[2] "There is a great danger that discovery violations, such as the one in the present case, will remain forever undisclosed. *Not every attorney will be as tenacious, and lucky, in uncovering withheld evidence as plaintiff's attorney in this case."* Campen v. Executive House Hotel, Inc., 105 Ill. App. 3d 576, 585-86 (1st Dist. 1982).

> to adopt (Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560) and the view held by those charged with the enforcement of the [Revenue] Act, ratified by reenactment of the section, alike forbid the adoption of the construction for which the respondents contend.

*Rienecke v. Smith,* 289 U.S. 172, 174-75 (1933)

With regard to language used, common parlance, and phraseology, the United Stated

Supreme Court stated:

> The legislature must be presumed to use words in their known and ordinary signification.  The popular or received import of words furnishes the general rule for the interpretation of public laws.  [Citations omitted.]  As was said in <u>Lynch v. Alworth Stephens Co.</u>, 267 U.S. 364, 370, "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover."

*Old Colony R. Co. v. Commissioner*, 284 U.S. 552 560 (1932).

In *Maillard v. Lawrence*, the United States Supreme Court stated:

> The popular or received import of words furnishes the general rule for the interpretation of public laws *as well as of private and social transactions*; and wherever the legislature adopts such language in order to define and promulgate their action or their will, the just conclusion from such a course must be, that they not only themselves comprehended the meaning of the language they have selected, but have chosen it with reference to the known apprehension of those to whom the legislative language is addressed, and for whom it is designed to constitute a rule of conduct, namely the community at large.

*Maillard v. Lawrence*, 57 U.S. 251, 261 (1854)(Emphasis added).

The court in *In re Lake Region Operating Corp.,* stated:

> Black's Law Dictionary defines "trustee" as a person holding property in trust.  Restatement, Second, Trusts, §3(3).
>> The person appointed, or required by law, to execute a trust.  One in whom an estate, interest, or power is vested, under an express or implied agreement to administer or exercise it for the benefit or to the use of another.  One who holds legal title to property "in trust" for the benefit of another person (beneficiary) and who must carry out specific duties with

> regard to the property. The trustee owes a fiduciary duty to the beneficiary. *Reinecke v. Smith, 289 U.S. 172, 53 S. Ct. 570, 77 L. Ed. 1109. Black's Law Dictionary* 1514 (6th ed. 1990)

*In re Lake Region Operating Corp.,* 209 B.R. 637, 639 (Bankr. M.D. Pa. 1997)

Regardless of the definition of the word "trustee" as it is commonly understood, the "Trustee" identified in the Pooling and Servicing Agreement for a Mortgage-Backed Securities trust created by Wells Fargo Asset Securities Corporation (a wholly owned subsidiary of Wells Fargo Bank) (i) <u>does not</u> have legal title to the secured promissory notes; (ii) <u>does not</u> hold the secured promissory notes for the benefit of the investors/certificate-holders; (iii) <u>does not</u> owe any fiduciary duties to the investors/certificate-holders; and (iv) <u>does not</u> administer the trust.

Pursuant to the Pooling and Servicing Agreement at Section 3.08:

> The relationship of the Master Servicer [Wells Fargo Bank] to the Trustee under this Agreement is intended by the parties to be that of an independent contractor and not that of a joint venture, partner or agent.

> The Master Servicer [Wells Fargo Bank] shall administer the Trust Estate on behalf of the Trustee and shall have full power and authority, acting alone or (subject to the requirements of Section 6.06) through one or more Subcontractors, to do any and all things in connection with such administration which it may deem necessary or desirable. Upon the execution and delivery of this Agreement, and from time to time as may be required thereafter, the Trustee shall furnish the Master Servicer or its Subcontractors with any powers of attorney and such other documents as may be necessary or appropriate to enable the Master Servicer to carry out its administrative duties hereunder.

Pursuant to the Pooling and Servicing Agreement at Section 2.02:

> Subject to the provisions of the following paragraph, pursuant to the Custodial Agreement, the Custodian [Wells Fargo Bank], on behalf of the Trustee, will declare that it holds and will hold the documents delivered to it pursuant to Section 2.01(a) above ["original Mortgage Note either (A) endorsed in blank or (B) endorsed as provided in Section 2.01(d)"] and the other documents constituting a part of the Owner Mortgage Loan Files or Retained Mortgage Loan Files (after the occurrence of a Document Transfer Event) delivered to it in trust, upon the trusts herein set forth, for the use and benefit of all present and future Certificateholders.

Pursuant to the Pooling and Servicing Agreement at Section 10.04:

**Section 10.04  Governing Law; Jurisdiction.**

This Agreement shall be construed in accordance with the laws of the State of New York (without regard to conflict of laws principles), and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Pursuant to the Pooling and Servicing Agreement's definitions, "Trust" is defined as follows:  "Trust:  The New York common law trust created by this Agreement."

Since the Pooling and Servicing Agreement creates a New York common law trust and is governed by New York law, courts interpreting the New York law have described the role of the "Trustee" in a PSA as follows:

The duties of an RMBS [Residential Mortgage Backed Securities] trustee are 'distinct from those of an 'ordinary trustee,' which might have duties extending well beyond the agreement.  In contrast, 'the duties of an indenture trustee … are governed solely by the terms of the indenture.' This is true regardless of whether the trust is an indenture trust or a PSA.

*Blackrock Allocation Target Shares, Series S Portfolio v. Wells Fargo Bank*, 247 F. Supp. 3d 377, 385 (S.D.NY 2017) (Internal citations omitted.)

The indenture trustee was not liable to the bondholders, however, because the corporate trustee has very little in common with an ordinary trustee, as we generally understand the fiduciary relationship … The trustee under a corporate indenture … has his rights and duties defined, not by a fiduciary relationship, but exclusively by the terms of the agreement.  His status is more that of a stakeholder than one of a trustee.

*In re E.F. Hutton Southwest Properties II, Ltd.*, 953 F.2d 963, 969 (5th Cir. 1992)(*citing Hazzard v. Chase National Bank*, 287 N.Y.S. 541, 566-67 (Sup. Ct. 1936), aff'd mem., 14 N.Y.S. 2d 147 (1st Dist. 1939), aff'd mem., 282 N.Y. 652 (1940), cert. denied, 311 U.S. 708 (1940).)

In sum, the "Trustee" in the Pooling and Servicing Agreement that Wells Fargo Bank impersonated when it filed the foreclosure actions against the homeowners does not meet any of the definitional requirements for the term "trustee" found in Black's Law Dictionary or the

meaning commonly understood by courts of law – from the United States Supreme Court all the way down to the local county courts. Nevertheless, or perhaps for this reason, Wells Fargo Bank filed foreclosure actions against its homeowner borrowers in the name of the "Trustee" identified in its Pooling and Servicing Agreements and filed false affidavits signed by Wells Fargo Bank employees stating that the "Trustee" had possession of the secured promissory notes. They also purchased the REO properties at non-judicial sales in the name of the "trustee" to, once again, further their scheme to deceive the homeowners and courts. The foregoing acts are in violation of 15 U.S.C. 1692e(10),(12) & (14).

In the Prospectus Supplement at page S-26 for the Wells Fargo Mortgage-Backed Securities Trust, Series 2006-AR1, for example, it plainly states:

### ROLES OF WELLS FARGO BANK

As discussed herein, Wells Fargo Bank is the Sponsor and will act as the Custodian, the Master Servicer, the Paying Agent and the Servicer with respect to the Mortgage Loans. Even though Wells Fargo Bank will be acting in these multiple capacities, it is expected that with respect to the functions of Master Servicer, Paying Agent and Custodian, on the one hand, and Servicer, on the other, different divisions of Wells Fargo Bank, acting through different personnel, will be performing these functions.

In the Prospectus Supplement at page S-50 for the Wells Fargo Mortgage-Backed Securities Trust, Series 2006-AR1, for example, it plainly states:

### Optional Termination of the Trust

The Depositor [Wells Fargo Asset Securities Corporation] may, subject to certain conditions including the then-remaining size of the pool, purchase all outstanding mortgage loans in the pool and thereby effect early retirement of the certificates. See "The pooling and Servicing Agreement – Optional Termination; Optional Purchase of Mortgage Loans" in the Prospectus. The exercise of this option will be in the Depositor's sole discretion. Without limitation, the Depositor may enter into agreements with third parties to (i) exercise such option at the direction of a third party or (ii) forbear from the exercise of such option.

Also, in the Pooling & Servicing Agreement at Section 3.08, Wells Fargo has an unqualified right to "repurchase" any individual mortgage borrower's mortgage loan (note and corresponding mortgage) for a set period of time after (i) initiation of foreclosure proceedings; (ii) acquiring possession of the mortgaged property after judicial sale ("REO") or (iii) Servicer [Wells Fargo] accepts a contractual commitment from a third-party to purchase the mortgaged property.

**VII.** ***The "Trustee" Identified in the Pooling & Servicing Agreements and Impersonated By Wells Fargo Bank in the Foreclosure Actions is Not "In Privity" with Wells Fargo Bank***

A nonparty (e.g., Wells Fargo Bank) may be bound under privity if that nonparty's interests are so closely aligned to those of a party that the party is the virtual representative of that nonparty. *Purmal v. Robert M. Waddington & Assocs.*, 354 Ill. App. 3d 715, 723 (1st Dist. 2004). A bank, in its capacity as trustee, is distinct from a bank acting in its individual capacity. *Zadrajcek v. M.E.R.S.*, 2017 US Dist. LEXIS 127110 at 12 (N.D. Ohio). Therefore, the bank (e.g., US Bank, Deutschebank, or HSBC Bank) falsely designated by Wells Fargo Bank as the Plaintiff "as trustee" for a Pooling & Servicing Agreement of a Wells Fargo Mortgage-Backed Securities Trust, is not in privity with Wells Fargo Bank – the Master Servicer from whom the "trustee" is obligated to protect the certificate-holders if, and only if, there is an "event of default" that, after notice, goes uncured. So, any claims by Wells Fargo Bank – the actual holder in possession of the original signed promissory notes entitled to enforce such promissory note – to be in privity with the "Trustee" falsely named as Plaintiff are false. So, when confronted with the truth of its own deception, any claim by Wells Fargo, as a defense, to be "in privity" with the "Trustee" is false.

Therefore, Wells Fargo Bank's foreclosure attorneys were and are purporting to represent the 'trustee' for the investors/certificate-holders when actually they were and are representing

Wells Fargo Bank, whose interests are adverse to the investors/certificate-holders.  Every cost of foreclosure, including escrow advances of insurance and property taxes paid by Wells Fargo Bank, as servicer, throughout protracted litigation, and *its attorney fees*, were and will be deducted from the Certificate Accounts or other such accounts from which the investors/certificate-holders otherwise would be paid.  And if there's any sizeable equity in the mortgaged property, Wells Fargo has the right, pursuant to Section 3.08, to "repurchase" the loan (i) after initiation of foreclosure proceedings, (ii) after acquiring possession of the mortgaged property after judicial sale ("REO"), or (iii) after Servicer [Wells Fargo] accepts a contractual commitment from a third-party to purchase the mortgaged property. – thus, relegating the investors/certificate-holders to only those loans that will sustain a loss.

These are the very same certificate-holders that Wells Fargo's foreclosure attorneys are falsely claiming to represent via the "trustee" falsely named as the Plaintiff in foreclosure actions filed against the homeowners.  In this way, Wells Fargo's foreclosure attorneys were and are engaged in self-dealing.  *De Korwn v. First National Bank*, 155 F. Supp. 302 (N.D. Ill. 1957) ("Attorneys are prohibited from representing adverse litigants at the same time, and an attorney may not recover for legal services where he has represented adverse, conflicting and antagonistic interests in the same litigations.")(*quoting* Illinois Law and Practice, vol. 4, Attorneys and Counselors, sec. 85, p. 103); *See also In re Estate of Halas*, 159 Ill. App. 3d 818, 831 (1st Dist. 1987).

The United States Supreme Court, cited and quoted in *De Korwin* stated: "Furthermore, 'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act."  *Woods v. City National Bank & Trust Co. of Chicago*, 312 US 262, 268 (1941).  "Where an actual conflict of interest

15

exists, no more need be shown in this type of case to support a denial of compensation." *Id.* Since Wells Fargo's foreclosure attorneys may not recover for legal services where they have represented adverse, conflicting, and antagonistic interests in the same litigation, all of the attorney fees incurred by the homeowners as part of the foreclosure judgments entered against the homeowners are additional damages that, at a minimum, should be awarded to the Class and which, in many cases (where, e.g., no deficiency judgment entered against, or collected from, a consumer borrower), may constitute a constructive trust for the investors/certificate-holders who ultimately incurred those costs.

### VIII. *Wells Fargo and its Foreclosure Attorneys Engaged in Mass Fraud Upon the Courts*

Manufacturing evidence favorable to a plaintiff, or concealing evidence favorable to a defendant, and the concealment of the scheme would constitute fraud on the court. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶78. A trial court would lack subject matter jurisdiction where there was fraud upon the court. *Id.*

"It is axiomatic that fraud vitiates everything. Lack of jurisdiction over the subject matter can be raised at any time, even after judgment, and it is not waived by failure to object in proper time." *Green v. Lawrence (In re Annex Certain Terr.)*, 37 Ill. App. 2d 393, 402 (2nd Dist. 1962).

This is not a situation of a party hiring an attorney and filing a lawsuit in which the party does not have standing. This is a situation of a nonparty (Wells Fargo Bank) hiring an attorney and telling the attorney to file the lawsuit in the name of a third party ("Trustee" in Pooling & Servicing Agreement) and the attorney colluding with the nonparty (Wells Fargo Bank) and knowingly filing false affidavits stating that the third party ("Trustee" in Pooling & Servicing Agreement), based on facts falsely sworn in the affidavit, has standing. In this case, the facts falsely sworn in the affidavits are that the third party ("Trustee" in Pooling & Servicing

Agreement) has possession of the original signed promissory notes and is, therefore, the holder of the indebtedness with standing to file the foreclosure action.

So, while lack of standing of a plaintiff can be waived if not raised in the defendant's initial pleading, *Bank of America v. Iordanov*, 2018 IL App (1st) 152656, ¶34, fraud on the court cannot be waived when a nonparty impersonates a third party with the assistance of its attorney. "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *H.K. Porter Co. v. Goodyear Tire Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976); *Kupferman v. Consolidated Research*, 459 F.2d 1072, 1078 (2nd Cir. 1972). "Fraud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court. Furthermore, it must involve an **unconscionable plan or scheme** which is designed to improperly influence the court in its decision." *Pumphrey v. KW Thompson Tool Co*, 62 F.3d 1128, 1131 (9th Cir. 1995)(Emphasis added.)

"Perjured testimony by a witness or party does not alone constitute fraud upon the court. For such conduct to constitute fraud upon the court, at a minimum, an attorney must also be involved in the fraud." *Sampson v Marovitz*, 1988 U.S. Dist. LEXIS 12566, *3(N.D. Ill 1988)

"The power of a court to grant the relief requested in a given case, and hence its *subject matter jurisdiction*, is limited by the doctrine of standing. Under this doctrine, a person seeking to invoke the jurisdiction of the court must have some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." *Jenner v Wissore*, 164 Ill. App. 3d 259, 266-67 (5th Dist. 1988)

Under Illinois law, to foreclose on property, a mortgagee has to be the holder of the indebtedness under 735 ILCS 5/15-1208, and to be a holder the mortgagee has to be in

possession of the mortgage note under 810 ILCS 5/ 1-201(b)(21)(A). *Cogswell v. Citifinancial Mortg. Co.*, 624 F.3d 395, 397 (7th Cir. 2010).

## NATURE OF THE ACTION

1.     This Class Action is against Wells Fargo and its outside counsel – i.e., foreclosure attorneys ("debt collectors") and litigation attorneys. Plaintiff seeks recovery for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et. seq.*, the Illinois Consumer Fraud & Deceptive Business Practices Act ("ICFA"), 815 ILCS 505 *et. seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961-1968, common law fraud, civil conspiracy, and intentional infliction of emotional distress.

2.     Wells Fargo, in collusion and conspiracy with its foreclosure attorneys, filed the foreclosure actions using the name of a third person in violation of 15 U.S.C. 1692e(14) which prohibits the use of false or misleading representations in the collection of debts and specifically prohibits "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization," and 815 ILCS 505/2 which prohibits "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." Wells Fargo Bank's outside counsel – i.e., foreclosure attorneys ("debt collectors") and litigation attorneys – knowingly maintained the façade in a scheme to defraud the homeowners and the courts, and continue to do so, thereby conducting an association-in-fact "enterprise" as defined at 18 U.S.C. §1961(4), through a pattern of racketeering using the mail and wires (via the telephone and internet) for the purpose of executing or attempting to further their scheme to defraud. *Living Designs Inc. v. E.I.*

*DuPont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005); Roppo v. Travelers Commercial Ins. Co., 869 F.3d 568, 588 (7th Cir. 2017).*

3.      Wells Fargo's motive was to avoid the legal consequences of its violations of HAMP guidelines and supplemental directives and/or to prevent its mortgage borrowers from asserting affirmative defenses and/or counterclaims that its mortgage borrowers would otherwise be able to assert against Wells Fargo Bank, as Servicer and Note Holder, if Wells Fargo had been accurately and honestly named as Plaintiff.

4.      Wells Fargo also intentionally misrepresented to homeowners applying for a HAMP affordable modification that Wells Fargo was not the owner of the secured promissory notes ("loans") when Wells Fargo was still the owner of the secured promissory notes.  Wells Fargo did this by falsely claiming to the homeowners that it serviced the loans on behalf of "*your* investor" when it serviced the loans on behalf of *Wells Fargo's* investors.  Wells Fargo's investors paid for the right to receive a portion of the income stream generated by the homeowners' payments of principal and interest in repayment of the loans minus the income received by Wells Fargo Home Mortgage as the Master Servicer and/or Servicer of the loans. Wells Fargo did this in order to deny HAMP affordable modifications to eligible homeowners based on a pretext when Wells Fargo was actually engaging in self-dealing in order to maximize its profit either through improper foreclosure or offering to the otherwise HAMP-eligible homeowners non-HAMP in-house modifications instead of HAMP affordable modifications.  In doing so, Wells Fargo violated the FDCPA §1692e(12) by falsely representing or implying that accounts have been turned over to innocent purchasers for value.  This in turn is a violation of the ICFA which incorporates the FTC Act (15 U.S.C. §45) and the FDCPA at 15 U.S.C. §1692l(a) deems a violation of the FDCPA an unfair and deceptive act or practice in violation of

the FTC Act. So, the Defendants' violations of the FDCPA is a per se violation of the Illinois

Consumer Fraud Act, (810 ILCS 505/2).

## PARTIES

### *The Loughrans*

5.      Plaintiffs, Daniel Loughran and Margaret Loughran, are natural persons who reside in

Channahon, Illinois, as husband and wife. The Loughrans are consumers under the FDCPA and

ICFA and the mortgage loan transaction with Wells Fargo Bank was for the financing of the

building of their family residence and, therefore, for personal, family, and household purposes.

### *Wells Fargo*

6.      Defendant Wells Fargo & Company is a diversified financial services company. It is a

Delaware corporation, headquartered in San Francisco, California. Defendant Wells Fargo

Bank, N.A. is a national banking association and a subsidiary of Wells Fargo & Company.

Collectively the two defendants identified in this paragraph are referred to here as "Wells

Fargo." The business of Wells Fargo and its subsidiaries and affiliates includes the origination

and servicing of mortgage loans, as well as the servicing of loans it acquires that were originated

by other lenders, including loans already defaulted when acquired by Wells Fargo. Wells Fargo

does business in Illinois. It does business in Cook County and elsewhere.

### *McCalla Raymer Liebert Pierce, LLC*

7.      Defendant, McCalla Raymer Liebert Pierce, is a law firm organized as a Georgia limited

liability company. It is registered and authorized to do business in Illinois and has offices at 1

North Dearborn Street, Suite 1200, Chicago, Illinois 60602. It does business in Cook County

and elsewhere.

8.      Defendant McCalla Raymer Liebert Pierce, LLC is engaged in the business of collecting

debts, including particularly residential loans, owed to others. Defendant McCalla Raymer

Liebert Pierce, LLC represents on its web site that "McCalla Raymer Leibert Pierce, LLC's Foreclosure & Title Clearance Department handles both judicial and non-judicial foreclosures in the states of Alabama, California, Connecticut, Florida, Georgia, Illinois, Mississippi, Nevada, New Jersey, and New York." (http://www.mccalla.com/practice-areas/residential-default-lender.html#Foreclosure)

9.     Defendant McCalla Raymer Liebert Pierce, LLC uses the mails and telephone system in conducting its business.

10.     Defendant McCalla Raymer Liebert Pierce, LLC is a "debt collector" as defined in the FDCPA.

11.     Defendant McCalla Raymer Liebert Pierce, LLC filed a substitute attorney appearance for Pierce & Associates, P.C., on September 17, 2017, in the underlying foreclosure action after the law firms "combined"  and these two firms will herein be referred to collectively as "McCalla Raymer Liebert Pierce" or "Pierce Defendants."

*Pierce & Associates, P.C.*

12.     Defendant, Pierce & Associates, P.C., upon information and belief, merged or "combined" with McCalla Raymer Liebert Pierce LLC, who substituted its appearance for Pierce & Associates on September 20, 2017, in the foreclosure action against the Plaintiffs, Daniel Loughran and Margaret Loughran.

13.     Defendant, Pierce & Associates, P.C., was or is engaged in the business of collecting debts, including particularly residential loans, owed to others.  It does or did business in Cook County, Illinois and elsewhere.

14.     Defendant, Pierce & Associates, P.C. used the mails and telephone system in conducting its business.

21

15.     Defendant, Pierce & Associates, P.C. is or was a "debt collector" as defined in the FDCPA.

*Mayer Brown LLP*

16.     Defendant, Mayer Brown LLP ("Mayer Brown") is a limited liability partnership and law firm established under the laws of Illinois.  Mayer Brown has its headquarters and principal place of business at 71 S. Wacker Drive, Chicago, Illinois 60606.  It does business in Cook County and elsewhere.

**VENUE AND JURISDICTION**

17.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 and 15 U.S.C. 1692k(d).

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965.

**CLASS COMMON FACTUAL ALLEGATIONS - FORECLOSURE**

19.     Upon filing a foreclosure action, Wells Fargo used the name of the "Trustee" named in the Pooling and Servicing Agreement ("PSA") for the Mortgage-backed Securities (MBS) trust to which the mortgage borrower's loan – unbeknownst to the mortgage borrowers and otherwise inconsequential to the terms of the corresponding promissory notes and mortgages – had been internally assigned.  In doing so, Wells Fargo violated 15 U.S.C. 1692e(12) which prohibits the use of false or misleading representations in the collection of debts and specifically prohibits "the false representation or implication that accounts have been turned over to innocent purchasers for value," and 15 U.S.C. 1692e(14) which specifically prohibits "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

20.     Wells Fargo and its foreclosure attorney created the deception that it had irrevocably sold the mortgage borrowers' loans to the trust and that the "Trustee" held the notes in trust for the

investors.  In reality, the "Trustee" named in the PSA is not an ordinary trustee with possession

of the notes or fiduciary duties to the investors; but rather, as permitted under the law of New

York which governs the PSA, the "Trustee" does not possess or hold title to any assets, including

the notes, and does not have any fiduciary duties to the investors.

21.    In fact, Wells Fargo, rather than the "Trustee," has possession of the secured promissory

notes pursuant to the Pooling and Servicing Agreement at Section 2.02:

> Subject to the provisions of the following paragraph, pursuant to the
> Custodial Agreement, the Custodian [Wells Fargo Bank], on behalf of the
> Trustee, will declare that it holds and will hold the documents delivered to
> it pursuant to Section 2.01(a) above ["original Mortgage Note either (A)
> endorsed in blank or (B) endorsed as provided in Section 2.01(d)"] and the
> other documents constituting a part of the Owner Mortgage Loan Files or
> Retained Mortgage Loan Files (after the occurrence of a Document
> Transfer Event) delivered to it in trust, upon the trusts herein set forth, for
> the use and benefit of all present and future Certificateholders.

22.    In the Prospectus Supplement at page S-50 for the Wells Fargo Mortgage-Backed

Securities Trust, Series 2006-AR1, for example, it plainly states:

> **Optional Termination of the Trust**
>
> The Depositor [Wells Fargo Asset Securities Corporation] may, subject to
> certain conditions including the then-remaining size of the pool, purchase
> all outstanding mortgage loans in the pool and thereby effect early
> retirement of the certificates.  See "The pooling and Servicing Agreement
> – Optional Termination; Optional Purchase of Mortgage Loans" in the
> Prospectus.  The exercise of this option will be in the Depositor's sole
> discretion.  Without limitation, the Depositor may enter into agreements
> with third parties to (i) exercise such option at the direction of a third party
> or (ii) forbear from the exercise of such option.

23.    Moreover, pursuant to Section 3.08 of the PSA, Wells Fargo has an unqualified right to

"repurchase" any individual mortgage borrower's mortgage loan (note and corresponding

mortgage) for a set period of time after (i) initiation of foreclosure proceedings; (ii) acquiring

possession of the mortgaged property after judicial sale ("REO") or (iii) Servicer [Wells Fargo]

accepts a contractual commitment from a third-party to purchase the mortgaged property.

24.   Wells Fargo is liable under the FDCPA pursuant to 15 U.S.C. §1692a(6) which states:

> (6) The term "debt collector" means any person who uses any instrumentality
> of interstate commerce or the mails in any business the principal purpose of
> which is the collection of any debts, or who *regularly collects or attempts to
> collect, directly or indirectly, debts owed or due or asserted to be owed or due
> another.* Notwithstanding the exclusion provided by clause (F) of the last
> sentence of this paragraph, *the term includes any creditor who, in the process
> of collecting his own debts, uses any name other than his own which would
> indicate that a third person is collecting or attempting to collect such debts.*
> For the purpose of section 1692f(6) of this title, such term also includes any
> person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the enforcement of security
> interests.

15 U.S.C. 1692a(6)(Emphasis added.)

25.   Wells Fargo is liable under the FDCPA pursuant to 15 U.S.C. §1692j which states:

> **Furnishing certain deceptive forms**
>
> (a) It is unlawful to design, compile, and furnish any form knowing that such
> form would be used to create the false belief in a consumer that a person other
> than the creditor of such consumer is participating in the collection of or in an
> attempt to collect a debt such consumer allegedly owes such creditor, when in
> fact such person is not so participating.
>
> (b) *Any person who violates this section shall be liable to the same extent and
> in the same manner as a debt collector is liable under section 1692k of this
> title for failure to comply with a provision of this subchapter.*

15 U.S.C. 1692j (Emphasis added).

26.   Wells Fargo violated sections 1692e (10), (12), and (14) in particular.

27.   Defendants violated section 1692j by furnishing certain deceptive forms, including false

affidavits which it filed in State court foreclosure proceedings and "Assignment(s) of Mortgage"

which it filed in land records offices such as county recorders of deeds, or, without filing in land

records offices, simply used to attach to complaints and/or attach to motions or other pleadings in the foreclosure litigation.

28.     Defendants are equitably estopped from asserting the statute of limitations as a defense based on fraudulent concealment.

29.     Where a plaintiff successfully invokes equitable estoppel it gets the full statutory period to sue, starting from the time that it had enough information to bring suit. *Johnson Controls Inc. v. Exide Corp.*, 129 F. Supp. 1137, 1144 (N.D. Ill 2001)

30.     Furthermore, in Illinois, a Plaintiff's cause of action is tolled for 5 years after discovery where the Defendant has fraudulently concealed the cause of action from the Plaintiffs, pursuant to 735 ILCS 5/13-215.

31.     When there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him. *In re Lyons,* 130 B.R. 272, 279 (Bankr. N.D. Ill. 1991).

32.     The Supreme Court subsequently universalized the doctrine of equitable tolling in *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946), when it stated that it is "read into every federal statute of limitations."

33.     Wells Fargo and its foreclosure attorneys fraudulently concealed the Plaintiff Class's cause of action where: (i) the violation that created the cause of action is self-concealing by filing in the name of a corporate "trustee" as fictitious Plaintiff; (ii) they filed false affidavits claiming that the "Trustee" fictitiously named as Plaintiff had possession of the promissory notes; and (iii) if and when compelled by a Court to produce the original promissory note, Wells Fargo

produced the original promissory note through foreclosure attorneys and omitted the material

fact that the original promissory note came <u>not</u> from the "Trustee" fictitiously named as Plaintiff

(e.g., US Bank) but came directly from Wells Fargo.

34.     Mortgage-backed securities ("MBS") are investments that are
secured by mortgages.  They're a type of asset-backed security.  A security is
an investment that is traded on a secondary market.  It allows investors to
benefit from the mortgage business without ever having to buy or sell an
actual home loan.  Typical buyers of these securities include institutional,
corporate or individual investors.

When you invest in an MBS, you are buying the rights to receive the value of
a bundle of mortgages.  That includes the monthly payments and the
repayment of the principal.  Since it is a security, you can buy just a part of
the mortgage.  You receive an equivalent portion of the payments.  An MBS is
a derivative because it derives its value from the underlying asset.

How A Mortgage-backed Security Works

First, a bank or mortgage company makes a home loan.  The bank then sells
that loan to an investment bank.  It uses the money received from the
investment bank to make new loans.

The investment bank adds the loan to a bundle of mortgages with similar
interest rates.  It puts the bundle in a special company designed for that
purpose.  It's called a Special Purpose Vehicle or Special Investment Vehicle.
That keeps the mortgage-backed securities separate from the bank's other
services.  The SPV markets the mortgage-backed securities.  The mortgages
stay in the SPV.
...

Types of Mortgage-backed Securities

The simplest MBS is the pass-through participation certificate.  It pays the
holders their fair share of both principal and interest payments made on the
mortgage bundle.[3]

---

[3] Kimberly Amadeo, MORTGAGE-BACKED SECURITIES, THEIR TYPES, AND HOW THEY WORK (HOW
MORTGAGE-BACKED SECURITIES WORKED UNTIL THEY DIDN'T), THE BALANCE  (2018),
https://www.thebalance.com/mortgage-backed-securities-types-how-they-work-3305947 (last visited Jan
27, 2019).

35.     Wells Fargo Bank originated the borrowers' residential mortgage loan.  The loan is evidenced by the promissory note ("Note") and the mortgage agreement ("Mortgage").

36.     Wells Fargo Bank remained the holder of the Note with the right to enforce the Note.

¶       Unbeknownst to the borrowers and of no legal consequence to the borrowers' obligation to pay back the loan to Wells Fargo Bank, Wells Fargo Bank sold to "investors," not the Note but, rights to payments from the stream of income generated by the borrowers' payments on the Note.

37.     Wells Fargo is legally entitled to payment of principal & interest promised by the borrowers who signed the promissory notes.

38.     While Wells Fargo has the right to transfer the promissory notes via negotiation, it never did so; instead, it merely falsely claimed to do so, in violation of 15 U.S.C. 1692e, 815 ILCS 505/2, and it falsely claimed to do so with the knowing aid of its foreclosure attorneys using false affidavits and assignments of mortgage in a scheme to defraud the courts and the borrowers for profit using the mail and wires in violations of 18 U.S.C. 1961-1968.

39.     Wells Fargo maintained possession of the promissory notes and had a right to "repurchase" the promissory notes, "substitute" the promissory notes, or terminate the trust and thereby effect early retirement of the Certificates.

40.     The investors receive pass-through participation certificates from Wells Fargo.  Hence, the investors are referred to as "Certificate Holders."

41.     None of the Certificate Holders own rights to any particular borrower's payments specifically.  Rather, each certificate within the same class represents a specific percentage of the undivided whole of the pool of loans.

42.     The pool of loans is not fixed but can be "repurchased" or "substituted" by Wells Fargo at its option.

43.     The Loughrans' mortgage loan, for example, allegedly is one of many and part of a pool of loans that are all governed by a single Pooling & Servicing Agreement ("PSA") for Wells Fargo Asset Securities Corporation Mortgage Backed Pass-Through Certificates, Series 2006-AR1.

44.     In the PSA, a "Trustee" is named but has limited duties to protect the interests of the investors (a/k/a "certificate holders") from Wells Fargo Bank, as "Master Servicer."

45.     The term "Trustee" in the PSA is a misnomer because the "Trustee" does not hold title to any property and does not possess the promissory notes.  The "Trustee" also does not owe any fiduciary duties to the certificate holders unless and until there is an "Event of Default" by the Master Servicer, Wells Fargo Bank, and then only after notice to Wells Fargo Bank and, then again, only after Wells Fargo's Bank's failure to remedy the Event of Default within sixty days. (See §§7.01-7.05 et seq. of PSA for WFMBS 2006-AR1.)

46.     The PSA is a New York common law trust and is governed by New York law and courts interpreting the New York law have described the role of the "Trustee" in a PSA as follows:

> The duties of an RMBS [Residential Mortgage Backed Securities] trustee
> are 'distinct from those of an 'ordinary trustee,' which might have duties
> extending well beyond the agreement.  In contrast, 'the duties of an
> indenture trustee … are governed solely by the terms of the indenture.'
> This is true regardless of whether the trust is an indenture trust or a PSA.

*Blackrock Allocation Target Shares, Series S Portfolio v. Wells Fargo Bank*, 247 F. Supp. 3d 377, 385 (S.D.NY 2017) (Internal citations omitted.)

> The indenture trustee was not liable to the bondholders, however, because
> the corporate trustee has very little in common with an ordinary trustee, as
> we generally understand the fiduciary relationship … The trustee under a
> corporate indenture … has his rights and duties defined, not by a fiduciary

relationship, but exclusively by the terms of the agreement. His status is
more that of a stakeholder than one of a trustee.

*In re E.F. Hutton Southwest Properties II, Ltd.*, 953 F.2d 963, 969 (5th Cir. 1992)(*citing Hazzard
v. Chase National Bank*, 287 N.Y.S. 541, 566-67 (Sup. Ct. 1936), aff'd mem., 14 N.Y.S. 2d 147
(1st Dist. 1939), aff'd mem., 282 N.Y. 652 (1940), cert. denied, 311 U.S. 708 (1940).)

47.     In the PSA, the duty of servicing the loans is on the "Servicer" named in the PSA and if a

borrower defaults on a mortgage loan, the Servicer has the duty to modify the loan or foreclose.

48.     Mortgage servicers are responsible for servicing loan payments and, unlike this case, are

not always the originator or the holder of the promissory notes.

49.     The foregoing distinction is crucial because, for example, the Consent Judgment entered

into by Wells Fargo with the United States Dept. of Justice and 49 States' Attorneys General on

April 4, 2012, contains the Federal Release at Exhibit F of the Consent Judgment and in it states:

> (11)     Notwithstanding any other term of this Release, the following
> claims of the United States are specifically reserved and are not released:
> …
>     (e)     Any and all claims whether legal or equitable, in connection with
> investors … in the context of a mortgage securitization or whole loan sale to
> such entities ("Securitization/Investment Claims"). Securitization/Investment
> Claims include, but are not limited to, claims based on the following, all in
> connection with investors … or in connection with a sale, transfer, or
> assignment of any interest in loan, mortgage or security to, into, or for the
> benefit of a mortgage-backed security, trust, special purpose entity, financial
> institution, investor, or other entity:
> …
>     (xi)     Covered Servicing Conduct to the extent the COMPANY
> [Wells Fargo & Company] or any affiliated entity engaged in the Covered
> Servicing Conduct in question not in its capacity as servicer, subservicer
> or master servicer, but in its capacity as the **originator** of a mortgage loan
> or as seller, **depositor**, guarantor, sponsor, securitization trustee, securities
> underwriter, document **custodian** or any other capacity.

(See pages F29 to F32 of Consent Judgment (Exhibit F) at
https://www.justice.gov/sites/default/files/opa/legacy/2012/03/12/wellsfargo-consent-
judgement.pdf) (Emphasis added.) (Website link *last visited* February 1, 2019.)

50.   Wells Fargo is the **originator** of the Loughrans' mortgage loan and also the **Depositor** and document **Custodian** in the PSA for the Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-AR1.

51.   When the Federal government enacted the Emergency Economic Stabilization Act of 2008 and the Home Affordable Modification Program ("HAMP"), it required that mortgage servicers that participated in the HAMP program sign a "Servicer Participation Agreement" ("SPA") and in the SPA made provision for holders of mortgage-backed securities, i.e. "investors."  For example, the SPA states:

### 2. Authority and Agreement to Participate in the Program

A.  Servicer shall perform the ["loan modification and other foreclosure prevention"] Services for all mortgage loans that its [sic] services, whether it services such mortgage loans for its own account or for the account of another party, including any holders of mortgage-backed securities (each such other party, an "<u>investor</u>"),  Servicer shall use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consents and waivers that are required, by contract or law, in order to effectuate any modification of a mortgage loan under the Program.

B.  Notwithstanding subsection A., if (x) Servicer is unable to obtain all necessary consents and waivers for modifying a mortgage loan, or (y) the pooling and servicing agreement or other similar servicing contract governing Servicer's servicing of a mortgage loan prohibits Servicer from performing the Services for that mortgage loan, Servicer shall not be required to perform the Services with respect to that mortgage loan and shall not receive all or any portion of the Purchase Price (as defined below) otherwise payable with respect to such loan.

(See page 2 of SPA entered into by Wells Fargo available at the link below.)

52.   The SPA entered into between Wells Fargo Bank and the Federal government is incorporated herein by reference as if specifically set forth and is available online at

https://www.treasury.gov/initiatives/financial-stability/TARP-

Programs/housing/mha/Documents_Contracts_Agreements/wellsfargobankna_Redacted.pdf

(Website link *last visited* on January 25, 2019).

53.     Wells Fargo Bank signed the SPA for HAMP on April 13, 2009, by its Co-President, Michael J. Heid.  Wells Fargo Bank later on September 23, 2010, signed an Amended and Restated Servicer Participation Agreement, available at https://tinyurl.com/wells-fargo-hamp-agreement.

54.     The "Trustee" in the PSA doesn't possess the promissory notes but rather the "Custodian" in the PSA possesses the promissory notes.

55.     Only the "Servicer" in the PSA services the mortgage loan payments and, if a borrower defaults, determines whether to modify or foreclose.

56.     Hence, the "Servicer Participation Agreements" were required by the Federal government and entered into *with the Servicers* in the myriad PSA's governing Mortgage-Backed Securities (MBS), *not with the Trustees* in the same PSA's.

57.     The SPA specifically states that "the [HAMP] Program includes loan modification and other foreclosure prevention services" and that "Servicer wishes to participate in the [HAMP] Program as a Participating Servicer on the terms and subject to the conditions set forth herein."

58.     Wells Fargo abused the Loughrans in both areas: modification and foreclosure.

59.     In an effort to avoid contractual obligations pursuant to HAMP and liability for breaches thereof, Wells Fargo foreclosed in the name of the "Trustee" named in the PSA.

60.     Losing your home through a foreclosure is one of the most disruptive events that you could experience.

61.     Recognizing this, Congress set aside $50 billion in stimulus funding for the Home Affordable Modification Program (HAMP).  Created in the wake of the mortgage crisis, HAMP

was designed to keep people in their homes, providing a measure of stability to homeowners

facing unemployment or underemployment in harsh economic conditions.

62.             The invention of mortgage-backed securities completely revolutionized the
                housing, banking, and mortgage businesses.  At first, mortgage-backed
                securities allowed more people to buy homes.  During the real estate
                boom, many banks and mortgage companies made loans with no money
                down.  That allowed people to get into mortgages they couldn't afford.
                **The lenders didn't care.  They knew they could sell the loans, and not
                pay the consequences when and if the borrowers defaulted.**

                That created an asset bubble.  It burst in 2006 with the subprime mortgage
                crisis.  Since so many investors, pension funds and financial institutions
                owned mortgage-backed securities, everyone took losses.  That's what
                created the 2008 financial crisis.[4]

63.     So, Wells Fargo Bank, as a Servicer, accepted up to $6.4 billion in HAMP funding even

though it did not sustain any losses on mortgage loans that were securitized.  It then failed to

fulfill its obligations and duties to its customers under HAMP's loan modification program.

64.     So, in exchange for $6.4 billion, Wells Fargo Bank agreed to service loans, whether loans

it originated or loans originated elsewhere, according to the terms of the SPA which incorporated

therein the HAMP Guidelines and Supplemental Directives.  This is in addition to the $25 billion

it received in TARP funds – a/k/a the "taxpayer bailout."

65.     Again, the Federal government did <u>not</u> require "Trustees" in PSAs to enter into "Trustee

Participation Agreements" to encourage affordable loan modifications and prevent foreclosures

because "Trustees" in the PSA are not the "Servicers" in the PSA.

66.     The "Trustee" is not the holder of the Note entitled to enforce the Note and is not the

Servicer of the Note entitled to modify or foreclose.

67.     The "Trustee" is named in the PSA as more a "stakeholder" and also has an express,

though limited, obligation to protect the certificate holders, but only in an "Event of Default" by

---

[4] <u>Id.</u>

the Master Servicer (Wells Fargo Bank) and only after notice to the Master Servicer and, then, only after a failure of the Master Servicer to remedy the Event of Default *after 60 days*. *See* <u>In re EF Hutton</u>, *supra*; *see* PSA §§7.01-7.05.

68.     Also, by using the name of a third-person, Wells Fargo Bank is a "Debt Collector" liable under the FDCPA pursuant to 15 U.S.C. 1692a(6). *Vincent v. Money Store*, 736 F.3d 88, 104 (2nd Cir. 2013)("false name exception")

**CLASS COMMON FACTUAL ALLEGATIONS – HAMP**

69.     The United States experienced a persistent foreclosure crisis starting in 2008. A congressional oversight panel in 2009 noted that one in eight U.S. mortgages were in foreclosure or default.

70.     On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008 and, on February 17, 2009, Congress amended the statute by passing the American Recovery and Reinvestment Act of 2009 (collectively the "Act"). 12 U.S.C. § 5201, *et. seq.* (2009). The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system and ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C. § 5201.

71.     The Act grants the Secretary of the Treasury the authority to establish TARP, the Troubled Asset Relief Program, 12 U.S.C. § 5211. Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions, *Id.* In exercising its authority to administer TARP, the Act mandates that the Secretary "shall" take into consideration the "need to help families keep their homes and to stabilize communities." 12 U.S.C. § 5213(3).

72.     The Act grants authority to the Secretary of the Treasury to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." 12 U.S.C.

§5219.  The Act further imposes parallel mandates to implement plans to maximize assistance to homeowners and to minimize foreclosures.  12 U.S.C. §5220.

73.     Under TARP, also known as the taxpayer bailout, the United States Government provided the nation's largest financial institutions with nearly $700 billion in funds to address what was widely accepted as an unprecedented financial crisis.  12 U.S.C. §5211.  In or around October 2008, Third-Party Defendant, Wells Fargo, accepted $25 billion in TARP funds.

74.     A key feature of TARP is the Making Home Affordable Program, of which the Home Affordable Modification Program ("HAMP") is a major component.  On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Home Affordable Modification Program ("HAMP"). HAMP is a program under which Wells Fargo and other major banks receive incentive payments for providing mortgage loan modifications to eligible borrowers such as the Loughrans.

75.     Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable.  Wells Fargo made $1,000.00 for each HAMP modification (in addition to the $25 billion it received under TARP).

**Wells Fargo's Participation in HAMP**

76.     The industry entities that perform the actual interface with borrowers – including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure – are known as servicers.  Servicers typically act as the agents of the entities that hold mortgage loans.

77.     Wells Fargo Home Mortgage is a servicer operated by Wells Fargo bank, N.A. and its actions typically are made as agents for the entities that hold mortgage loans.

78.     To participate in HAMP, a servicer must execute a Servicer Participation Agreement

("SPA") with the federal government.

79.     On April 13, 2009, Wells Fargo Home Mortgage entered into a SPA.  The SPA states in

pertinent part:

> WHEREAS, all other servicers, as well as Fannie Mae and Freddie Mac
> approved servicers, that wish to participate in the Program with respect to
> loans that are not GSE Loans (collectively, "Participating Servicers") must
> agree to certain terms and conditions relating to the respective roles and
> responsibilities of Program participants and other financial agents of the
> government.
> WHEREAS, [Wells Fargo Home Mortgage] wishes to participate in the
> Program as a Participating Servicer on the terms and subject to the
> conditions set forth herein
> …
> Servicer shall perform the loan modification and other foreclosure
> prevention services (collectively, the "Services")
> …
> **2.  Authority and Agreement to Participate in Program**
> A.      Servicer shall perform the Services for all mortgage loans it
> services, whether it services such mortgage loans for its own account or
> for the account of another party, including any holders of mortgage-
> backed securities (each such other party, an "Investor").  Servicer shall use
> reasonable efforts to remove all prohibitions or impediments to its
> authority, and use reasonable efforts to obtain all third party consents and
> waivers that are required, by contract or law, in order to effectuate any
> modification of a mortgage loan under the Program.

80.     The Loughrans obtained a copy of the Pooling and Servicing Agreement ("PSA") for the

Wells Fargo Asset Securities Corp. Mortgage Pass-Through Certificates Series 2006-AR1 on

January 29, 2018, after their motion to compel was granted.  Included with the PSA is a Wells

Fargo Servicing Agreement ("SA").

81.     The PSA has provisions regarding modifications of the Servicing Agreement ("SA") and,

also, regarding modification of the individual Mortgage Loans, like that of the Loughrans.

Therefore, any part of the SA can be modified pursuant to the PSA.

82. Section 3.07 of the PSA permits the Master Servicer, Wells Fargo, to make modifications to the Servicing Agreement ("SA").

83. Section 3.07 of the PSA states as follows:

(a) Subject to the prior written consent of the Trustee pursuant to Section 3.07(b) and the prior written consent of the Depositor [Wells Fargo], the Master Servicer [Wells Fargo] may, from time to time, to the extent permitted by the applicable Servicing Agreement, make such modifications and amendments to such Servicing Agreement as the Master Servicer [Wells Fargo] deems necessary or appropriate to confirm or carry out more fully the intent and purpose of such Servicing Agreement and the duties, responsibilities and obligations to be performed by the Servicer [Wells Fargo] thereunder. **Such modifications may only be made if they are consistent with the REMIC Provisions**, as evidenced by an Opinion of Counsel. Prior to the issuance of any modification or amendment, the Master Servicer [Wells Fargo] shall deliver to the Trustee and the Depositor [Wells Fargo] such Opinion of Counsel and an Officer's Certificate setting forth (i) the provision that is to be modified or amended, (ii) the modification or amendment that the Master Servicer [Wells Fargo] desires to issue and (iii) the reason or reasons for such proposed amendment or modification.

(b) **The Trustee shall consent** to any amendment or supplement to a Servicing Agreement proposed by the Master Servicer [Wells Fargo] pursuant to Section 3.07(a), which consent and amendment shall not require the consent of any Certificateholder if it is (i) for the purpose of curing any mistake or ambiguity, to further effect or protect the rights of the Certificateholders **or (ii) for any other purpose**, provided such amendment or supplement for such other purpose cannot reasonably be expected to adversely affect Certificateholders. The lack of reasonable expectation of an adverse effect on Certificateholders may be established through the delivery to the Trustee of (i) an Opinion of Counsel to such effect or (ii) written notification from each Rating Agency to the effect that such amendment or supplement will not result in reduction of the current rating assigned by that Rating Agency to the Certificates. Notwithstanding the two immediately preceding sentences, the Trustee may, in its discretion, decline to enter into or consent to any such supplement or amendment if its own rights, duties or immunities shall be adversely affected.[5]

---

5    Wells Fargo was sued by certificate holders of Wells Fargo Mortgage Backed Trust, Series 2006-AR1, among many others, as one of lead plaintiffs in a consolidated class action for violation of §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 alleging, inter alia, the following:

    6. The true facts that were omitted from the Offering Documents were:

(c) (1)  Notwithstanding anything to the contrary in this Section 3.07, the Master Servicer from time to time may, without the consent of any Certificateholder or the Trustee,  enter into an amendment (A) to an Other Servicing Agreement for the purpose of (i) eliminating or reducing Month End Interest and (ii) providing for the remittance of Full Unscheduled Principal Receipts by the applicable Servicer to the Master Servicer not later than the 24th day of each month (or if such day is not a Business Day, on the previous Business Day), (B) to the Wells Fargo Bank Servicing Agreement for the purpose of changing the applicable Remittance Date to the 18th day of each month (or if such day is not a Business Day, on the previous Business Day) or (C) to a Servicing Agreement for the purpose of effecting or facilitating compliance by the Servicer with Regulation AB or to conform a Servicing Agreement to industry practices relating to Regulation AB.[6]

(ii)  The Master Servicer [Wells Fargo] may direct Wells Fargo Bank in its  capacity  as Servicer to enter into an amendment to the Wells Fargo Bank Servicing Agreement for the purposes described in Section 3.07(c)(i)(B) or (C).

84.    Section 3.08 of the PSA permits the Master Servicer, Wells Fargo, to make modifications to individual Mortgage Loans, like that of the Loughrans.

85.    Section 3.08 states in pertinent part:

For the purposes of determining whether any modification of a Mortgage Loan shall be permitted by the Master Servicer [Wells Fargo], such modification shall be construed as a substitution of the modified Mortgage

---

… The ratings stated in the Prospectus Supplements were based on outdated assumptions, relaxed ratings criteria, and inaccurate loan information.

…

105. The ratings which the ratings agencies assigned to the Certificates were unjustifiably high and did not represent the true risk of the Certificates, as they were based on insufficient information and faulty assumptions concerning how many underlying mortgages were likely to default.  As a result, the Certificates were secured by assets that had a much greater risk profile than represented.

Wells Fargo paid $125,000,000.00 to the class settlement with dozens of large certificate holders opting out of the class settlement.  In re Wells Fargo Mortgage-Backed Certificates Litigation, Complaint, Case No. 09-cv-1376 (U.S. Dist Court, Northern District of California – San Francisco Division (Pages 6 and 35 of 72).

6       Regulation AB is defined as "A framework of SEC rules that set out various registration, disclosure, and reporting requirements for all publicly registered asset-backed securities (ABS)(including mortgage-backed securities) under the Securities Act and the Exchange Act."  SOURCE: https://content.next.westlaw.com/Document/IO3f4da90eee311e28578f7ccc38dcbee/View/FullText.html?contextData=(sc.Default)&transitionType=Default&firstPage=true&bhcp=1 (as of April 5, 2018).

Loan for the Mortgage Loan originally deposited in the Trust Estate if it would be a "significant modification" within the meaning of Section 1.860G-2(b) ["Assumptions and modifications" of loans contributed to a REMIC] of the regulations of the U.S. Department of the Treasury. No modification shall be approved unless the modified Mortgage Loan would qualify as a Substitute Mortgage Loan under Section 2.02 and (ii) with respect to any modification that occurs more than three months after the Closing Date and is not the result of a default or a reasonably foreseeable default under the Mortgage Loan, there is delivered to the Trustee an Opinion of Counsel (at the expense of the party seeking to modify the Mortgage Loan) to the effect that such modification would not be treated as giving rise to a new debt instrument for federal income tax purposes as described in the preceding sentence; provided, however, that no such Opinion of Counsel need be delivered if the sole purpose of the modification is to reduce the Monthly Payment on a Mortgage Loan as a result of a Curtailment such that the Mortgage Loan is fully amortized by its original maturity date.

86.     Section 3.08 of the PSA also allows Wells Fargo, as Depositor, the sole discretion to repurchase any defaulted Mortgage Loan (i) after foreclosure is initiated; (ii) after court ordered possession but before sale; or (iii) after contractual commitment by third party at the sale.

87.     The ability of Wells Fargo to modify the Loughrans' mortgage under the HAMP program of which Wells Fargo is a participating servicer is governed by the SPA (with US Treasury), the PSA (with the Certificate Holders), and the Wells Fargo Servicing Agreement (with itself).

88.     The Wells Fargo Servicing Agreement ("SA") regulates the modification of Mortgage Loans, like the Loughrans' and is governed by sections 3.1.2, and 12.3.2.  However, the SA was dated February 23, 2006.

89.     But on May 16, 2008, the Internal Revenue Service ("IRS") issued Revenue Procedure 2008-28, which gives holders and servicers of certain mortgage loans held through securitization vehicles, such as real estate mortgage investment conduits ("REMICs") and fixed investment trusts, additional discretion to modify mortgage loans without adversely affecting the tax status of the securitization vehicle.

90.     Section 3.1.2 of the SA states as follows:

> Modifications of Mortgage. With the prior written consent of the Master Servicer [Wells Fargo Bank NA], **the Servicer [Wells Fargo Bank NA] may modify the terms of a Mortgage Loan which is in default or a Mortgage Loan as to which default is reasonably foreseeable**; provided, however, that (i) such modification may not reduce the amount of principal owed under the related Mortgage Note or permanently reduce the Mortgage Interest Rate for such Mortgage Loan and **(ii) the Servicer [Wells Fargo Bank NA] and the Master Servicer [Wells Fargo Bank NA] have determined that such modification is likely to increase the proceeds of such Mortgage Loan over the amount expected to be collected pursuant to foreclosure.** Notwithstanding anything to the contrary in this Agreement, the Servicer shall not permit any modification of any material term of a Mortgage Loan (including the Mortgage Interest Rate, the principal balance, the amortization schedule, or any other term affecting the amount or timing of payments on the Mortgage Loan) where such modification is not the result of a default or as to which default is reasonably foreseeable under the Mortgage Loan unless the Master Servicer has consented thereto and the Servicer has received an Opinion of Counsel or a ruling from the Internal Revenue Service (at the expense of the Servicer or the party making the request of the Servicer to modify the Mortgage Loan) to the effect that such modification would not be treated as giving rise to a new debt instrument for federal income tax purposes or a disposition of the modified Mortgage Loan and that such modification is permitted under the REMIC Provisions.

91.     The PSA is drafted so that a foreclosure on HAMP eligible borrowers like the Loughrans will always benefit Wells Fargo and never benefit the Certificateholders.

92.     Wells Fargo only receives $1,000.00 (one thousand dollars) per HAMP modification but gets the "lion's share" of all moneys received after a sale, judicial or otherwise, after foreclosure.

93.     As part of its Master Servicing Fee, Wells Fargo deducts every month a fixed percentage of the unpaid principal balance of the Loughrans' Mortgage Loan and any and all advances it makes (including taxes and insurance that Loughrans would otherwise be making to escrow on a modified loan) from the Certificate Account held in trust by Wells Fargo on behalf of the Trustee.

94.     As part of its Master Servicing Fee, Wells Fargo is entitled to any Liquidation Profits, which means any Net Liquidation Proceeds in excess over the unpaid principal balance of the Liquidated Loan, plus accrued interest thereon.  Moreover, as stated in ¶115, Wells Fargo (pursuant to section 3.08 of the PSA) can repurchase any defaulted Mortgage Loan, at its sole discretion as Master Servicer, after foreclosure is initiated, after court ordered possession before sale, or after a third-party makes a contractual commitment at the sale.  In other words: "heads Wells Fargo wins, tails the Certificateholders (and borrowers) lose."  In other words: for Wells Fargo it's "All gain, No pain."  All administrative costs of the trust get passed onto the Certificateholders.  Wells Fargo bears no risk, but has the option at its sole discretion to repurchase a Mortgage Loan after foreclosure is initiated.  As an example, for illustration, any borrower with enough equity, like recent widows or widowers who lost the breadwinning spouse, is at the mercy of Wells Fargo, not the investors/Certificateholders.

95.     Section 12.3.2 of the SA states as follows:

> Servicer's Discretion. The Servicer shall have reasonable discretion to extend appropriate relief to Borrowers who encounter hardship and who are cooperative and demonstrate proper regard for their obligations. However, no such relief shall be granted to any Borrower under a Mortgage Loan unless the Servicer reasonably believes that there is a reasonable expectation that such Borrower shall bring his Mortgage Loan current within a period conforming to acceptable servicing practices; provided that such period will not exceed 21 months from the Due Date of the earliest unpaid installment and will not result in a "significant modification" of the Mortgage Loan under the REMIC Provisions.

96.     The Internal Revenue Service Revenue Procedure 2008-28 provides that modifications made to residential mortgages through an organized "foreclosure prevention program" or in other circumstances where the holder or servicer has a "reasonable belief" that both (1) the original loan bears a significant risk of foreclosure and (2) the modified loan "presents a substantially reduced risk of foreclosure" will generally not provide grounds for the IRS to either allege that

such modifications constitute "prohibited transactions" under Section 860F(a)(2) of the Internal Revenue Code of 1986 or challenge the status of a securitization vehicle that otherwise qualifies as a REMIC or an investment trust.

97.     Since Wells Fargo's Servicing Agreement ("SA") dated February 23, 2006, the following events transpired:  the national foreclosure crisis happened; the Emergency Economic Stabilization Act of 2008 was enacted; the American Recovery and Reinvestment Act of 2009 was enacted; TARP was established; HAMP was established; IRS Revenue Procedure 2008-28 was enacted; the Consent Judgment with 49 States' Attorneys General and the U.S. Department of Justice was entered into by Wells Fargo on April 4, 2012.

98.     So, "acceptable servicing practices" stated in section 12.3.2 of the SA have evolved.  And the SA is between Wells Fargo and itself as both Master Servicer and Servicer.

## LOUGHRANS' ALLEGATIONS OF FACT

### 2005

99.     Daniel Loughran is a designer and sales representative for a luxury home remodeler and has been employed in that profession for almost 30 years.

100.    Margaret Loughran is a co-owner of a child daycare service, Kiddie Kampus Learning Center in Channahon, IL.  She started the business in 2008 with a partner and did not begin to draw a salary until February, 2012.

101.    Daniel Loughran and Margaret Loughran (hereinafter "Loughrans") have three children.

102.    At no point during any and all relevant times discussed in this complaint were the Loughrans unemployed or without income.

103.    The Plaintiffs designed and built the house they reside in at 26509 West Highland Drive, Channahon, Illinois, which was financed with a short-term construction loan, in 2005.  After

construction of the home was completed, as is customary in the construction industry, the

Plaintiffs refinanced the construction loan with a conventional 30 year term mortgage loan from

Wells Fargo Bank N.A. d/b/a Wells Fargo Home Mortgage on December 28, 2005.

104.    On December 28, 2005, the Loughrans borrowed $395,280.00 from Wells Fargo Bank,

N.A., and signed a promissory Note (Note) agreeing to repay the loan over 30 years at 5.25%

interest, in monthly installments ("monthly payments").  The loan was for personal, family, and

household purposes.

105.    Paragraph 1 of the Note states: "I understand that Lender may transfer this Note.  Lender

or anyone who takes this Note by transfer and who is entitled to receive payments under this

Note is called the "Note Holder."  Paragraph 7 of the Note states that, in the event of the

borrowers' failure to pay principal and interest as required, "the Note Holder will have the right

to be paid back by me for all of its costs and expenses in enforcing the Note to the extent not

prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees."

*See* Note (at paragraphs 1 and 7), attached hereto as **Exhibit 2**.

106.    The Note was secured by a mortgage (Mortgage) on the Loughrans' primary residence at

26509 West Highland Drive in Channahon, Illinois, located in the county of Grundy.

107.    At all times, Wells Fargo Home Mortgage, a division of Wells Fargo Bank, serviced the

Loughrans' mortgage loan because the monthly mortgage statements come from Wells Fargo

Home Mortgage and the Loughrans made all of their monthly payments to Wells Fargo.

## 2006-2010

108.    When the housing market was booming, Daniel Loughran did well and earned a

sufficient income.  However, when the housing market – fueled in large part by the easy credit of

the mortgage industry – tanked after 2008 due to the mortgage crisis, Daniel Loughran experienced a significant reduction in his personal income.

## **2011**

109.    In around September, 2011, the Loughrans fell behind on the monthly payments on their loan to Wells Fargo.

110.    The Loughrans were never unemployed since their default in September 2011 but Daniel Loughran was and is still employed in the luxury home remodeling industry which was greatly affected by the "Great Recession" of 2008, described by the International Monetary Fund (IMF) as "the most severe financial crisis since the Great Depression."  See "World Economic Outlook – April, 2009: Crisis and Recovery." IMF, April 24, 2009, page 99, available at

https://www.imf.org/en/Publications/WEO/Issues/2016/12/31/Crisis-and-Recovery (Last visited Jan 4, 2019).

111.    At all times relevant, the Loughrans were pre-verified, qualified and eligible to participate in the HAMP program under all applicable directives and guidelines.

112.    While they applied for HAMP, the Loughrans were subjected to a long drawn out "run around" for naught before they hired an Illinois attorney and, after they hired an Illinois attorney, were then subjected to a long drawn out tedious, repetitive, arduous, invasive process, only to be subjected to a "shake down" for their legally protected Individual Retirement Account (IRA) and denied a HAMP "affordable" modification for reasons either known to Wells Fargo before the Loughrans began the application process or for false reasons.

113.    To demonstrate this "run around" and "shake down" properly requires the Loughrans to set out the chronology of the case in unusually excruciating detail, as follows.

114.    Wells Fargo solicited the Plaintiffs to apply for a "HAMP" mortgage modification via the Home Affordable Modification Program.  On October 18, 2011, Wells Fargo sent the Loughrans a letter as part of the Making Home Affordable Program which states in pertinent part: "**As your mortgage loan servicer, we will work with you in an effort to make your mortgage payment affordable.  You will not pay any fees to take advantage of this opportunity to modify your mortgage loan payment and keep your home.  Now is the time to act.  We are ready to help you.**"

115.    The Loughrans applied for a HAMP modification shortly after receiving the letter dated October 18, 2011, from Wells Fargo,

### *Foreclosure Case Procedural History*

116.    On December 28, 2011, the Loughrans were both named defendants in a foreclosure action on the Note and Mortgage filed in Grundy County, Illinois, captioned with the Plaintiff, "US Bank, N.A., as Trustee of Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-AR1."  The foreclosure complaint at §3(j) states US Bank's capacity to foreclose as follows: "Plaintiff is the trustee for the holder of the Mortgage and Note."  The foreclosure complaint is incorporated herein by reference as if specifically set forth.

117.    US Bank is actually the "trustee" identified in the Pooling and Servicing Agreement ("PSA") for the New York common law trust known as Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-AR1.  However, US Bank is a "trustee" in name only.  The actual trustee is Wells Fargo because the "trustee" in the Pooling and Servicing Agreement for a Mortgage-Backed Securities trust created by Wells Fargo Asset Securities Corporation (a wholly owned subsidiary of Wells Fargo Bank) (i) does not have legal title to the secured promissory notes; (ii) does not hold the secured promissory notes for the

benefit of the investors/certificate-holders; (iii) <u>does not</u> owe any fiduciary duties to the investors/certificate-holders; and (iv) <u>does not</u> administer the trust.

118. Wells Fargo (i) has legal title to the secured promissory notes, (ii) holds the secured promissory notes as "Custodian," (iii) administers the trust, (iv) retains a right to "repurchase" the secured notes after foreclosure is filed, (v) retains a right to elect early retirement of the trust and cancel the certificates, and (vi) services the loans.

119. The certificate-holders have an attached and enforceable security interest in the promissory notes. 810 ILCS 5/9-203(b); UCC § 9-203(b) generally. Since the promissory note is negotiable, Wells Fargo remains the holder and the person entitled to enforce the note because Wells Fargo is in possession of it and it is payable to the order of Wells Fargo. 810 ILCS 5/1-201(b), 810 ILCS 5/3-301(i); UCC §§ 1-201(b)(21)(A), UCC § 3-301(i) generally. When an instrument is indorsed in blank (and, thus, is payable to bearer), it may be negotiated by transfer of possession alone until specially indorsed. 810 ILCS 5/3-205(b); UCC §3-205(b) generally.

120. US Bank's attorney, Eli Calero, of Defendant, McCalla Raymer Liebert Pierce, made a judicial admission on June 15, 2018, when he admitted, despite initial reluctance, that Wells Fargo Bank was his client, not US Bank, and that Wells Fargo directed his law firm to file the Loughrans' foreclosure lawsuit in the name of the trust.

121. Eli Calero also admitted that the Loughrans' Note was received from Wells Fargo but refused to say when it was received; however, later admissions by attorneys at McCalla Raymer Liebert Pierce in an affidavit of attorney's fees filed on January 8, 2019, reveal that the Note was still in possession of Wells Fargo even as late as June 20, 2018 – five days after Eli Calero's admission (partial judicial admission and partial fraud upon the court by admitting US Bank was

not his client and by falsely claiming to have received the Note from Wells Fargo when Wells Fargo still had possession of the Note).

122.    On November 14, 2011, (six weeks before the Lougrans' foreclosure action was filed by Pierce & Associates in the name of "US Bank as Trustee" at the behest of Wells Fargo Bank), the American Law Institute (ALI) and the National Conference of Commissioners on Uniform State Laws published its "Report of the Permanent Editorial Board for the Uniform Commercial Code," entitled "Application of the Uniform Commercial Code to Selected Issues Related to Mortgage Notes."  (Hereafter "PEB Report")

123.    In the Introduction, the PEB Report states: "Although the UCC provisions are settled law, it has become apparent that not all courts and attorneys are familiar with them.  In addition, the complexity of some of the rules has proved daunting."

124.    The PEB Report explains who is permitted to enforce the promissory note pursuant to Article 3 and Article 9 of the UCC.

125.    The ALI (along with the National Conference of Commissioners on Uniform State Laws) -- not the Illinois legislature – drafted the UCC.

126.    The Illinois legislature, along with 49 other state legislatures, adopted the UCC.  See e.g., *J.R. Cousin v. Menard, Inc.,* 127 F.3d 580, 582 (7th Cir 1997) (*J. Posner*) ("The Official Comment on the section (and only a public comment could be thought to illuminate the thinking of the legislatures who state by state voted to adopt the Uniform Commercial Code and thus make it positive law) does not support the gloss that Menard seeks to place on the statutory language.")

127.    Moreover, Illinois cases are in accord with the PEB Report.  *Moore v. Lewis,* 51 Ill. App. 3d 388, 391 (1st Dist. 1977)("Indeed a mortgage, which in this State is only regarded as a mere

incident to the debt, is not assignable at law."); *Yorke v. Citibank,* 125 B.R. 963, 970 (N.D. Ill.

1990)("It is axiomatic that any attempt to assign the mortgage without transfer of the debt will

not pass the mortgagee's interest to the assignee.")(*citing Commercial Products Corporation v.*

*Briegel*, 101 Ill. App. 2d 156 (3rd Dist. 1968)); *Krueger v. Dorr,* 22 Ill. App. 2d 513, 529 (2nd

Dist. 1959)("... inasmuch as a mortgage is merely incident to the debt which it secures.");

128.    At page 11 of the PEB Report, the following relevant illustrations, among others, are

provided:

> 7. Maker [Loughrans] issued a mortgage note payable to the order of
> Payee [Wells Fargo Bank]. Payee borrowed money from Funder
> [Investors] and, in a signed writing [Pooling and Servicing Agreement for
> WFMBS-2006-AR1] that reasonably identified the note (whether
> specifically or as part of a category or a type of property defined in the
> UCC), granted Funder a security interest in the note to secure Payee's
> repayment obligation. Payee, however, retained possession of the note.
> Funder has an attached and enforceable security interest in the note. UCC
> § 9-203(b). *If the note is negotiable, Payee remains the holder and the
> person entitled to enforce the note because Payee is in possession of it and
> it is payable to the order of Payee. UCC §§ 1-201(b)(21)(A), 3-301(i).*
>
> 8. Maker [Loughrans] issued a mortgage note payable to the order of
> Payee [Wells Fargo Bank]. Payee sold the note to Funder [Investors],
> giving possession of the note to Funder in exchange for the purchase price.
> The sale of the note is governed by Article 9 and the rights of Funder as
> buyer constitute a "security interest." UCC §§ 9-109(a)(3), 1-201(b)(35).
> The security interest is attached and is enforceable. UCC § 9-203(b). This
> is the case even if the sales agreement was oral or otherwise not evidenced
> by an authenticated record. If the note is negotiable, Funder is also a
> person entitled to enforce the note, whether or not Payee indorsed it,
> because either (i) Funder is a holder of the note (if Payee indorsed it by
> blank indorsement or by a special indorsement identifying Funder as the
> person to whom the indorsement makes the note payable) or (ii) Funder is
> a nonholder in possession of the note (if there is no such indorsement)
> who has obtained the rights of Payee by transfer of the note pursuant to
> UCC § 3-203. See also UCC §§ 1-201(b)(21)(A), 3-205(a)-(b), and 3-
> 301(i)-(ii).
>
> 9. Maker [Loughrans] issued a mortgage note payable to the order of
> Payee [Wells Fargo Bank]. Pursuant to a signed writing that reasonably
> identified the note (whether specifically or as part of a category or a type

of property defined in the UCC), Payee sold the note to Funder [Investors]. Payee, however, retained possession of the note. The sale of the note is governed by Article 9 and the rights of Funder as buyer constitute a "security interest." UCC § 1-201(b)(35). The security interest is attached and is enforceable. UCC § 9-203(b). *If the note is negotiable, Payee remains the holder and the person entitled to enforce the note (even though, as between Payee and Funder, Funder owns the note) because Payee is in possession of it and it is payable to the order of Payee. UCC §§ 1-201(b)(21)(A), 3- 301(i).*

(Emphasis added.)

129.    Unless the Note is lost or destroyed, possession is required to enforce the Note.

## **2012**

130.    On January 12, 2012, Pierce filed a "Corporate Assignment of Mortgage" ("Assignment" or "AOM") from Wells Fargo Bank (signed January 6, 2012) to US Bank NA as Trustee for WFMBS 2006-AR1 in the land records for the Grundy County Recorder.  The Assignment was signed on January 6, 2012, by Brittany Meis, Vice-President of Wells Fargo Loan Documentation, and notarized by Angela Marie Williams.  The AOM was prepared by Alexander Gorman, Wells Fargo Bank, N.A., 2701 Wells Fargo Way, MAC x9999-018, Minneapolis, Minnesota, 55467-8000.

131.    The recording of the AOM was requested by Wells Fargo Bank, N.A., with instructions to "Record and Return to Pierce & Associates, 1 North Dearborn, Fl. 13, Chicago, Illinois, 60602-4321, PB# 11-27639."

### *Loughrans' HAMP Application Process*

132.    On January 17, 2012, the Loughrans faxed 5 pages to Wells Fargo, including but not limited to a "Uniform Borrower Assistance Form" and a "Financial Worksheet."

133.    On February 6, 2012, the Loughrans faxed another 8 pages of requested documents to Wells Fargo.

134.    The Loughrans called Wells Fargo employees Charles Bost, Dan, and Bill, on February 9, 14, 15, 16, and 17, trying to speak to someone.  On February 17, 2012, Margaret Loughran spoke to Aquanta Robinson who told her to send more information and that a new person, Robert Barslow, would call her next week.

135.    On February 19, 2012, and possibly earlier, Wells Fargo faxed to the Loughrans a blank form for applying for a HAMP modification.

136.    On February 24, 2012, the Loughrans sent a third fax with 9 pages of their financial documents.  They also sent a fourth fax with 10 pages of requested documents.  This included their Request for Modification and Affidavit ("RMA").  (A copy of the RMA is attached hereto as Exhibit B.)

137.    On February 28, 2012, the Loughrans sent a fifth fax with 15 pages.

138.    On February 29, Margaret Loughran called Robert Barslow and Charles Bost but spoke to Alex.

139.    On March 7, 2012, Margaret Loughran left a message with Charles Bost.

140.    On March 22, 2012, Margaret Loughran sent a fax with more income information and bank statements to Wells Fargo.

141.    On March 28, 2012, the Loughrans faxed to Wells Fargo their 2010 and 2011 tax returns.

### *National Mortgage Settlement – Wells Fargo Consent Judgment*

142.    On April 4, 2012, a consent judgment, signed by Wells Fargo Bank (and the Illinois Attorney General and Secretary of the Illinois Department of Financial and Professional Regulation, among others), was entered in the case of *United States of America, et. al. v. Bank of America, et. al.*, Case No. 12-cv-0361, in the United States District Court for the District of

Columbia.[7]  The consent judgment included a mandatory injunction[8] entitled "Servicing

Standards."

---

[7]  The Complaint filed by the United States of America and 49 States' Attorneys General contained several allegations relevant to the issues alleged in this case by the Loughrans.  The Complaint states, in relevant part, the following:

> 32.  For more than thirty years, mortgages typically have been "pooled" to create an investment vehicle, often denominated as a trust, and interests in the trusts have been sold to **investors that own interests in payment streams** generated by principal and interest payments by the borrowers
>
> 33.  **After mortgages are originated, a "servicer" is responsible for mortgage administration activities, known as servicing activities, which generally include** collecting payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's indebtedness; distributing payments after allowable deductions to the investment trust entities for distribution to investors; making advances to cover delinquent mortgage payments and other costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and **pursuing either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others when mortgagors become delinquent on mortgage payments**.
>
> …
>
> 58.  The Banks' failure to discharge their required loan modification obligations, and related unfair and deceptive practices, include, but are not limited to, the following:
>
> …
>
> g.          wrongfully denying modification applications;
>
> …
>
> o.           miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;
>
> …
>
> **64.  The Banks' failure to follow appropriate foreclosure procedures, and related unfair and deceptive practices include, but are not limited to the following:**
>
> **a.          failing to properly identify the foreclosing party;**
>
> **…**
>
> **c.          preparing, executing, notarizing or presenting false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);**
>
> d.          preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits.  This process of repeated false attestation of information in affidavits is popularly known as "robosigning."  Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and the approval of the Banks;
>
> …
>
> 92.  … the filing of signed pleadings and documents in bankruptcy cases as to which the signatory has not conducted a reasonable inquiry into the factual contentions or allegations, as required by applicable law, including Fed.R.Civ.P. 11 [Federal equivalent to Illinois Supreme Court Rule 137] and Fed.R.Bankr.P. 9011.

143.    The consent judgment incorporated "Servicing Standards" with which Wells Fargo would have to comply going forward.  The Loughrans hereby incorporate those Servicing Standards available online (https://bit.ly/2Wqf0NS)[9] or available from the Illinois Attorney General or available from the clerk of Court for the United States District Court for the District of Columbia, case number 2012-cv-0361 (hereafter referred to as "Consent Judgment" or "Servicing Standards").

144.    The National Mortgage Settlement was only with the attorneys general and U.S. Department of Justice and exempted from the settlement specifically:  "...[T]he following claims are hereby not released and are specifically reserved: … 19. Claims and defenses asserted by

---

93. … a failure to exercise adequate supervision over the Banks' attorney, contractors, and other agents in bankruptcy proceedings.

94. … the conduct of the Banks or their agents has resulted in, among other things, some or all of the following:
        a.      making representations that were inaccurate, misleading, false, or for which the Banks, at the time, did not have a reasonable basis to make
…
        i.      collecting, or attempting to collect, attorney's fees and other charges for the preparation and filing of proofs of claim, motions for relief from the stay, or other documents that the Bank ultimately withdrew or that a court denied.
…
104.  The Banks' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by the Banks.  The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm to the States included the subversion of their legal process and the sustained violation of their laws.

Complaint, United States of America, et. al. v. Bank of America, et. al. (D.D.C.)(12-0361)(Emphasis added.)

[8] "Mandatory injunction" is defined by Black's Law Dictionary as follows:
Mandatory Injunction.
One which (1) commands the defendant to do some positive act or particular thing; (2) prohibits him from refusing (or persisting in a refusal) to do or permit some act to which the plaintiff has a legal right; or (3) restrains the defendant from permitting his previous wrongful act to continue operative, thus virtually compelling him to undo it.
Black's Law Dictionary, 705 (5th Ed. 1979); Baxter v. Belleville, 720 F. Supp. 720, 726-27 (S.D. Ill. 1989).

[9] https://www.justice.gov/sites/default/files/opa/legacy/2012/03/12/wellsfargo-consent-judgement.pdf (Last visited June 6, 2019.)

third parties, including individual mortgage loan borrowers on an individual or class basis." (See

Consent Judgment, available online, at Exhibit G at G-10.)

145.    The Servicing Standards contained a "Sunset" provision (at page E-16 of Exhibit E)

which states:

> The Consent Judgment and all Exhibits shall retain full force and effect for three and one-half years from the date it is entered (the "Term"), unless otherwise specified in the Exhibit. Servicer shall submit a final Quarterly Report for the last quarter or portion thereof falling within the Term, and shall cooperate with the Monitor's review of said report, which shall be concluded no later than six months following the end of the Term, after which time Servicer shall have no further obligations under this Consent Judgment.

### *Loughrans' HAMP application (continued)*

146.    On April 10, 2012, Dan Loughran called Wells Fargo and left a message. On April 16,

2012, the Loughrans received a Fedex envelope from Wells Fargo seeking information with a

return self-addressed Fedex envelope addressed to Wells Fargo and on April 18, 2012, the

Loughrans returned the Fedex envelope to Wells Fargo with the requested information and

documentation.

147.    On Saturday, April 21, the Loughrans called and left a message with Charles Bost at

Wells Fargo to make sure he received the Fedex package.

148.    Again, on April 23, 2012, the Loughrans left a message with Charles Bost.

149.    On May 3, 2012, Margaret called and left a message with Charles Bost.

150.    Again, on May 8, 2012, Margaret called Charles Bost and was only able to leave a

message. She then called Edith at Wells Fargo and was only allowed to, and did, leave a

message.

151.    On May 10, 2012, Margaret spoke to Charles Bost. She was told to send in more

information and that Charles would call her back next Wednesday or Thursday, May 16 or 17.

152.     On May 16, 2012, Charles Bost did not call the Loughrans.

153.     On May 17, 2012, Charles Bost did not call the Loughrans.  Margaret Loughran therefore called Charles Bost and left a voice message to follow up on the paperwork.

154.     On Saturday, May 19, 2012, pursuant to the conversation with Charles Bost on May 10, 2012, the Loughrans faxed more requested documentation to Wells Fargo and left a voice message with Charles Bost.

155.     On Monday, May 21, 2012, Margaret called Charles Bost and left another voice message. Again, on May 23, 2012, Margaret called and left a voice message for Charles Bost.  On Thursday, May 24, 2012, Margaret again called and left a voice message for Charles Bost. Foreclosure Lawsuit

### Foreclosure Case Procedural History (Continued)

156     On May 25, 2012, the <u>foreclosure Plaintiff</u>[10] filed a motion for summary judgment against all defendants, including Wells Fargo Bank, N.A., including an order of default for failure to file an appearance or answer to the foreclosure complaint.  The Affidavit of amounts due and owing was signed on April 3, 2012, by Michael Fernandez on behalf of Wells Fargo Bank "as servicing agent" to US Bank NA, as Trustee for WFMBS 2006-AR1.  The Affidavit of amounts due and owing made no mention of who possessed the Note.

### Loughrans' HAMP application (continued)

157.     On May 29, 2012, Margaret called Charles Bost at Wells Fargo at 1:07 pm and, at 6:52pm, Charles Bost called back and spoke to Margaret Loughran.

---

[10] The term "foreclosure Plaintiff" will be used to identify the plaintiff in the underlying foreclosure lawsuit filed against the Loughrans in Grundy County, Illinois.  As admitted on June 15, 2018, in open court on the record by its foreclosure counsel, Eli Calero of Defendant, McCalla Raymer Liebert Pierce , Wells Fargo was impersonating US Bank as trustee for WFMBS 2006-AR1 and its foreclosure counsel had knowledge of this impersonation.

158.    On May 30, 2012, at 9:47am Margaret called Charles Bost at Wells Fargo and left another voice message.  The next day, on May 31, at 4:55pm, Margaret again called Charles Bost at Wells Fargo and left another message.

159.    On Friday, June 1, 2012, Margaret called and left a message with Charles Bost and she was frustrated.  On the same day, Margaret called the department phone number out of frustration and spoke to Angelia Buyers.  Angelia Buyers told Margaret she would send an email to her supervisor, Edith at Wells Fargo.

160.    On Monday, June 4, 2012, Margaret called and left a message with Charles Bost.

161.    On Friday, June 8, 2012, Charles Bost called and spoke to Margaret Loughran.

162.    On the following days in June, 2012, Margaret called Charles Bost at Wells Fargo about the status of the Loughrans' HAMP application and could only leave messages: June 11, 12, 13, 14, 18, 20, 21, 22, 25.  Charles Bost did not call the Loughrans back.

133.    Margaret also tried to contact Edith at Wells Fargo on the following days in June: June 20 & 25.

163.    On June 25, Margaret called Charles Bost at 12:15pm; called Edith at Wells Fargo at 12:17pm; and called Bill Murphy at Wells Fargo at 12:19pm.  She left a voice message for Bill Murphy.  At 5:26 pm on June 25, 2012, Margaret spoke to Charles Bost who told her to send more information.

165.    On Monday, July 2, 2012, Margaret called Charles Bost at Wells Fargo at 2:30 pm and left a voice message.  She also sent Wells Fargo a fax containing 47 pages of the information they requested again.

165.    On Friday, July 6, 2012, Charles Bost left a message on the Loughrans' voice messaging system.

166.    On the following days in July, 2012, Margaret called Charles Bost at Wells Fargo and was only able to leave a voice message: July 9, 10, 13, 16, 18, 19, and 24.  Charles Bost did not call her back.

167.    On July 19, 2012, in addition to calling Charles Bost at Wells Fargo, Margaret also called Ed at Wells Fargo and left a voice message.  Then, on the same day (July 19), Edith at Wells Fargo called the Loughrans for the first time.

168.    On July 20, 2012, the Loughrans received a Fedex package from Wells Fargo.

169.    On July 24, 2012, Edith at Wells Fargo called the Loughrans to tell them she faxed information of the required paperwork at 5:18 pm.  On the same day (July 24) at 6:30 pm, Margaret Loughran filled out and faxed 19 pages, including another hardship letter, pay stubs, IRS Form 4506T-EZ, and Margaret called Charles Bost and Edith at Wells Fargo and told them that the information was faxed and was completed and to look for the fax.

### *Foreclosure Case Procedural History (Continued)*

170.    On August 23, 2012, the foreclosure Plaintiff filed a motion for summary judgment against all defendants, including Wells Fargo Bank, N.A., including an order of default for failure to file an appearance or answer to the foreclosure complaint.  The Affidavit of amounts due and owing was signed on April 3, 2012, by Michael Fernandez on behalf of Wells Fargo Bank "as servicing agent" to US Bank NA, as Trustee for WFMBS 2006-AR1.  The Affidavit of amounts due and owing made no mention of who possessed the Note.

### *"Loan Agreement Offer"*

171.    On November 29, 2012, Wells Fargo Home Mortgage sent the Loughrans a letter with a Loan Agreement offer, wherein the Loughrans would be required to pay $3,369.92 per month

and would also be responsible for $12,312.74 in "recoverable expenses" including Title, attorney fees/costs, appraisal and/or property preservation/inspection fees, and $327.42 in late fees.

172.     This offered monthly payment of $3,369.92 in the Loan Agreement was a difference of $19.17 from their original payment of $3,389.09, or approximately one-half of one percent (.0056).

173.     Wells Fargo Home Mortgage refused to provide a breakdown of the "recoverable expenses" ($12,312.74) in the Loan Agreement offer.

174.     The Loughrans did not agree to the Loan Agreement Offer and did not sign it or return it.

## 2013

175.     On or around approximately February, 2013, the Loughrans hired a company, SC Law Group, to assist them after receiving a solicitation in the mail about modification assistance.

176.     The Loughrans agreed to pay 4 installments to SC Law Group, each in the amount of $1425.00, and the Loughrans paid all four for a total of $5,700.00.

177.     The Loughrans through SC Law Group submitted another application for a HAMP modification.[11]

178.     SC Law Group was named an additional defendant in a federal lawsuit filed by the Federal Trade Commission on June 18, 2013 in the Central District of California, *Federal Trade Commission v. A to Z Marketing, Inc.*, Case No. 13-cv-00919 (SACV13-919).

---

11   The Loughrans through SC Law Group submitted another application for a HAMP modification. On February 7, 2013, Dan Loughran faxed to SC Law Group a letter of authorization, Dan's w-2 forms, w-2 from Margaret's business, Kiddie Kampus, two loan statements and 2 loan reduction offer pages. On February 11, 2013, Wells Fargo sent the Loughrans a letter acknowledging their request for authorization for Wells Fargo to speak with SC Law Group & Agents. On or around March 2, 2013, the Loughrans mailed to SC Law Group their information and financial worksheet and 2010 and 2011 IRS tax returns, and bank statements.  On March 21, 2013, Margaret Loughran faxed to SC Law Group another signed hardship affidavit, bank statements, utility bill, pay stubs, and a letter about the homeowners association statement.

179.    The Loughrans called SC Law Group and the phone was disconnected.

180.    On October 21, 2013, the Loughrans hired another attorney, the undersigned, John Smith ("Smith").

181.    Shortly after hiring Smith, the Loughrans submitted another HAMP application to Wells Fargo which, as described in further detail below, was later negotiated through Smith and attorney for US Bank, Charles Woodworth ("Woodworth") an attorney with the law firm of Defendant, Mayer Brown LLP.

## 2014

### *Foreclosure Case Procedural History (Continued)*

182.    On January 14, 2014, the Loughrans filed their Answer, Affirmative Defenses, and Counterclaim to the Plaintiff's foreclosure complaint.  The Loughrans' first affirmative defense was failure of condition precedent for failure to offer foreclosure mitigation relief via, inter alia, Making Home Affordable Program, of which HAMP is an integral part.  The Loughrans' fourth affirmative defense was lack of standing on the part of US Bank, N.A.  The Loughrans' counter-claim was for a declaratory judgment stating that the foreclosure Plaintiff is legally obligated to provide the Loughrans with access to foreclosure prevention programs enacted under the Federal Emergency Economic Stabilization Act of 2008 and enjoining foreclosure Plaintiff from charging foreclosure fees and costs and from commencing or pursuing this foreclosure until such servicing is provided to the Loughrans.

183.    On or about February 10, 2014, additional appearances were filed on behalf of Plaintiff, US Bank NA as Trustee for WFMBS-2006-AR1, by three attorneys with Mayer Brown LLP: Lucia Nale, Michelle Dohra, and Charles Woodworth.

184.    On or about February 14, 2014, Wells Fargo Bank sent a letter via Charles Woodworth to the Loughrans via their attorney (the undersigned) regarding "additional documentation needed for your request for mortgage assistance."

185.    Over the next approximately fourteen months, several agreed continuance orders were entered by the court while Plaintiff's attorney, Charles Woodworth, requested the submission and re-submission of the Loughrans' documents after the Loughrans again applied for a HAMP modification.

### *Loughrans' HAMP application (continued)*

186.    The Loughrans were required by f oreclosurePlaintiff to submit via their attorney Smith their paperwork again and again. The Loughrans submitted another HAMP application on December 28, 2013, after hiring Smith.  Thereafter, the Loughrans were required to resubmit the same documents four more times over the next year.

187.    The documents mostly or always were current when submitted but due to the natural lapse of time would become "stale" and Wells Fargo would request the same documents but updated.

188.    Upon information and belief, Wells Fargo and Mayer Brown were intentionally delaying and stalling the Loughrans' HAMP application decision process until the end of the "Sunset" provision in the Servicing Standards on (or after) October 4, 2015.

189    While the underlying conduct alleged in the case *United States of America, et. al v. Bank of America, N.A.* was not to become legal (or cease being illegal) after the end of the "Sunset" provision on October 4, 2015, either Wells Fargo and its foreclosure attorneys did not know this or, more likely, it would no longer be required to file Quarterly Reports and State Reports

attesting to its compliance with the Servicing Standards and, therefore, would not be certifying a false report to the Monitor (Joseph Smith initially) or the 49 States.

190.    However, Wells Fargo did sign false affidavits in the Loughrans' foreclosure lawsuit, as set forth below, so obviously Wells Fargo was willing to assert its unequal leverage and bargaining power against individual residential mortgage loan borrowers and homeowners after the end of the "Sunset" provision in the Consent Judgment it signed with the plaintiffs in *U.S.A.. et. al. v. Bank of America, N.A, et. al.*

191.    After their first HAMP application after hiring Smith was submitted on December 28, 2013, the Loughrans were required to resubmit the same documents again on April 25, 2014; again on June 25, 2014; again on October 26, 2014; and again on December 4, 2014.  The documents are too voluminous to attach to this complaint and the Defendant Wells Fargo Home Mortgage is already in possession of copies of everything it requested and received from the Loughrans.

192.    On November 11, 2014, the Loughrans were again required to submit via email their most recent signed typed quarterly year-to-date profit and loss statements for Kiddie Kampus, consecutive months of business bank statements, an updated RMA (Request for Mortgage Assistance via MHAP), and a full HAF (Homeowner Assistance Form).

193.    On December 15, 2014, the Loughrans were required by Wells Fargo via attorney Woodworth to submit another 10 page RMA, after which the attorney Woodworth stated: "That's all we need."

194.    On December 22, 2014, Woodworth inquired about the Loughrans' 2013 tax returns and income reported in the amount of $59,149.  Specifically, Woodworth stated: "Per 2013 tax returns the borrowers received $148,362 in pension & annuities income with $59,149 being the

taxable amount.[12]  Was this a onetime disbursement of this income or will this income continue?"

195.    On December 23, 2014, counsel for Plaintiff, Michelle Dohra, sent a letter, dated December 20, 2014, attached to an email which stated: "John – in follow-up to Charles' email below, attached please find the formal letter requesting the documents referenced below.  Please confirm receipt and let me know if you have any questions.  As a reminder, please make sure to send me the documents directly as Charles is out on paternity leave."

196.    Counsel for foreclosure Plaintiff, Michelle Dohra, attached a letter from Wells Fargo Home Mortgage which stated:

> "Thank you for your initial loan modification application. We understand this may be a challenging time for you, and we want to help you through the process as quickly as possible.  That's why we're writing you with this important update about your documentation and some important steps you need to take."

197.    In a table inserted on the letter, the Loughrans' were asked: "Your next step – Please provide a signed and dated letter of explanation regarding the $148,362.00 received in pension and annuities in 2013.  Please advise if this was a one time disbursement or if this income is expected to continue."

198.    On December 31, 2014, the Loughrans replied to this request with 36 pages of financial documents, including forms IRS 1120 for Kiddie Kampus Learning Center Inc., a copy of Dan Loughran's ING Select Advantage IRA account, and a letter of explanation from Dan Loughran which stated:

> To whom it may concern:
>
> Enclosed are the supplemental materials/clarifications you requested:

---

12        After submitting their HAMP application on December 28, 2013, on April 14, 2014, the Loughrans filed their IRS 1040 tax form for 2013 and line 16b indicated taxable income of **$59,149** for pensions and annuities.

1.) Signed 2013 tax returns for Kiddie Kampus Early Learning Center with ownership stated.
2.) 401k paperwork when I switched jobs from Brakur to Eurotech. The payout was a one time payout of which I put the balance into an ING fund for retirement. It does not and will not pay me until retirement. This was submitted with the October paperwork. The withdrawn money was to cover taxes for 2013.

Thank you,

Dan Loughran

12/30/2014

199.     Under both Illinois and Federal laws, an Individual's Retirement Account (IRA) is exempt from judgments by creditors. The United States Bankruptcy Code (11 U.S.C. 522 (b)(3)(C) ) and the Illinois Code of Civil Procedure (735 ILCS 5/12-1006) ("Exemption for Retirement Plans") both contain "exemptions" for retirement funds. This is a clear legislative policy of protecting retirement plans from creditor claims.

200.     The mortgage loan from Wells Fargo Home Mortgage was secured by the home that the Loughrans designed and built in 2005 through a construction loan. So, despite the security interest Wells Fargo had in the family's home, Wells Fargo, as will be seen below, ravenously desired the family's meager Individual Retirement Account as well. The Loughrans did not have to borrow money from Wells Fargo Bank in 2005 but chose Wells Fargo Bank because of its staid image which has since been exposed as a façade – like the foreclosure Plaintiff in the Loughrans' foreclosure case.

## 2015

201.     On February 2, 2015, Woodworth relayed a message from his client which stated:

My client has requested the following clarification about Mrs. Loughran's income documentation:

Income Documentation Self Employed

> Other 2013 1120 tax returns state $51,600 expensed in compensation of officers, Mrs. Loughran is one of those officers; does Mrs. Loughran currently receive income from the child care business in addition to her bi-weekly salary?  The P&L statement for Kiddie Kampus Learning Center does not state any expenses for compensation of officers.

Please confirm receipt of this email.

202.    On February 3, 2015, Margaret Loughran replied: "The $51,600.00 is the set salary of the officers combined.  Margaret and her partner have a bi weekly salary only.  They do not take bonuses. Thank you, Margaret Loughran

203.    On February 17, 2015, Woodworth replied: "It looks like it answered my client's questions. Please find attached correspondence confirming receipt of all materials necessary to start the review."

204.    The letter attached to the Feb 17 email from Woodruff was dated February 13, 2015, and was from Ashley Roulson at Wells Fargo and states, in pertinent part:

> I'm writing to follow up with you about your request for a loan modification. As your home preservation specialist and dedicated point of contact, I'd like to thank you for responding to our request for documentation.  What happens next.  Now that we've received your documents, we'll carefully review what you've submitted to determine if you're eligible for mortgage payment assistance through a loan modification.  Please note that it may take up to 30 days for us to review your documents."

205.    On March 11, 2015, Woodworth sent an email which stated:

> Please find attached correspondence from my client regarding an offer of a non-HAMP TPP.  My client contact has also told me that they will be forwarding me the HAMP denial letter, which I will also pass on to you as soon as I receive it.
>
> I would appreciate it if you could confirm that you received this email and the PDF attachment because there are some deadlines relating to appeal and/or acceptance specified in the letter.  If you or your clients have any questions please do not hesitate to email me or call.

206. The letter attached to the March 11 email from Woodworth was dated March 9, 2015,

was from Wells Fargo with the subject line "Trial Period Plan Agreement," and, with emphasis

added, stated:

> Dear DANIEL LOUGHRAN and MARGARET LOUGHRAN,
>
> We have good news about the above referenced loan. Our goal is simple. We want to ensure that you have every opportunity to retain your home. Based on our telephone conversation and the financial information you provided, we would like to offer you a Trial Payment Plan ("Agreement").
>
> As agreed, you have promised to pay the amounts stated within the Agreement, the terms and conditions of which are outlined on a subsequent page.
>
> To accept this offer, please call us at the phone number listed on this letter no later than 15 calendar days from the date listed at the top of this letter or send in your new payment by the due date, as listed on the Trial Payment Plan Agreement Terms and Conditions page, instead of your normal monthly mortgage payment.
>
> This is not a waiver of the accrued interest or future payments that become due, but a payment plan showing you can make regular monthly payments. *Please note that investor approval is still pending.* Upon successful completion of this Agreement, we will review your loan for a temporary loan modification. If you are approved, this will satisfy the remaining past due payments on your loan and we will send you a temporary loan modification agreement. Please note, to be eligible for the temporary loan modification agreement, you may be required to make an additional payment.
>
> Any payments received will be applied to the delinquent payments of the loan. During this Agreement, payments should be mailed to:
> Wells Fargo Home Mortgage
> 1200 W 7th Street
> Suite L2-200
> Los Angeles, CA 90017

207. On page 5 of 5 of the March 9 letter, the payments required under this illusory contract

are stated:

> 5. Each payment must be remitted according to the schedule below:

| Payment number | Due date | Amount due |
|---|---|---|
| 1 | April 1, 2015 | **$59,140.81** |
| 2 | May 1, 2015 | $2,643.11 |
| 3 | June 1, 2015 | $2,643.11 |

208.　　The March 9, 2015 letter from Wells Fargo also has an option to appeal, which states:

> You have the right to appeal this decision
> …
> You can initiate an appeal in one of three ways:
> 1.Fax your appeal request to 1-866-590-8910
> 2.　Mail your appeal request to:
>    Wells Fargo Gentian Road
>    Suite 300 MAC X9999-01N
>    Eagan, MN　55121
> 3.　Call 1-877-816-4914 and follow the prompts.

209.　　On March 12, 2015, at 11:17 am, the Loughrans' attorney, Smith, sent an email to

Woodworth which states:

> The first payment is $59,140?? On April 1, 2015 … followed by 2
> payments of $2,643?
> So, my clients have 19 days to pay almost $60,000?
> That's homeowner assistance?

210.　　On March 12, 2015, at 12:54 pm, Smith sent another email to counsel for the Plaintiff

which stated:

> Please let me know if that's accurate or a mistake?
> I am waiting on you before I forward this to my clients.
> I want to be sure it's accurate before I alarm them.

211.　　On March 12, 2015, at 3:04 pm, Woodworth sent an email to the Loughrans' attorney,

Smith, which stated:

> Yes, my understanding is that the TPP payment schedule is accurate.
> Because your clients did not qualify for HAMP, this is the proprietary
> program available.  I understand that the initial payment is significant but,
> in my experience, proprietary programs often require these contribution
> payments.  I will be in my office for the rest of the afternoon, so please
> give me a call if you would like to discuss anything further.

212.    Smith sent another email to counsel for the Plaintiff which stated: "Doesn't seem to be made in good faith. To put it mildly."

213.    On or around March 20, 2015, Wells Fargo Bank denied (in a letter dated March 9, 2015) the Loughrans' application for a HAMP modification. The denial letter stated: *"We do not have the contractual authority to modify your loan because of limitations in our servicing agreement."* The denial letter was transmitted via the internet. Instead, on March 11 (in a letter also dated March 9, 2015) offered them a proprietary temporary payment plan ("TPP") which required a first payment of $59,140.81 due in 19 days therefrom.

214.    Wells Fargo Bank was trying to coerce the Loughrans to withdraw the money from their Individual Retirement Account (IRA), which Wells Fargo Bank learned of by way of the invasive process it subjected the Loughrans to over the preceding 14 months, which would otherwise be exempt from judgment by creditors.

215.    As previously stated, supra, under both Illinois and Federal laws, an individual's retirement account (IRA) is exempt from judgments by creditors. Both the United States Bankruptcy Code (11 U.S.C. 522 (b)(3)(C)) and the Illinois Code of Civil Procedure (735 ILCS 5/12-1006) contain "exemptions" for retirement plans. This is a clear legislative policy of protecting retirement plans from creditor claims.

216.    The TPP also obligated Wells Fargo Bank to do nothing in exchange for such a payment – i.e., it was an illusory contract – because it left Wells Fargo Bank the option to deny the Loughrans a permanent modification after three payments, including the first payment of $59,140.81.

217.     On April 29, 2015 (in a letter dated April 13, 2015), Wells Fargo Bank denied the

Loughrans' appeal of their HAMP application but, at the same time, urged the Loughrans to

make the first payment on the proprietary TPP of $59,140.81.

218.     The Loughrans did not accept the proprietary TPP.

219.     On March 20, 2015, Woodworth sent Smith an email which states: "Please find the

HAMP denial letter that I mentioned previously."

220.     The letter attached to the March 20 email from Woodworth was dated March 9, 2015,

was from Ashley Roulson at Wells Fargo, and states, with emphasis added, in pertinent part:

> Subject: Your request for assistance
> *Note: We service your mortgage on behalf of **your** investor, U.S. BANK, N.A. as*
> *trustee for WFMBS 2006-AR1.*
>
> Dear DANIEL LOUGHRAN & MARGARET LOUGHRAN:
>
> ...
>
> Decision on the federal government's Home Affordable Modification Program
> (HAMP)
>
> The Home Affordable Modification Program (HAMP) is a written agreement that
> modifies a customer's original loan terms to create more affordable payments.
> There are two separate groups of eligibility criteria under HAMP.
> HAMP Tier 1: In general, this option may be available to customers whose loan is
> in default or imminent default (one – or more payments are – or will be – more than
> 30 days late) on their primary residence. We carefully reviewed the information
> you provided us and at this time, you do not meet the requirements of HAMP Tier
> 1 because:
>
> *We do not have contractual authority to modify your loan because of limitations*
> *in our servicing agreement.*
>
> HAMP Tier 2: This option may be available to customers who do not currently
> meet the qualifications for Tier 1 or may have previously received assistance
> under Tier 1.  We carefully reviewed the information you provided us and at this
> time, you do not meet the requirements of HAMP Tier 2 because:
>
> *We do not have the contractual authority to modify your loan because of*
> *limitations in our servicing agreement.*

You have the right to appeal this decision
Carefully read over this letter, which states Wells Fargo's decision.  If you believe the decision is incorrect and want to appeal the decision, you may submit your appeal request in writing or by phone.

If you choose to submit your request in writing, we have enclosed an Appeal Request Form for your convenience.  Or you can write a letter of your own that explains the reason you disagree with the decision.

You can initiate an appeal in one of three ways:
1. Fax your appeal request to 1-866-590-8910.

2. Mail your appeal request to:
1000 Blue Gentian Road,
Suite 300 MAC X9999-01N,
Eagan, MN  55121

3.  Call 1-877-816-4914 and follow the prompts.

221.    Between March 20 and March 24, 2015, the Loughrans appealed the denial of their

HAMP application.  On April 6, 2015, Woodworth sent a letter from Wells Fargo dated March

24, 2015, which stated, in pertinent part: "We have received your request to appeal the decision

we made about your mortgage loan.  You specified that you intend to provide additional

information for our consideration at a later time."

222.    On April 14, 2015, Woodworth sent a letter from Wells Fargo dated April 9, 2015.  The

April 9 letter, signed by Ashley Roulson, Home Preservation Specialist, Wells Fargo Home

Mortgage, states in pertinent part:

We have received your request to appeal the decision we made about your mortgage loan and additional information you provided to help us look into your request (if applicable).  We are writing to let you know your appeal request has been sent to our underwriting team for a review of the decision.

223.    On April 29, 2015, despite the Loughrans' appeal of the denial of their HAMP

modification application Woodworth sent a letter in pursuit of the money in Dan Loughran's

IRA, which is otherwise legally protected from creditors under federal and Illinois law. The email states:

> Please find attached correspondence regarding your clients' appeal.
>
> Also, my client informed me that they are able to accept the first payment on the non-HAMP TPP if it is submitted by tomorrow, April 30, 2015. Could you please let me know if they are planning on accepting the TPP and making the payment? From your correspondence, I assume that the answer is no, but I wanted to confirm that with you.

(See copy of April 29 email attached hereto as Exhibit Y.)

224. The letter attached to the April 29 email from Woodworth was dated April 13, 2015, was from Ashley Roulson at Wells Fargo, and states, in pertinent part:

> Subject: Decision on your loan modification and next steps
>
> Dear Daniel F Loughran & Margaret M Loughran:
>
> In response to your appeal request, we have completed a review of the decision we made about your mortgage.
>
> Here's what we found
> After carefully reviewing the information we currently have, we have determined that the decision has not changed.
>
> Important next steps
> You are eligible for the same loan modification program that your were originally offered. It is important that you continue to make trial plan payments as scheduled and follow the instructions in your original Trial Period Plan package.
>
> If you have not already accepted the original offer please call me at the phone number listed below no later than 15 calendar days from the date listed at the top of this letter or send in your monthly trial period payment instead of your normal monthly mortgage payment.
>
> We're here for you
> If you have any questions about our reviewed decision, or want to discuss other options to avoid foreclosure, please call the phone number below.

(See copy of Apr 13 letter attached hereto as Exhibit Z.) (Bold in original.)(Italics added.)

225.    On June 8, 2015, Woodworth sent an email, which stated: "Please find attached

correspondence to your clients."

226.    The letter attached to the June 8 email from Woodworth was dated June 1, 2015, was

from Ashley Roulson at Wells Fargo, and states in pertinent part:

> Subject: Your request for assistance
>
> *Note: We service your mortgage on behalf of **your** investor, U.S. Bank,*
> *N.A. as Trustee for, WFMBS 2006-AR1.*
>
> Dear DANIEL F LOUGHRAN and MARGARET M LOUGHRAN:
>
> We're responding to your request for assistance and the options that may
> be available to help you. We realize that the process can take some time,
> and we appreciate your patience while we review your options.
>
> **Here's what we found**
> We carefully reviewed the information you provided us, which included a
> process that compared your information to qualifications for assistance
> associated with your loan.  Here is the result of that review.
>
> At this time, you do not meet the requirements of the program because:
> We have not received all of the required trial payments. Please note: If you
> have made any trial payments, we will handle those payments according to
> your mortgage documents.

(Italics added for emphasis.)

227.    On June 24, 2015, the Loughrans filed a motion for substitution of attorney and it was

granted on the same day.  The Loughrans' attorney, John Smith of Law Office of John Smith,

was substituted for Edward Anderson of Chuck Bretz & Associates, P.C.

228.    On or after October 4, 2015, pursuant to the "Sunset" provision contained at page E-16 of

Exhibit E of the Consent Judgment, the Servicing Standards of the Wells Fargo Consent

Judgment were no longer mandated.

### *US Bank's Motion to Strike Loughrans' Affirmative Defenses and Dismiss Counterclaim – Filed Oct 15, 2015*

229.    On October 21, 2015, foreclosure Plaintiff via Mayer Brown LLP filed a motion to strike the Loughrans' affirmative defenses and dismiss their counterclaim.  Attached to the motion to strike was a copy of the Note with a blank endorsement signed by Joann Mills and an affidavit of Teri Townsend, an employee of Wells Fargo Bank.  In the affidavit, Townsend avers: "Wells Fargo endorsed the Note in blank.  Wells Fargo continues to service the Note and Mortgage."  Townsend signed the affidavit on October 15, 2015, and the affidavit was notarized by Brandy L. McCracken, licensed notary in the State of Iowa.

230.    Foreclosure Plaintiff (Wells Fargo Bank under the guise of "US Bank") stated in its Motion to Strike that it was not the loan originator (Wells Fargo Bank) and that it (Wells Fargo Bank under the guise of "US Bank") possessed the original promissory note with the blank endorsement.  The motion to strike was signed by attorney for Mayer Brown, Amrit Kapai.  The motion to strike was transmitted for filing with the court clerk and/or service upon Loughrans' attorney(s) by Defendants, Mayer Brown, on behalf of Wells Fargo, using the mail and/or wires via the internet.

231.    Foreclosure Plaintiff with regard to the Loughrans' First Affirmative Defense ("Failure of Condition Precedent")("Plaintiff failed to comply with Treasury guidelines which require Plaintiff to participate in mortgage foreclosure mitigation programs consistent with the eligibility and modification requirements of the Making Home Affordable and HOPE for Homeowner foreclosure mitigation programs.") stated, inter alia, the following:

> Defendant do not allege any well-pleaded facts showing that Plaintiff has
> obligations under any of the programs that they mention.  Defendants'
> generic allegation that Wells Fargo participated in the Troubled Asset
> Relief Program ("TARP") (*see* Ans. At 2, ¶ 1). Does not support their
> contention that Plaintiff is somehow bound by the terms of the Capital

> Purchase Program, HAMP, or any other federal program (*see id.* At 6, ¶¶ 24-26). **Plaintiff certainly is not required to modify Defendant's mortgage because of an agreement between its loan servicer, Wells Fargo, and the federal government. The HAMP guidelines expressly recognize that investors, such as Plaintiff, may impose limitations on loss mitigation options.** *See, e.g.*, HUD, *Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages* ch.1, § 1.1 (v. 4.5 June 1, 2015)(**servicers need not following HAMP guidelines if "prohibited by the rules of the applicable pooling and servicing agreement and/or other investor servicing agreements"**), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_45.pdf.; ...

(Emphasis in bold added.)

232.    The Motion to Strike was supported by the affidavit of Teri Townsend, employee of Wells Fargo, signed on October 15, 2015, and notarized by Brandy L. McCracken, licensed notary in the State of Iowa. The affidavit of Townsend states that Wells Fargo endorsed the Note in blank and continues to service the Note but made the material omission that Wells Fargo continued to possess the Note. The Motion to Strike, signed by Amrit Kapai, stated that US Bank possessed the Note through negotiation (transfer of possession) from Wells Fargo.

233.    Townsend omitted the material fact that Wells Fargo Bank continued to hold the Note. Instead, in its motion to strike, with regard to the Loughrans' fourth affirmative defense of lack of standing by US Bank NA, foreclosure Plaintiff states:

> The most charitable reading that this court could give to their allegations is that they are alleging that Plaintiff [US Bank NA] did not originate the mortgage loan. But the mortgage expressly provides that it may be assigned along with the Note, so the fact that Plaintiff [US Bank NA] was not the original lender [Wells Fargo Bank] does not defeat Plaintiff's claim.
>
>     Furthermore, Plaintiff defeats Defendants' lack of standing defense by holding the blank-indorsed Note. Townsend Aff., ¶4(a); *id.* Ex. A. Under Illinois law, a foreclosure may be brought by any "legal holder of the indebtedness." 735 ILCS 5/15-1504(a)(3)(N). See 735 ILCS 5/15-1208. To become a "holder" of an instrument payable to a particular person, one may be transferred the indorsed note through "negotiation." 810 ILCS 5/3-104(a), (e), 3-201(a), (b).

> …
> By holding the underlying blank-indorsed note, Plaintiff [US Bank NA]
> has proved it holds the note and is therefore the property [sic] party to
> pursue this foreclosure.  735 ILCS 5/15-1208; *see also Fed. Nat'l Mortg.
> Ass'n. v. Kuipers*, 314 Ill. App. 3d 631, 635 (2d Dist. 2000)(transfer of a
> note effects an equitable transfer of the mortgage, thereby confirming a
> note-holder's standing to foreclose).  For this reason, Defendants' fourth
> affirmative defense should be stricken with prejudice.

234.    In reasonable reliance on the false statement by Amrit Kapai of Mayer Brown and the

material omission by Teri Townsend of Wells Fargo, the Loughrans did not file a response brief

to the foreclosure Plaintiff "US Bank's" Motion to Strike.

## 2016

235.    On February 17, 2016, the court granted the foreclosure Plaintiff's motion to strike the

Loughrans' affirmative defenses with prejudice and dismissed their counterclaim with prejudice.

### *Foreclosure Case Procedural History (Continued)*

236.    Later, on July 5, 2016, foreclosure Plaintiff filed a motion for summary judgment and for

foreclosure and sale against the Loughrans and supported the motion for summary judgment with

an affidavit of Welo G. Ahata-Nelson.  In his or her affidavit, Welo G. Ahata-Nelson, an

employee of Wells Fargo, states: "U.S. Bank National Association, as Trustee for Wells Fargo

Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR1 has

possession of the Note."  In its Motion for Summary Judgment at page 5 of 7, foreclosure

Plaintiff – Wells Fargo (under the guise of US Bank NA) – states: "Plaintiff is in possession of

the Note and is therefore authorized to enforce the Note and has standing to initiate these

foreclosure proceedings."  The motion for summary judgment was signed by attorney for

Defendant, Pierce & Associates, Ashley Griffith.  The foregoing motion for summary judgment

is fully incorporated herein by reference.

237.    Also, on July 5, 2016, foreclosure Plaintiff filed a motion for default judgment against foreclosure co-defendant, Wells Fargo Bank, for failure to file appearance and answer.  The foregoing motion for default judgment is fully incorporated herein by reference.

## 2017

238.    On June 7, 2017, the undersigned attorney, Smith (previously substituted by Chuck Bretz & Associates, P.C. on June 24, 2015) filed an additional appearance for the Loughrans in the foreclosure action pending in Grundy County.  The additional appearance filed by John Smith contained the address of Law Office of John Smith at 5062 Rockrose Court, Suite 4, Roscoe, IL 61073.

239.    On June 30, 2017, the Loughrans served the foreclosure Plaintiff with their First Set of Requests for Production of Documents to Plaintiff.

240.    On July 28, 2017, the foreclosure Plaintiff served the Loughrans with its Response to the Loughrans' First Request for Production of Documents.  The foregoing response was accompanied by a Certificate of Service that states it was mailed only to the Loughrans' attorney, John Smith, at "Law Office of John Smith, 5062 Rockrose Court, Suite 4, Roscoe, IL 61073." The Certificate of Service was signed by Tena Andric, attorney for Defendant, McCalla Raymer Liebert Pierce.

241.    In its Response to Loughrans' document production request, foreclosure Plaintiff's production of documents included a copy of the Note that contained a blank endorsement from Wells Fargo NA, signed by Joann Mills. This was the same copy that was attached to the foreclosure Plaintiff's Motion to Strike the Loughrans' Affirmative Defenses and Dismiss their Counterclaim.

242.     In its Response to Loughrans' document production request, Foreclosure Plaintiff also

responded with (i) an objection to the production of the Pooling and Servicing Agreement and

(ii) a statement that it was unable to locate the original Note at that time.  Foreclosure Plaintiff

stated as follows:

>  1. Copies of any documents concerning or related to the securitization of the
>     Loughrans' Note and/or Mortgage, if applicable, including but not limited to
>     the following: (a) the applicable Pooling and Servicing Agreement, along
>     with any exhibits and attachments; (b) any Prospectus; and (c) all
>     benchmark/guidelines for servicer performance.
>
>     RESPONSE: Plaintiff objects to this production request as it is vague,
>     ambiguous, overly broad, and unintelligible.
>
>     …
>
>  5. Make available for viewing the original of the loan document (i.e.
>     Note) executed by the Defendants together with any endorsements and/or
>     alonges.
>
>     RESPONSE: Plaintiff objects to this production request as it is vague,
>     ambiguous, and unintelligible. Subject to and without waiving these
>     objections, Plaintiff states that it shall make available for viewing the
>     original Note, executed on December 28, 2005, once the same is located in
>     Plaintiff's records.

243.     The Loughrans' Request to Produce contained a duty to seasonably supplement any

production response by Foreclosure Plaintiff.  The Request stated the following:

>  Duty to Seasonably Supplement:  This request for production is continuing
>  in nature.  If, after responding, you obtain or become aware of any
>  additional information, documents, communications, or tangible things
>  responsive to these requests, you shall produce them in a timely manner in
>  accordance with the Illinois Supreme Court Rules.

244.     Foreclosure Plaintiff never made the Note available for viewing to the Loughrans at any

time prior to the Loughrans' notice of filing of subpoena to Wells Fargo Bank with the Grundy

County Clerk on February 20, 2018, and never at any time after, up to and including March 29, 2018.[13]

245.    On September 20, 2017, foreclosure Plaintiff filed a motion for entry of judgment of foreclosure and order of sale wherein it states: "Plaintiff has established a prima facie case for foreclosure as it has introduced the Promissory Note and Mortgage secured thereby and the Defendant has not established any affirmative defenses."  Plaintiff attached to the motion for entry of judgment an affidavit of amounts due and owing signed on May 22, 2017, by Diane Duckett, a vice president of loan documentation of Wells Fargo Bank, N.A.  In the affidavit, Wells Fargo Bank is described as "the Servicing Agent for the Plaintiff in this action."  Duckett states: "U.S. Bank National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR1, has possession of the Promissory Note.  The Promissory Note was indorsed in blank."  The motion for entry of judgment of foreclosure and order of sale was transmitted for filing with the court clerk and/or

---

[13]   Nevertheless, attorney for foreclosure Plaintiff, Tena Andric of Defendant McCalla Raymer Liebert Pierce, falsely stated to the court in foreclosure Plaintiff's Emergency Motion to Quash, filed on February 26, 2018 the following:

> 5.      The Subpoena must be stricken as moot as the documents requested in the Subpoena are available for inspection with Plaintiff's Counsel.
> 8.      The Plaintiff had previously informed the Defendants that the original Note was being made available for inspection by Plaintiff.  As such, issuance of the Subpoena was not necessary and is a waste of resources.

The foregoing Emergency Motion to Quash was filed on February 26, 2018, and noticed to be heard on March 1, 2018, the same date as a previously scheduled status hearing.

  After the Loughrans filed, on March 14, 2018, a Motion for Sanctions for, inter alia, a false affidavit of service contained in the foreclosure Plaintiff's foregoing Emergency Motion to Quash, foreclosure Plaintiff filed, on March 21, 2018, a Second Emergency Motion to Quash, signed again by foreclosure Plaintiff's counsel, Tena Andric, in which it states:

> 20.     At all relevant times, Attorney Smith was fully aware that Wells Fargo was a party represented by counsel in the case.
> 21.     At all relevant times, Attorney Smith was fully aware that counsel for the Plaintiff had possession of the original Note and Mortgage and that it would be made available for viewing upon request of the Defendants.
> 22.     At all relevant times, prior to the filing of the Subpoena, the Defendants did not contact Plaintiff's counsel to arrange for inspection of the original Note and Mortgage.
> 23.     Defendants' Motion for Sanctions should additionally be stricken as it is completely devoid of facts and conclusory in its entirety.

service upon Loughrans' attorney(s) by Defendants, McCalla Raymer Liebert Pierce, on behalf

of Wells Fargo, using the mail and/or wires via the internet.

246.    Tena Andric also mailed this Sept 20, 2017, Motion for Judgment for Foreclosure and

Sale to the wrong address of Loughrans' lead attorney, the undersigned attorney Smith.

247.    On October 4, 2017, the Loughrans' lead attorney sent Tena Andric an email which

stated:

> Ms. Andric:
> On your motion for judgment proof of service, you have address for me on
> Gunnison Ave.
> But the recent appearance I filed, which you attached to recent email, has
> address in Roscoe, IL.
> Please update my address for future notices as follows:
>
> Law Office of John Smith
> 5062 Rockrose Court, Suite 4
> Roscoe, IL  61073
>
> Please disregard previous address in Chicago.
>
> Thank you kindly.
>
> John Smith

248.    On October 4, 2017, Attorney Tena Andric received the foregoing email regarding notice

of address change and instructed her legal assistant to make changes.  (This fact is established

now by foreclosure Plaintiff's Affidavit Regarding Attorney's fees filed in the foreclosure case

on January 8, 2019.)

249.    On October 11, 2017, the Loughrans filed a Motion to Compel the production of the

Pooling and Servicing Agreement for Wells Fargo Asset Securities Corporation, Mortgage Pass-

Through Certificates, Series 2006-AR1 ("WFMBS 2006-AR1").

250.    The Loughrans, in their Motion to Compel the PSA, stated, inter alia, the following:

Also, the Plaintiff, in its Motion to Strike the Loughran's affirmative defenses (filed on October 15, 2015) [sic] argued the following on page 5: "servicers need not following HAMP guidelines if 'prohibited by the rules of the applicable pooling and servicing agreement and/or other investor servicing agreements.'

251.    On October 20, 2017, attorney, Tena Andric, received an email from Tyler Alfermann, an attorney at Defendant, Mayer Brown, regarding the Loughrans' Motion to Compel the PSA and she responded thereto.  (This fact is established now by foreclosure Plaintiff's Affidavit Regarding Attorney's fees filed in the foreclosure case on January 8, 2019.)

252.    On November 27, 2017, foreclosure Plaintiff filed a Response to the Loughrans' Motion to Compel production of the Pooling and Servicing Agreement for WFMBS 2006-AR1. Foreclosure Plaintiff objected and claimed the PSA was irrelevant and that the Loughrans had no standing to request the PSA because they were not parties or beneficiaries to the PSA, to-wit:

Here, Plaintiff has established its *prima facie* case for mortgage foreclosure pursuant to Section 15-1504 of the Illinois Mortgage Foreclosure Act.  Plaintiff has properly attached a copy of the Note to the Complaint as prima facie evidence that it holds an interest in the Note. [Citations omitted.]  The Note is indorsed in blank from the original mortgagee, Wells Fargo Bank National Association.

Possession of bearer paper is prima facie evidence of title to it, and sufficient to entitle plaintiff to sue on the Instrument.  [Citations omitted.] The transfer of a mortgage note carries with it an equitable assignment of the mortgage by which it was secured.  [Citations omitted.]  Plaintiff has possession of the Note.

Plaintiff has additionally provided Defendants with the Assignment of Mortgage from the originator of the loan, Wells Fargo Bank, NA, to the Plaintiff ("AOM") in discovery production.  *See Exhibit A, Corporate Assignment of Mortgage.*  The AOM is additionally a matter of public record as it is recorded with the Grundy County Recorder's Office, recorded on January 12, 2012, and bearing instrument number 525597. *See Exhibit A.*  The AOM expressly memorializes the transfer of the loan from the original mortgagee into the Trust.

Illinois law holds that the Defendants lack standing to rely on the PSA in their defense of this foreclosure action.  The Defendants are not parties to the Trust and the AOM.  A litigant lacks standing to attack an

assignment to which s/he is not a party.  *Bank of America Nat. Ass'n v. Bassman FBT, LLC,* 2012 IL App (2d) 110729, *citing Liu v. T& Machine, Inc.*, 191 F.3d 790, 797-98 (7th Cir. 1999).  Defendants additionally nowhere claim third party beneficiary status to fir te narrow exception allowing standing to such parties in similar circumstances.  *Id.*  As the Defendants do not have standing to challenge the transfer of the loan into the Trust, the PSA is meaningless and irrelevant to them in their defense of this mortgage foreclosure proceeding.  As such, Plaintiff should not be compelled to produce a document lacking in relevancy to the defense against the mortgage foreclosure.

Additionally, the Defendants' Motion fails to include even a scintilla of evidence to rebut the Plaintiff's showing that the loan funded the Trust and that the Plaintiff has an interest in foreclosing on the loan and as such is not compelling in nature.

253.    The foregoing Response to the Loughrans' Motion to Compel the PSA was signed by attorney Tena Andric of Defendant, McCalla Raymer Liebert Pierce, after consultation with Tyler Alfermann of Defendant, Mayer Brown.

254.    The Response to Loughrans' Motion to Compel the PSA then references the AOM prepared by Pierce that's dated January 6, 2012, and filed on January 12, 2012.  However, the documents later produced by Wells Fargo Bank pursuant to subpoena on March 2, 2018, include two (2) *additional* assignments of the mortgage, including one executed from Wells Fargo Bank to US Bank NA in 2006, and another assignment of mortgage from Wells Fargo Bank to "[____]" (blank indorsement) in 2007, neither of which were filed in the county of Grundy, neither of which were produced pursuant to Loughrans' Rule 214 production requests, and all of which are a nullity in Illinois without the assignment or transfer of the Note.  It is the mortgage which follows the note and not vice-versa in Illinois.  *Yorke v. Citibank (In re BNT Terminals, Inc.),* 125 B.R. 963, 970 (N.D. Ill. 1990)(citing *Krueger v. Dorr,* 22 Ill.App.2d 513 (2nd Dist. 1959); *Moore v. Lewis,* 51 Ill.App.3d 388 (1st Dist. 1977); *Commercial Prods. Corp. v. Briegel*, 101 Ill.App.2d 156 (3rd Dist. 1968); *Lundy v. Messer*, 25 Ill.App.2d 513 (2nd Dist.

255.    So, foreclosure Plaintiff's response to the Loughrans' Rule 214 requests to produce documents and tangible things did not include the 2 additional conflicting assignments of mortgage (dated February 21, 2006 and November 19, 2007, respectively) produced by Wells Fargo Bank pursuant to subpoena.

256.    So, Wells Fargo Bank (under the guise of US Bank NA) through its attorneys Pierce created a false assignment of mortgage on January 6, 2012, to fraudulently claim standing by US Bank NA when standing did not exist and Pierce attorneys intended for the Loughrans to rely of the fraudulent "Corporate Assignment of Mortgage."

257.    The December 6, 2012, Assignment of Mortgage is not a memorialization of the earlier assignment(s) where the assignment of mortgage on November 19, 2007, superseded the assignment of mortgage on February 21, 2006, both are a nullity without assignment of the Note, and it was intended to fraudulently create the appearance of standing by US Bank, N.A., when standing did not exist.

258.    The Loughrans' original signed promissory Note remained in Wells Fargo's possession. The Loughrans' original signed promissory Note was never transferred or negotiated.

259.    On December 6, 2017, the Loughrans filed their Reply to their Motion to Compel the PSA. The Lougrans, in their Reply to their Motion to Compel the PSA at page 6 stated, inter alia, the following: "Again, as stated in our motion to compel, the plaintiff argued in its motion to strike the Loughrans' affirmative defenses that Wells Fargo doesn't have to comply with HAMP guidelines is prohibited by the PSA."

260.    On December 13, 2017, the court granted the Loughrans' Motion to Compel production of the PSA within 45 days. On the same date, the court set the next status hearing on March 1, 2018. The written order contains Judge Lance Peterson's handwriting, as follows:

Defendant's motion to compel is hereby granted based on the relevance
the PSA may have on the "HAMP" affirmative defenses.  Plaintiff shall
provide Defendants a copy of the PSA within 45 days.  Cause continued
for status to March 1, 2018 at 9:00 AM.

## **2018**

261.    The PSA was produced via email by foreclosure Plaintiff on January 30, 2018 (or 10 pm

on January 29, 2018).  The entire PSA is 430 pages so the entire document is not attached hereto

but is incorporated herein by reference.

262.    The PSA identifies the "Custodian" for the trust as Wells Fargo Bank.  Additionally, the

PSA identifies Wells Fargo Bank as the "Master Servicer," "Servicer," "Paying Agent," and

"Trust Administrator."  Wells Fargo Asset Securities Corporation, a wholly owned subsidiary of

Wells Fargo Bank, is identified as the "Depositor," and has a limited option to repurchase any

defaulted Mortgage Loan or REO Mortgage Loan during the following time periods: (i) after

initiation of foreclosure proceedings; (ii) after such defaulted Mortgage Loan has become a REO

Mortgage Loan; and (iii) after Servicer (Wells Fargo) accepts a contractual commitment by a

third party to purchase the Mortgaged Property related to the defaulted Mortgage Loan or REO

Mortgage Loan.  Wells Fargo also has the option to "repurchase" or "substitute" the Mortgage

Loans for other reasons stated in the PSA.

263.    The PSA at §3.08 states in pertinent part:

> The Master Servicer [Wells Fargo Bank] shall administer the Trust Estate
> on behalf of the Trustee [US Bank] and shall have full power and
> authority, acting alone or (subject to the requirements of Section 6.06)
> through one or more Subcontractors, to do any and all things in connection
> with such administration which it may deem necessary or desirable.  Upon
> the execution and delivery of this Agreement, and from time to time as
> may be required thereafter, the Trustee [US Bank] shall furnish the Master
> Servicer [Wells Fargo Bank] or its Subcontractors with any powers of
> attorney and such other documents as may be necessary or appropriate to
> enable the Master Servicer [Wells Fargo Bank] to carry out its
> administrative duties hereunder.

264.    The PSA at §3.04 states in pertinent part:

> Upon the occurrence of the event specified in clause (ii) of the preceding paragraph [when a document has been delivered to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially] the Trustee [US Bank] shall execute and deliver to the Master Servicer [Wells Fargo] or such Servicer [Wells Fargo], as directed by the Master Servicer, court pleadings, requests for trustee's sale or other documents necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity. Each such certification shall include a request that such pleadings or documents be executed by the Trustee and a statement as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure proceedings or trustee's sale.

265.    The PSA identifies US Bank, N.A. as the "Trustee" but it is a misnomer because the actual trustee, according to the definition of the word "trustee," is Wells Fargo Bank.

266.    At §3.08 of the PSA it states: "The relationship of the Master Servicer to the Trustee under this Agreement is intended by the parties to be that of an independent contractor and not that of a joint venture, partner or agent."

267.    Section 3.07 of the PSA states the following:

> Section 3.07 Amendments to Servicing Agreements,
> Modification of Standard Provisions.
>
> (a) ***Subject to the prior written consent of the Trustee pursuant to Section 3.07(b)*** and the prior written consent of the Depositor [Wells Fargo Asset Securities Corporation], the Master Servicer [Wells Fargo Bank] may, from time to time, to the extent permitted by the applicable Servicing Agreement, make such modifications and amendments to such Servicing Agreement as the Master Servicer deems necessary or appropriate to confirm or carry out more fully the intent and purpose of

such Servicing Agreement and the duties, responsibilities and obligations to be performed by the Servicer [Wells Fargo Bank] thereunder. Such modifications may only be made if they are consistent with the REMIC Provisions, as evidenced by an Opinion of Counsel. Prior to the issuance of any modification or amendment, the Master Servicer shall deliver to the Trustee and the Depositor such Opinion of Counsel and an Officer's Certificate setting forth (i) the provision that is to be modified or amended, (ii) the modification or amendment that the Master Servicer desires to issue and (iii) the reason or reasons for such proposed amendment or modification.

***(b) The Trustee shall consent to any amendment or supplement to a Servicing Agreement proposed by the Master Servicer pursuant to Section 3.07(a), which consent and amendment shall not require the consent of any Certificateholder if it is*** (i) for the purpose of curing any mistake or ambiguity, to further effect or protect the rights of the *Certificateholders **or (ii) for any other purpose***, provided such amendment or supplement for such other purpose cannot reasonably be expected to adversely affect Certificateholders. The lack of reasonable expectation of an adverse effect on Certificateholders may be established through the delivery to the Trustee of (i) an Opinion of Counsel to such effect or (ii) written notification from each Rating Agency to the effect that such amendment or supplement will not result in reduction of the current rating assigned by that Rating Agency to the Certificates. Notwithstanding the two immediately preceding sentences, the Trustee may, in its discretion, decline to enter into or consent to any such supplement or amendment if its own rights, duties or immunities shall be adversely affected.

(c)(i) Notwithstanding anything to the contrary in this Section 3.07, the Master Servicer from time to time may, without the consent of any Certificateholder or the Trustee, enter into an amendment (A) to an Other Servicing Agreement for the purpose of (i) eliminating or reducing Month End Interest and (ii) providing for the remittance of Full Unscheduled Principal Receipts by the applicable Servicer to the Master Servicer not later than the 24th day of each month (or if such day is not a Business Day, on the previous Business Day), (B) to the Wells Fargo Bank Servicing Agreement for the purpose of changing the applicable Remittance Date to the 18th day of each month (or if such day is not a Business Day, on the previous Business Day) or (C) to a Servicing Agreement for the purpose of effecting or facilitating compliance by the Servicer with Regulation AB or to conform a Servicing Agreement to industry practices relating to Regulation AB.

(ii) The Master Servicer may direct Wells Fargo Bank in its capacity as Servicer to enter into an amendment to the Wells Fargo Bank Servicing Agreement for the purposes described in Section 3.07(c)(i)(B) or (C).

268.    Section 7.01 of the PSA enumerates the powers of the Trustee upon the occurrence of an "Event of Default" and makes it clear that Wells Fargo is in total control and the Trustee has no powers unless and until an Event of Default and then only if not remedied by Wells Fargo within 60 days after notice of the default.  Sections 7.03 – 7.05 demonstrate that the "Trustee" is a trustee in name only and has no duties.

269.    Section 2.02 of the PSA states the following in pertinent part:

The Trustee shall be responsible for enforcing the Depositor's [Wells Fargo] obligations under this Section 2.02.  If the Trustee receives written notice from the Custodian [Wells Fargo] or the Master Servicer [Wells Fargo] that the defect is not cured by the Depositor [Wells Fargo] within 60 days after the Trustee's notice, the Trustee shall enforce the Depositor's obligation to repurchase such Mortgage Loan or substitute for such Mortgage Loan in accordance with the provisions of this Section 2.02. In connection with any substitution permitted by this Section 2.02, the Master Servicer shall verify that the unpaid principal balance and the Loan-to-Value Ratio of the Substitute Mortgage Loan satisfy the requirements of this Section 2.02.

270.    On February 12, 2018, the Loughrans caused Hennepin County District Court in Minnesota to issue a subpoena pursuant to the Uniform Interstate Discovery and Deposition Act. The subpoena (which was later served upon Wells Fargo Bank in Minneapolis, Minnesota) ordered the production of the following documents:

1.    The **original** Mortgage Note signed with moist ink by Daniel Loughran and Margaret Loughran, from the Custodial File for Wells Fargo Mortgage Loan Trust (Mortgage Pass-Through Securities), Series 2006-AR1;

2.    The **original** recorded Mortgage signed with moist ink by Daniel Loughran and Margaret Loughran, from the Custodial File for Wells Fargo Mortgage Loan Trust (Mortgage Pass-Through Securities), Series 2006-AR1;

3.     The **original** Assignment of Mortgage signed with moist ink by assignor, from the Custodial File for Wells Fargo Mortgage Loan Trust, Series 2006-AR1.

271.    On February 20, 2018, Loughrans e-filed a copy of the Subpoena to Wells Fargo Bank and Notice of Filing with the Clerk of the Grundy County Circuit Court and served it on the foreclosure Plaintiff.

271.    On February 21, 2018, the Subpoena and the statutory witness fee was served on Wells Fargo Bank in Minneapolis, Minnesota.

273.    On February 22, 2018, outside counsel for Wells Fargo Bank operating under the guise of "US BANK" at McCalla Raymer Liebert Pierce, possibly Tena Andric, was possibly whistling while she "reviewed and finalized for court-filing judgment package for hearing on 3/1/18" but thereafter was rudely interrupted and "reviewed Subpoena Duces Tecum and began drafting Motion to Quash on the same."

274.    Undeterred outside counsel at McCalla Raymer Liebert Pierce "processed and e-filed notice of filing, amended affidavit as to military service, amended attorney affidavit, and amended affidavit regarding attorney's fees."

275.    On February 23, 2018, outside counsel at McCalla Raymer Liebert Pierce. Possibly Tena Andric, "performed legal research on case law in support of quashing subpoena for documents; continued drafting of motion to quash."

276.    On February 25, 2018, outside counsel at McCalla Raymer Liebert Pierce, possibly Tena Andric, engaged in "legal research on motion to quash subpoena duces tecum; continued drafting of motion to quash."

277.    On February 26, 2018, the foreclosure Plaintiff filed an Emergency Motion to Quash the Subpoena to Wells Fargo Bank claiming: (i) "The Subpoena contains no executed "Return of Service" indicating that it was previously served on Wells Fargo Bank, NA, prior to filing with

the Court"; (ii) "The Subpoena must be stricken as it is moot as the documents requested in the Subpoena are available for inspection with Plaintiff's counsel"; (iii) "The Defendants have additionally circumvented Plaintiffs counsel in issuing the Subpoena to Wells Fargo Bank, NA, instead of serving Plaintiffs counsel with supplemental discovery, engaging in 201 (k) communications with Plaintiff, and, if necessary, filing a motion with this Court"; (iv) "The Subpoena is defective for the additional reason that it provides no foundation supporting the premise that Wells Fargo Bank, NA, would have possession of the original documents to the foregoing loan"; and (v) "The Subpoena fails to provide any witness fees." The Emergency Motion to Quash the Subpoena was signed by attorney Tena Andric of Defendant, McCalla Raymer Liebert Pierce.

278. The Emergency Motion to Quash the Subpoena was transmitted by Defendants, McCalla Raymer Liebert Pierce, on behalf of Wells Fargo, for filing with the court clerk using wires via the internet and service upon Loughrans' attorney(s) using the mail.

279. Tena Andric set the date of the foreclosure Plaintiff's Emergency Motion to Quash the Subpoena to Wells Fargo Bank on March 1, 2018 – the same date as the previously scheduled status hearing set by the court on December 13, 2017, when it granted the Loughrans' motion to compel production of the PSA.

280. Foreclosure Plaintiff's attorney intentionally removed the undersigned attorney Smith's correct address in Roscoe, Illinois, on the "Notice of Motion" for the Emergency Motion to Quash the Subpoena to Wells Fargo Bank and replaced it with the old address in Chicago, Illinois, and then signed the Proof of Service knowing she did not serve attorney Smith because she intentionally mailed it to the old address.

281.    The "Notice of Motion" contained the Loughrans' *lead attorney*, John Smith, in the service list with a wrong address and his correct address in the caption, which was the basis for a subsequent motion for sanctions pursuant to Section 1-109 of the Code of Civil Procedure, 735 ILCS 5/1-109.[14]

282.    The correct address appeared in the caption only on the "Notice of Motion" but not the "Notice of Filing" or the Emergency Motion to Quash the Subpoena.  The Caption in the Notice of Motion contains the following:

US BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR WELLS FARGO
ASSET SECURITIES CORPORATION
MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2006-ARl,
PLAINTIFF,

VS.

LAW OFFICE OF JOHN SMITH 5062
ROCKROSE COURT, SUITE 4 ROSCOE,
IL 61073; MARGARET M LOUGHRAN;
THE HIGHLANDS SUBDIVISION
COMMUNITY ASSOCIATION; WELLS
FARGO BANK, N.A.; UNKNOWN
OWNERS AND NON-RECORD
CLAIMANTS,
DEFENDANTS.

283.    The correct address in Roscoe, Illinois, ended up in the caption and the old address ended up in the service list.

---

[14] John Smith was the Loughrans' lead attorney *de facto* based on the fact the Loughrans' other attorneys, Chuck Bretz & Associates, P.C., only appeared on three (out of six) status hearing dates in the almost two years during which John Smith was not an attorney of record (between June 24, 2015, and June 7, 2017) and did not draft any pleadings or issue any discovery in the foreclosure case.  Until there was reasonable cause to suspect the foreclosure Plaintiffs' motion to strike the Loughrans' affirmative defenses and strike their counterclaim (filed on October 21, 2015) was based on false statements of material fact, the Loughrans did not know of another valid defense to the foreclosure action filed in the name of "US Bank, N.A., as Trustee for the Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-AR1."

284. Also, the Loughrans' other attorneys at Chuck Bretz & Associates, P.C., were served but, again, it was via United States Postal Service ("snail mail") three (3) days prior and Illinois Supreme Court Rule 12 states that service is complete four (4) days after mailing. Even so, such manner of service is not allowed under Illinois Supreme Court Rule 11(c), but requires service via electronic mail, "emergency" or not.

285. The Emergency Motion to Quash the Subpoena to Wells Fargo Bank was not faxed or emailed to the Loughrans' attorneys, despite its "emergency" designation, but was mailed via postal service just 3 days prior to its date set for hearing.

286. On February 28, 2018, Tena Andric gave detailed instruction over the telephone wires to local appearance attorney, Jerry Justice, before the previously scheduled status hearing on March 1, 2018, and, after speaking to Tena Andric, Jerry Justice informed the court that the original promissory note sought by the Loughrans in their subpoena to Wells Fargo was located at the office of foreclosure Plaintiff "US Bank's" attorneys. Upon information and belief, Tena Andric during the telephone call with Jerry Justice before March 1, 2018, told him to inform the court that the original promissory note was at the office of foreclosure Plaintiff's ("US Bank's") attorney's office even though Tena Andric knew that she did not have the original promissory note at her office.

287. On March 1, 2018, unbeknownst to the Loughrans' lead attorney, the emergency motion to quash was presented to the court at the same time as the previously scheduled case status hearing but the order entered by the court did not make any ruling on the Emergency Motion to Quash.

288. On March 2, 2018, the Loughrans' lead attorney Smith travelled to Minneapolis, Minnesota, for the document production pursuant to the subpoena to Wells Fargo Bank and no

one from Wells Fargo Bank appeared but copies of the originals in the possession of Wells Fargo

Bank had already been delivered via Fedex before March 2, 2018.

289.     Wells Fargo Home Mortgage included a letter to accompany the documents produced.

The letter was dated February 28, 2018.  The letter was signed by Nicholas Grayson, Subpoena

Processing Department, Wells Fargo Home Mortgage.  The letter stated:


> Dear John P Smith:
>
> Enclosed are the documents from our loan file 708-0061503645 for Daniel
> F Loughran and Margaret M Loughran, as requested by the legal order.
>
> If applicable, an invoice will be enclosed for our copying expenses. Please
> remit payment to the address above within 30 days to the attention of the
> Subpoena Processing Department, made payable to Wells Fargo Bank,
> N.A.
>
> If you are exempt from paying for document reproduction you are
> required to provide us with written proof of exemption. You may send
> your proof in writing via fax to 877-302-0964 or to the address referenced
> above.
>
> If you have questions, please call us at 1-240-651-2246, Monday through
> Friday, 7:30 a.m. to
> 4:00 p.m. Eastern Time.
>
> Sincerely,
> Nicholas C. Grayson
> Subpoena Processing Department
> Wells Fargo Home Mortgage
>
> Enclosure(s)
>
> Documents enclosed are printed copies of the note (5 pages,) mortgage (20
> pages,) and assignments (8 pages). Please note, original documents have
> not been provided, these are copies.

290.     Wells Fargo Home Mortgage produced a copy of the Note which was the same as the

copy of the Note attached to foreclosure Plaintiff's Motion to Strike the Loughrans' affirmative

defenses and counterclaim.

291.    Wells Fargo Home Mortgage also produced three assignments of mortgage, including the aforementioned "Corporate Assignment of Mortgage" signed by Wells Fargo Bank on January 6, 2012 and filed in the Grundy County Recorder Office on January 12, 2012.  However, the other two copies included an "Assignment of Mortgage/Deed of Trust" dated February 21, 2006, assigned to "US Bank, as Trustee," and a later superseding "Assignment of Mortgage/Deed of Trust" dated November 19, 2007, assigned to "[      ]" – blank.. So the "Corporate Assignment of Mortgage" signed by Wells Fargo Bank on January 6, 2012, and filed on January 12, 2012, and produced on July 28, 2017, and attached to foreclosure Plaintiff's Response to Loughrans' Motion to Compel the PSA did not "expressly memorialize[] the transfer of the loan from the original mortgagee into the Trust" as stated in foreclosure Plaintiff's Response to the Motion to Compel the PSA signed by Tena Andric.

292.    On March 12, 2018, Loughrans' attorney Smith contacted corporate counsel for nonparty (co-defendant in default) Wells Fargo and offered to accept, in lieu of filing a motion for contempt in Minnesota (Hennepin County), a color photo via .jpeg file via email.

293.    On March 13, 2018, counsel for Wells Fargo Bank, Blake Lindevig, replied via email to Smith and offered to produce "color, high-quality copies" via e-mail in lieu of a physical inspection of the original in Wells Fargo Bank's possession, to-wit:

> Here's my suggestion.  I could ask the folks to make color, high-quality copies and produce them to you.  After you review the color copies, you could then let us know if you still want to proceed with an inspection.
>
> Does that approach work?

294.    On March 14, 2018, outside counsel for Wells Fargo Bank at McCalla Raymer Liebert Pierce, Tena Andric, "received, reviewed, Notice of Filing and Amended Subpoena Duces Tecum which includes proof of payment and process service affidavit of service on Wells Fargo;

began drafting Second Emergency Motion to Quash Subpoena." (This fact is established now by foreclosure Plaintiff's Affidavit Regarding Attorney's fees filed in the foreclosure case on January 8, 2019.)

295.    On March 14, 2018, the Loughrans e-filed their motion for sanctions pursuant to section 1-109 of Code of Civil Procedure and Supreme Court Rules 137 & 219(c) against US Bank, NA, and McCalla Raymer Liebert Pierce for (i) the false affidavit of service – i.e., "sewer service" – signed by Tena Andric and attached to its Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo Bank and (ii) based on Wells Fargo's possession of the original promissory note despite foreclosure Plaintiff's previous pleadings stating US Bank had possession.

296.    The Loughrans' motion for sanctions was scheduled for presentment on April 6, 2018.

297.    On March 15, 2018, outside counsel for Wells Fargo Bank at McCalla Raymer Liebert Pierce, Tena Andric, engaged in "multiple email and telephone correspondence with counsel Blake Lindevig from Wells Fargo and Michelle Dohra from Mayer Brown regarding subpoena for documents; reviewed correspondence from opposing counsel John Smith to Wells Fargo." (This fact is established now by foreclosure Plaintiff's Affidavit Regarding Attorney's fees filed in the foreclosure case on January 8, 2019.)

298.    On March 15, 2018, foreclosure Plaintiff's attorney, Tena Andric, who previously filed the Emergency Motion to Quash the Subpoena to Wells Fargo Bank and signed the proof of service subject to section 1-109 under penalties of perjury, sent an email to the Loughrans' attorney stating "cease and desist immediately" claiming for the first time "As you are aware, my office represents Wells Fargo, NA, in this matter," to-wit:

>       Good Afternoon, John, and
>       Good Afternoon, Ed.

My office has been informed that you have initiated direct contact with one or more Wells Fargo representatives regarding the matter US BANK, NA, AS TRUSTEE FOR WELLS FARGO V. MARGARET AND DANIEL LOUGHRAN, 11-CH-373, filed in Grundy County, Illinois. As you are aware, my office represents Wells Fargo, NA, in this matter. A gentle reminder. "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or by a court order." Illinois Rules of Professional Conduct 4.2

You are hereby informed to cease and desist immediately all communication with Wells Fargo regarding the above-stated matter.

299.    Tena Andric is the same attorney who signed the foreclosure Plaintiff's Response to the

Loughran's Motion to Compel the PSA, which states, with emphasis added, as follows:

Here, Plaintiff [U.S. Bank, N.A.] has established its *prima facie* case for mortgage foreclosure pursuant to Section 15-1504 of the Illinois Mortgage Foreclosure Act. Plaintiff has properly attached a copy of the Note to the Complaint as prima facie evidence that it holds an interest in the Note. [Citations omitted.]  **The Note is indorsed in blank from the original mortgagee, Wells Fargo Bank National Association.**
    Possession of bearer paper is prima facie evidence of title to it, and sufficient to entitle plaintiff to sue on the Instrument. [Citations omitted.] The transfer of a mortgage note carries with it an equitable assignment of the mortgage by which it was secured. [Citations omitted.] **Plaintiff [U.S. Bank, N.A.] has possession of the Note.**
    **Plaintiff [U.S. Bank, N.A.] has additionally provided Defendants with the Assignment of Mortgage from the originator of the loan, Wells Fargo Bank, NA, to the Plaintiff ("AOM") in discovery production.** *See Exhibit A, Corporate Assignment of Mortgage.* The AOM is additionally a matter of public record as it is recorded with the Grundy County Recorder's Office, recorded on January 12, 2012, and bearing instrument number 525597. *See Exhibit A.* The AOM expressly memorializes the transfer of the loan from the original mortgagee into the Trust.

300.    Tena Andric is the same attorney who signed the foreclosure Plaintiff's Certificate on

September 18, 2017, that all defendants including "Wells Fargo Bank, N.A." had been served

with the foreclosure complaint and that Wells Fargo failed to file an appearance.  She also signed

a motion for default judgment against the following named and served defendants:

> THE HIGHLANDS SUBDIVISION COMMUNITY ASSOCIATION
> WELLS FARGO BANK, N.A.

301.    On March 20, 2018, Tena Andric "Finalized the Plaintiff's Second Emergency Motion to

Quash Subpoena for court-filing; sent email to Brent Adgerson regarding approval of filing

Motion." On March 21, 2018, Tena Andric "Reviewed and responded to email correspondence

from Brent Adgerson regarding filing of Second Emergency Motion to Quash; finalized the

same; drafted and finalized all corresponding notices; reviewed local rules for emergency

motions."  (This fact is established now by foreclosure Plaintiff's Affidavit Regarding Attorney's

fees filed in the foreclosure case on January 8, 2019.)

302.    On March 21, 2018, foreclosure Plaintiff used the internet via wire to file its Second

Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo, signed by Pierce attorney

Tena Andric, to be heard one week prior to the Loughrans' motion for sanctions pursuant to

section 1-109 and Supreme Court Rules 137 & 219(c), in which foreclosure Plaintiff now, unlike

in its first "Emergency Motion to Quash Subpoena" to Wells Fargo Bank, replaced the name

"Wells Fargo Bank" with "Plaintiff" in her reference to the deponent, and made many false

statements, including but not limited to the following:

> 11. On or about March 12, 2018, Attorney Smith contacted Plaintiff – not
> through its counsel but directly – and requested to inspect the same
> original documents named in the Subpoena.
>
> 12.  Attorney Smith was previously made aware, on several occasions, that
> the original documents requested in the Subpoena were not held by the
> Plaintiff and were available for viewing with Plaintiff's counsel.  At all
> relevant times, Attorney Smith was aware that Plaintiff was represented by
> its counsel of record.  In fact, Attorney Smith had this information prior to
> the very filing of the Subpoena.

13.  On or about March 13, 2018, Attorney Smith ***again directly contacted*** the Plaintiff regarding the Subpoena.

14.  In the email of March 13, 2018, Attorney Smith expressly represented to the Plaintiff his pattern and practice of directly contacting the Plaintiff while he had sufficient information that the party was represented by counsel in a matter.

15.  Again, on March 14, 2018, less that twenty-four hours following his prior email, Attorney Smith ***again direcly contacted*** the Plaintiff.

16.  In the March 14, 2018 email, ***Attorney Smith falsely represented that no motion to quash was filed in the case to the Plaintiff.***
…

20. At all relevant times, Attorney Smith was fully aware that Wells Fargo was a party represented by counsel in the case.
…
22. At all relevant times, Attorney Smith was fully aware that counsel for the Plaintiff had possession of the original Note and Mortgage and that it would be made available for viewing upon request of the Defendants.

(Emphasis in original.)

303.    So, once Tena Andric knew that the Loughrans proved US Bank did not have possession of the original promissory Note, she claimed Wells Fargo Bank was Plaintiff all along, despite previous denials.

304.    The Second Emergency Motion to Quash Defendants' Subpoena at ¶20 states: "At all relevant times, Attorney Smith was fully aware that Wells Fargo was a party represented by counsel in this case."  However, on no less than two occasions, Plaintiff denied it was Wells Fargo and, on no less than four occasions, stated that US Bank, N.A., had possession of the Note. Foreclosure Plaintiff never made Attorney Smith aware that Wells Fargo was a party represented by counsel in this case because of foreclosure Plaintiff's denials and because Wells Fargo Bank was named a co-defendant in this case and on July 5, 2016, and September 20, 2017, foreclosure Plaintiff filed a motion for default judgment against Wells Fargo Bank for failure to appear.

305.     The Second Emergency Motion to Quash Defendants' Subpoena at ¶22 states:  "At all relevant times, prior to the filing of the Subpoena, the Defendants did not contact Plaintiff's counsel to arrange for inspection of the original Note and Mortgage."  However, the Loughrans had the burden to prove Loughrans' affirmative defense that US Bank, NA, as trustee for the certificate holders did not have standing to bring this foreclosure action on December 28, 2011. The Loughrans burden to prove their affirmative defense of Plaintiff's lack of standing is not met by taking foreclosure Plaintiff's attorneys at their word that US Bank NA has possession of the Note.  Moreover, foreclosure Plaintiff had a continuing duty to supplement its July 28, 2017, Response to the Loughrans' Supreme Court Rule 214 Request to "make available for viewing the original of the loan document (the Note)" but never did so.[15]

306.     Upon information and belief, this attempt to defraud the Loughrans and the Grundy County court is the same scheme to defraud the members of the Proposed Class and other courts that has continued and still continues since before and after the "National Mortgage Settlement" with the United States Department of Justice and the 49 States' Attorneys General.

307.     By (1) producing the original Note through its foreclosure attorneys who (2) knowingly filed the foreclosure actions in the name of an improper party (i.e., the "Trustee" identified in a Pooling and Servicing Agreement) and (3) omitting the material fact that the original Note being produced came not from the "Trustee" but from Wells Fargo Bank, the Defendants, Wells Fargo Bank, Mayer Brown LLP, and McCalla Raymer Liebert Pierce LLC, and Does 1-100 are

---

[15] The Loughrans' Request to Produce contained a duty to seasonably supplement any production response by Plaintiff.  The Request stated the following:

> Duty to Seasonably Supplement:  This request for production is continuing in nature.  **If, after responding, you obtain or become aware of any additional information, documents, communications, or tangible things responsive to these requests, you shall produce them in a timely manner in accordance with the Illinois Supreme Court Rules.**

engaged in a civil conspiracy and comprise an enterprise and scheme to defraud in violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§1961-1968.

308.    The Second Emergency Motion to Quash Loughrans' Subpoena to Wells Fargo Bank at ¶23 states: "Defendants' motion for sanctions should additionally be stricken as it is completely devoid of facts and conclusory in its entirety."  However, the Loughrans' motion for sanctions had not yet been presented at this time and, in response to this Second "Emergency" Motion to Quash Subpoena, the Loughrans were forced to re-notice their motion for sanctions (set for April 6, 2018) and advance it for the same date (March 29, 2018) as Plaintiff's Second Emergency Motion to Quash Loughrans' Subpoena to Wells Fargo Bank.

309.    Thereafter, on March 29, 2018, Tena Andric appeared in court, perhaps for the first time on the Loughrans' case and she undoubtedly hopes the last, and the judge was angry at Loughrans based on the false statements of Jerry Justice made at Tena Andric's direction on March 1, 2018, during the status hearing and foreclosure Plaintiff's rehearsed and improperly noticed emergency motion to quash the Loughrans' Subpoena to Wells Fargo Bank.   The court set a briefing schedule for the Loughrans' motion for sanctions and Plaintiff's Second Emergency Motion to Quash Subpoena with a hearing date on June 15, 2018.

310.    Foreclosure Plaintiff's attorney Tena Andric falsely represented to the court on March 29, 2018, that the original promissory note was at her office and/or confirmed the false statements made by Jerry Justice according to her instructions on March 1, 2018.  Edward Anderson appeared for the Loughrans.

311.    On April 12, 2018, the Loughrans filed their motion for leave to file a third-party complaint against Wells Fargo Bank, alleging violation of the Illinois Consumer Fraud & Deceptive Business Practices Act and intentional misrepresentation stemming from the denial on

April 29, 2015, of their HAMP modification application.  On April 20, 2018, the court set a

briefing schedule for the Loughrans' motion for leave to file a third-party complaint and set the

motion for hearing on June 15, 2018, to coincide with the hearing on the Loughrans' motion for

sanctions pursuant to Section 1-109 and Supreme Court Rules 137 & 219(c) and foreclosure

Plaintiff's Second Emergency Motion to Quash Subpoena.

312      On April 19, 2018, Tena Andric "corresponded with Kristin Steinkamp [of Mayer

Brown] from Wells Fargo regarding the case."

313.      Thereafter, on April 26, 2018, foreclosure Plaintiff using the internet via wires

electronically filed its Response to Loughrans' Motion for Sanctions, signed by Tena Andric,

and made the following, among many others later addressed in Loughrans' Reply, false

statements:

>      16.      Neither can Attorney Smith ignore the fact that he knew fully well
>      prior to traveling to Hennepin County, Minnesota, that the original wet-ink
>      Mortgage and Note were in the possession of Plaintiff's counsel, and not
>      Plaintiff.
>
>      17.      Attorney Smith additionally had full notice that the Plaintiff was
>      represented by counsel when he filed the Subpoena and when he travelled
>      to Hennepin County, Minnesota.
>
>      18.      Attorney Smith also knew that he was acting in defiance of the
>      March 1, 2018 Court Order when he reviewed the documents requested in
>      the Subpoena in Hennepin County, Minnesota.
>
>      19.      For unnecessary reasons, Defendants' counsel has subjected the
>      Loughrans to unnecessary attorney fees in travelling to Hennepin County,
>      Minnesota, and in engaging in frivolous motion practice.
>
>      20.      Plaintiff's Notice of Motion contains an unintentionally and
>      undeliberate service address on Attorney on Attorney Smith that landed in
>      the caption of the Notice instead of on the service list.  The Notice of
>      Motion was computer-generated and the misplaced addressed occurring
>      because of a temporary software glitch.  Contrary to the Defendants'
>      empty assertions, no cutting/pasting of the addresses was involved and

there was certainly no attempt by Plaintiff's counsel to omit the Roscoe
Address from the Notice of Motion.

314.    The foreclosure Plaintiff's Response to the Loughrans' Motion for Sanctions contained a

plethora of verified false statements made knowingly or with reckless disregard for their truth.

The foreclosure Plaintiff's Response contained false statements about the Loughrans' lead

attorney, John Smith, that were abusive.  (A Copy of the foreclosure Plaintiff's Response is

attached hereto as **Exhibit 3**.)

315.    On May 10, 2018, the Loughrans filed their Reply to the foreclosure Plaintiff's Response

to their Motion for Sanctions.  The Loughrans were required to painstakingly refute every

verifiably false statement made in foreclosure Plaintiff's Response to their Motion for Sanctions.

(A Copy of the Loughran's Reply to their Motion for Sanctions is attached hereto as **Exhibit 4**.)

316.    On June 15, 2018, the court heard the three foregoing motions.  Off the record, the court

denied the Loughrans' motion for leave to file a third-party complaint against Wells Fargo Bank.

However, Loughrans requested the court reporter and the motion was re-heard on the record.  On

the record, the court granted the Loughrans' motion for leave to file a third-party complaint

against Wells Fargo Bank; denied the Loughrans' motion for sanctions; and granted the

foreclosure Plaintiff their motion for extension of time to file their Reply to their Second

Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo Bank.  The Second

Emergency Motion to Quash was ultimately withdrawn "as moot", as stated in foreclosure

Plaintiff's Reply thereto.

317.    At the hearing on June 15, 2018, the Loughrans' lead attorney was taken to task by the

foreclosure Plaintiff's attorney, Eli Calero, and the court, for his statement that Plaintiff's

attorney, Tena Andric, admitted her client was Wells Fargo Bank.  After the Loughrans' attorney

showed the court where the admission was made -- in foreclosure Plaintiff's Second Emergency

Motion to Quash (not to mention her "cease and desist immediately" email on March 15, 2018, and foreclosure Plaintiff's response to the Loughrans' motion for sanctions) – the foreclosure Plaintiff's attorney, Eli Calero, admitted that his client was Wells Fargo Bank, not US Bank, NA, and that the original Note was received by his office from Wells Fargo Bank but he refused to state when the original Note was received by his law office. The relevant portion of the transcript from the hearing on June 15, 2018, records the following exchange:

> THE COURT: So US Bank got this through a pooling agreement from Wells Fargo, got this in a bundle, correct?
>
> MR. SMITH: That's not how it works.
>
> MR. CALERO: Pooling and Servicing Agreement with Wells Fargo the servicer.
>
> THE COURT: So, US Bank is the owner. Wells Fargo is the servicer.
>
> MR. SMITH: No, your Honor, it's not. I read the pooling and servicing agreement. It's not what it is.
>
> **...**
>
> THE COURT: Okay. So plaintiff is U.S. Bank and Wells Fargo. They're both listed in the caption.
>
> MR. CALERO: Correct, Judge.
>
> THE COURT: Okay. And you represent both?
>
> MR. CALERO: Because it's held in a trust – we're the servicer, our client, Wells Fargo, is asking us to file the complaint – we have to file in the name of the trust. …

318.     The court on June 15, 2018, ordered that the Loughrans' undersigned attorney, John Smith, go to the office of the attorneys for foreclosure Plaintiff and view the original Note.

319.     On June 18, 2018, Wells Fargo Home Mortgage sent the Loughrans' a mortgage loan statement in which $2,677.50 for "attorney cost" has already been added to the Loughrans' loan balance.

320.    On June 20, 2018, an attorney at Defendant, McCalle Raymer Liebert Pierce requested the original mortgage and note from Wells Fargo Bank.  This fact belies their previous claims to having possession of the Note at their office and that US Bank had possession of the Note.  (This fact is established now by foreclosure Plaintiff's Affidavit Regarding Attorney's fees filed in the foreclosure case on January 8, 2019.)

321.    Thereafter on July 12, 2018, Pierce attorney, Brian Merfeld, "review[ed] original documents; forward[ed] copies to borrower's attorney [Smith]" and using the internet via the wires e-mailed to Loughrans' lead attorney the full color photo or .jpeg/.jpg of the original Note that was previously promised by corporate counsel for Wells Fargo on March 13, 2018 (just 2 days prior to Tena Andric's "CEASE AND DESIST" e-mail on March 15, 2018, indicating for the first time that Wells Fargo Bank was her client).

322.    On July 20, 2018, the Loughrans filed a Petition to substitute Judge Lance Peterson for cause pursuant to 735 ILCS 5/2-1001(A)(3) supported by the transcript of the hearings on June 15, 2018.

323.    On September 24, 2018, after written briefs were filed and oral argument on the record, the Petition to substitute Judge Peterson for cause was denied.

324.    So, for two (2) months – July 20, 2018 to September 24, 2018 – no motions were able to be filed in the foreclosure case until the other judge ruled on the Loughrans' Petition to Substitute Judge Peterson for cause.

325.    On December 14, 2018, the Loughrans filed a motion to dismiss their third-party complaint against Wells Fargo Bank without prejudice pursuant to 735 ILCS 5/2-1009 – the hearing for which was set on January 10, 2019.

## 2019

326.    On January 8, 2019, the foreclosure Plaintiff filed a motion for judgment for foreclosure

and sale based on its prima facie case and the Loughrans' lack of affirmative defense.  It also

filed a motion for summary judgment stating, in pertinent part with emphasis added, the

following:

### FACTS

On December 28, 2005 the Defendants, DANIEL F LOUGHRAN; MARGARET M LOUGHRAN executed a promissory note in the amount of $395,280.00 with WELLS FARGO BANK, NA (the "Note").  The Note was secured by a mortgage on the property commonly known as 26509 WEST HIGHLAND DRIVE, CHANNAHON, IL 60410 (the "Mortgage"). On or about September 1, 2011 the Note and Mortgage went into default and this action was filed.  In response, the Defendants filed their Answer to the Complaint and generally denied several of the allegations.  **Defendants' affirmative defenses and counterclaims were stricken with prejudice by prior order of court on February 17, 2016. See Order of February 17, 2016, incorporated by reference.  This Motion for Summary Judgment is in response thereto.**

### ARGUMENT

**...**

Under Illinois law, Plaintiff need not prove non-payment by the borrower in order to establish a prima facie case for foreclosure; rather, it is required only to introduce the note and mortgage, at which time the burden shifts to the non-movant to prove her affirmative defense. *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 131 (1st Dist. 2007)(citing, *Boudinot v. Winter*, 91 Ill. App. 106 (1900)).  Plaintiff attached to its Complaint copies of the Mortgage and Note.  *See Mortgage and Complaint (Exhibits A and B to the Complaint)*.  **The burden shifts to the Defendants to prove an affirmative defense.**  [Citation omitted.] This includes the affirmative defense of payment.

Plaintiff has exceeded its burden, by not only introducing the Note and Mortgage, but also demonstrating Defendants' lack of payment.  *See Affidavit of Prove-Up (attached as Exhibit A to Plaintiff's Motion for Judgment for Foreclosure and Sale).*  **Plaintiff is in possession of the Note and is therefore authorized to enforce the Note and has standing to initiate these foreclosure proceedings.**  *See Affidavit of Prove-Up*

*(attached as Exhibit A to Plaintiff's Motion for Judgment for Foreclosure and Sale).*

Having failed to comply with their contractual obligations, Plaintiff initiated these foreclosure proceedings against Defendants and has sought to recover its security interest. As the duty to make payments under a Note and Mortgage constitutes a material breach, the Court is more than justified in finding this loan to be in default. Defendants have neither provided proof of payments showing that the loan was not in default, **nor have they raised any meritorious defenses to the undisputed facts established of record.** The Plaintiff's Affidavit of Prove-up established Defendants default. Pursuant to the terms of the Note and Mortgage, the loan has been in default since September 2011. . *See Affidavit of Prove-Up (attached as Exhibit A to Plaintiff's Motion for Judgment for Foreclosure and Sale).* **The Defendants failed to raise a genuine issue of material fact. As a result, the Defendants have failed to defeat Plaintiff's *prima facie* case of foreclosure and Plaintiff is entitled to summary judgment as a matter of law.**

<u>CONCLUSION</u>

**Defendants fail to properly raise any affirmative defenses to prevent the entry of judgment in Plaintiff's favor.** As such, there are no genuine issues of material fact and Plaintiff has established that it is entitled to the entry of judgment in its favor as a matter of law**.**
**… .**

327.    The motion for entry of judgment and sale was supported by the affidavit of Wells Fargo

employee, Richard L. Penno, in which he states as follows:

> If called to testify at the trial of this matter, I could competently testify as
>
> to the facts contained in this affidavit.
>
> US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR1 has possession of the Promissory Note.
>
> The Promissory Note was indorsed in blank.

328.    Richard Penno signed his affidavit on December 21, 2018, and it was notarized by

Jacqueline Luhmann, a licensed notary public in the State of Iowa.

329. On January 8, 2019, along with the foregoing motion for entry of judgment and sale and motion for summary judgment, foreclosure Plaintiff, proceeding as US Bank despite its attorney's judicial admission on June 15, 2018, that Wells Fargo, not US Bank, was his client, filed a motion for default judgment against co-defendant, Wells Fargo Bank, for failure to file an appearance to foreclosure Plaintiff's foreclosure complaint despite service via corporate agent on January 11, 2012. The motion for default was signed by Brian Merfeld, attorney at Defendant, McCalla Raymer Liebert Pierce.

330. Moreover, in its most recent motion for entry of judgment filed on January 8, 2019, the attorney affidavit signed by Brian Merfeld claims a total of $15,915.00 attorney fees.

331. On January 10, 2019, the Loughrans' third-party complaint against Wells Fargo Bank was voluntarily dismissed without prejudice pursuant to 735 ILCS 5/2-1009 which may be refiled within one year pursuant to 735 ILCS 5/13-217.

332. On January 11, 2019, the Loughrans' filed a motion for leave to file their Amended Answer and Affirmative Defenses pursuant to 735 ILCS 5/2-616 – the hearing for which was set on January 18, 2019.

333. On January 18, 2019, the Loughrans' motion for leave to file their Amended Answer and Affirmative Defenses pursuant to §616 was granted.

334. The Loughrans then filed their Amended Answer and Affirmative Defenses. The Loughrans' filed three affirmative defenses: (i) lack of standing by US Bank, N.A.; (ii) complaint filed without authorization is null; (iii) fraud (upon the court).

335. The "new matter" asserted in the Loughrans' Amended Affirmative Defenses included:

>  (1) Terms of the Pooling and Servicing Agreement ("PSA") for the WFMBS 2006-AR1, produced by foreclosure Plaintiff on January 29, 2018;

(2) Documents produced by Wells Fargo pursuant to Subpoena proving possession of the original promissory note by Wells Fargo, not foreclosure Plaintiff, US Bank, on March 2, 2018;

(3) Email communication from nonparty Wells Fargo Bank corporate counsel, Blake Lindevig, proving Wells Fargo's possession of the original promissory note on March 13, 2018;

(4) Email communication from Pierce attorney, Tena Andric, claiming that her client was Wells Fargo Bank and demanding the Loughrans to cease and desist speaking to Wells Fargo employees received March 15, 2018;

(5) Judicial admission of Pierce attorney, Eli Calero, in open court that his client was not US Bank, but Wells Fargo Bank and that the complaint was filed in the name of the trust according to Wells Fargo Bank's instructions:

(6) A Report of the Permanent Editorial Board of the Uniform Commercial Code (UCC) issued November 14, 2011, entitled "Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes," which was issued in response to the "national foreclosure crisis" in order to explain the application of the UCC to (i) identify the person entitled to enforce the payment obligation of the maker of a mortgage note and to whom the maker owes that obligation; and (ii) determine who owns the rights represented by the note and mortgage.

(7) A motion for default judgment filed by foreclosure Plaintiff on July 5, 2016, seeking a default judgment against Wells Fargo Bank;

(8) Terms of the Consent Judgment that Wells Fargo signed and was filed on

April 4, 2012, in the case of *United States of America, et. al. v. Bank of*

*America, et. al.* (D.D.C. 12-0361) (The "National Mortgage Settlement")

336. On January 24, 2019, the foreclosure Plaintiff's motion for summary judgment, in light of the Loughrans' Amended Answer & Affirmative Defenses filed on January 18, 2019, with leave of court, was denied as moot

337. On March 8, 2019, the foreclosure Plaintiff filed a Motion as to Defendants Amended Affirmative Defenses ("second motion to strike") seeking to strike the Loughrans' amended affirmative defenses based primarily on the fact that the court's previous interlocutory order struck with prejudice the Loughrans' original Affirmative Defenses on February 17, 2016, wherein foreclosure Plaintiff stated that Wells Fargo was not the Plaintiff and falsely stated that US Bank, N.A. possessed the Note..

338. The foreclosure Plaintiff's second motion to strike was later set for hearing on May 7, 2019.

339. On April 3, 2019, the Loughrans served foreclosure Plaintiff with a Notice of Deposition of a US BANK Representative pursuant to Illinois Supreme Court Rule 206(a)(1) which states:

> (1) Representative Deponent. A party may in the notice and in a subpoena, if required, name as the deponent a public or private corporation or a partnership or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, *the organization so named shall designate one or more officers, directors, or managing agents, or other persons to testify on its behalf and may set forth, for each such person designated, the matters on which that person will testify.* The subpoena shall advise a nonparty organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

340. The Loughrans' notice of deposition requested US BANK to "designate the U.S. Bank employee who can testify as to each of the following issues …"

341.    The deposition of US BANK was scheduled for May 3, 2019 (four days prior to the hearing on foreclosure Plaintiff's motion to strike the Loughrans' Amended Affirmative Defenses).

342.    On April 10, 2019, the Loughrans' attorney received an email from attorney, Brian Merfeld of Defendant, McCalla Raymer Liebert Pierce, LLC, advising "My office has been advised to stand down, but has been instructed not to withdraw yet," and that Mayer Brown "will be taking over the litigation."

343.    On April 10, 2019, the Loughrans' attorney received an email from Jerel Dawson of Defendant, Mayer Brown LLP, the law firm that filed US BANK'S motion to strike the Loughrans' original affirmative Defenses and strike their counterclaim on October 21, 2015.  In the email, Dawson stated:  "I represent Wells Fargo in the above-described matter and am in receipt of your notice of deposition.  Are you seeking to depose a representative from U.S. Bank of Wells Fargo?  Please advise."

344.    The Loughrans' attorney replied: "What does US Bank of Wells Fargo mean?  Wells Fargo is not a party in the case."

345.    Dawson replied: "Apologies for the typo, the email should have said U.S. Bank *or* Wells Fargo.  Is it correct then that you are seeking to depose a representative from U.S. Bank?"

346.     The Loughrans' attorney replied: "Yes."

347.    On April 26, 2019, Dawson called Loughrans' attorney at 1:07 PM and failed to leave a voicemail.

348.    On April 26, 2019, Dawson called Loughrans' attorney at 4:19 PM and failed to leave a voicemail.

349.    On April 26, 2019, Dawson called Loughrans' attorney at 4:30 PM and spoke to Loughrans' attorney.

350.    Upon speaking, Dawson asked the Loughrans' attorney if Dawson "can persuade you to change your mind" and to depose someone from Wells Fargo instead of US BANK because "Wells Fargo was the servicer and they are the ones who would have more knowledge about the case."

351.    The Loughrans' attorney replied: "No."

352.    The Loughrans' attorney immediately, after the call with Dawson, made an audio recording of the contents of the conversation with Dawson. In other words, Loughrans' attorney, after hanging up with Dawson, made a personal note to self on audio record clearly dated April 26, 2019.

353.    The foregoing audio recording is available for the Court to hear and, having been recorded on April 26, 2019, would be admissible evidence as a prior consistent statement because it was made before any incentive to fabricate occurred. *People v. Clark*, 52 Ill.2d 374, 389 (1972)(*Citing* Cleary, Handbook of Illinois Evidence (2d ed. 1963)).

354.    On April 29, 2019, after beginning preparations for the deposition of US BANK on May 3, 2019, the Loughrans' attorney received an email from Dawson with objections to Loughrans' Notice of Deposition of US Bank. Dawson asserts that "Plaintiff will not produce an employee" but desires to "discuss finding a date for a deposition of a designee of Plaintiff."

355.    The Objections to the Loughrans' Notice of Deposition contain two pages of general objections and 3 pages of specific objections. At ¶1 of Plaintiff's general objections, Plaintiff states that it objects to designating an "employee" but agrees to provide a "witness."

356. Dawson also seemed to be denying or refusing to confirm that on April 26, 2019, he asked the Loughrans' attorney if Loughrans' attorney could be persuaded to change his mind and depose someone from Wells Fargo instead of US Bank.

357. So, the Loughrans' attorney's note to self on April 26, 2019, was made before any incentive to fabricate occurred.

358. The Loughrans' attorney thereafter cancelled the deposition conference room with the court reporter previously scheduled since April 2, 2019,

359. The Loughrans filed an emergency motion to dismiss the case and for sanctions pursuant to Illinois Supreme Court Rule 219(c) to be heard on May 7, 2019, prior to the court's ruling on the foreclosure Plaintiff's motion to strike the Loughrans' Amended Affirmative Defenses.

360. On May 7, 2019, the court entered a briefing schedule on the Loughrans' emergency motion to dismiss and for sanctions pursuant to Illinois Supreme Court Rule 219(c) and set the matter for hearing on May 24, 2019, with a briefing schedule of seven days to respond and seven days to reply and ordering the foreclosure Plaintiff to bring the original Note to court on May 24, 2019. The court also reserved ruling on foreclosure Plaintiff's motion to strike the Loughrans' Amended Affirmative Defenses.

361. On May 24, 2019, the court denied the Loughrans' emergency motion pursuant to Rule 219(c) and stated that, while the parties did meet and confer pursuant to Supreme Court Rule 201(k), the foreclosure Plaintiff should still be given an opportunity to designate an employee of US Bank, N.A. The court also reserved ruling on the foreclosure Plaintiff's motion to strike the Loughrans' Amended Affirmative Defenses.

362. However, foreclosure Plaintiff informed the court that given the opportunity to designate an employee of US Bank, N.A., any further efforts to meet and confer "would be futile" – which

echoed the Loughrans' argument in their Reply to foreclosure Plaintiff's Response to their Emergency Motion Pursuant to Rule 219(c). In other words, there is no one at US Bank because foreclosure Plaintiff already made judicial admission Wells Fargo was client, not US Bank. US Bank never had possession of the Note and is not involved in the filing of the foreclosure action against the Loughrans. The evidence of fraud upon the court is irrefutable.

363. After the court ordered on March 29, 2018, and May 7, 2019, the foreclosure Plaintiff to produce the original Note at the next court hearings (June 15, 2018, and May 24, 2019, respectively), foreclosure Plaintiff failed to produce the original Note and the court failed to ask.

364. The Affidavit of Attorney fees filed by the foreclosure Plaintiff on January 8, 2019, proves that Wells Fargo Bank still possessed the original Note on June 15, 2018, because on June 20, 2018, attorneys for Defendant, McCalla Raymer Liebert Pierce, called and confirmed possession of the original with their client, Wells Fargo Bank, on June 20, 2018.

365. Attorneys for foreclosure Plaintiff already made the judicial admission that Wells Fargo Bank is their client, not US Bank, N.A., and that Wells Fargo Bank always had possession of the original Note. Nevertheless, the Loughrans continue to be damaged in that their foreclosure case continues and they continue to incur attorney fees and costs and emotional distress.

366. Defendants jointly continue to press the foreclosure case using Wells Fargo's unequal financial leverage and bargaining power, hell bent on getting its way with the judge and the judge does not seem to have the time or resources to adequately apprise himself of the specifics of this foreclosure case improperly filed by the Defendants on December 28, 2011, and improperly perpetuated ever since, despite the Servicing Standards that it consented to on April 4, 2012, which required appropriate remediation in individual cases.[16]

---

[16] The Servicing Standards at Section I.C.1 states, inter alia:

1.      Servicer shall implement processes to ensure that Servicer or the foreclosing entity has a documented enforceable interest in the promissory note and mortgage (or deed of trust) under applicable state law, *or is otherwise a proper party to the foreclosure action.*

2.      Servicer shall include a statement in a pleading, affidavit of indebtedness or similar affidavits in court proceedings setting forth the basis for asserting that the foreclosing party has the right to foreclose.

The Servicing Standards at Section I.E.1.a states:

1.      Servicer shall conduct regular reviews, not less than quarterly, of a statistically valid sample of *affidavits*, sworn statements, Declarations filed by or on behalf of Servicer in judicial foreclosures … to ensure that the documents are accurate and comply with prevailing law and this Agreement.

    a.      …
    *Servicer shall take appropriate remedial steps if deficiencies are identified, including appropriate remediation in individual cases.*

The Servicing Standards at Section II.A. states:

Servicer shall adopt policies and processes to oversee and *manage foreclosure firms, law firms*, foreclosure trustees, subservicers and other agents, independent contractors, entities and third parties (including subsidiaries and affiliates) retained by or on behalf of Servicer that provide foreclosure, bankruptcy or mortgage servicing activities (including loss mitigation)(collectively, such activities are "Servicing Activities" and such providers are "Third-Party Providers"), including:

…

6.      Servicer shall conduct periodic reviews of Third-Party Providers. These reviews shall include:

    a.      A review of a sample of the foreclosure and bankruptcy documents prepared by the Third-Party Provider to provide for compliance with applicable state and federal law and this Agreement in connection with the preparation of the documents, and the accuracy of the facts contained therein;

        …

    c.      A review of the Third-Party Provider's processes to provide for compliance with the Servicer's policies and procedures concerning Servicing Activities.

…

7.      Servicer shall take appropriate remedial steps if problems are identified through this review or otherwise, including, when appropriate, terminating its relationship with the Third-Party Provider.

…

9.      *Servicer shall* regularly review and assess the adequacy of its internal controls and procedures with respect to its obligations under this Section *and take appropriate remedial steps if deficiencies are identified, including appropriate remediation in individual cases.*

The Servicing Standards at Section IX.B states:

B.      Definitions.

1.      In each instance in this Agreement in which Servicer is required to ensure adherence to, or undertake to perform certain obligations, it is intended to mean that Servicer shall: (a) authorize and adopt such actions on behalf of Servicer as may be necessary for Servicer to perform such obligations and undertakings; *(b) follow up on any material non-compliance with such actions in a timely and appropriate manner; and (c) require corrective action be taken in a timely manner of any material non-compliance with such obligations.*

367. Wells Fargo Bank's corporate counsel at headquarters in Minneapolis, Minnesota, have direct involvement with, and specific knowledge of, the Loughrans' case, but nevertheless continue to conspire with their foreclosure counsel, Defendants, Mayer Brown and McCalla Raymer Liebert Pierce in an attempt to obtain a foreclosure judgment against the Loughrans. Damn the torpedoes, full speed ahead!

368. For the foregoing reasons, the Loughrans continue to suffer irreparable harm in that their money is going to pay attorney fees and court costs rather than building equity in the home they designed and built in 2005. Their quality of life suffers as their marriage is almost irretrievably broken due to the severe emotional distress they are forced to endure, hiding the foreclosure case from their children and their neighbors and relatives. Their credit rating is irreparably harmed and they are unable to assist their college aged children to obtain financial aid to attend college.

369. Daniel Loughran has been forced to seek medication from his physician in order to be able to focus his attention at work. He is forced to hide the foreclosure case from his employers and co-workers. Margaret Loughran likewise has had to suffer the humiliation and severe anxiety from trying desperately to comply with Wells Fargo Home Mortgage's repeated requests for additional documentation for a HAMP affordable modification, only to be rejected due to a pretext – limitations in a Wells Fargo's servicing agreement (an agreement between Wells Fargo

---

2.      References to Servicer shall mean Wells Fargo Bank, N.A. and Wells Fargo & Company and shall include Servicer's successors and assignees in the event of a sale of all or substantially all of the assets of Servicer or of Servicer's division(s) or major business unit(s) that are engaged as a primary business in customer-facing servicing of residential mortgages on owner-occupied properties. The provisions of this Agreement shall not apply to those divisions of major business units of Servicer that are not engaged as a primary business in customer-facing servicing of residential mortgages on owner-occupied one-to-four family properties on its own behalf or on behalf of investors.

The Consent Judgment against Wells Fargo & Company and Wells Fargo Bank is available online at https://www.justice.gov/sites/default/files/opa/legacy/2012/03/12/wellsfargo-consent-judgement.pdf - and is incorporated herein by reference. (Emphasis added.)

as Master Servicer and Wells Fargo as Servicer – i.e., Wells Fargo with itself) which has been in existence since 2006 before the Great Recession and the creation of HAMP and Wells Fargo's receipt of a taxpayer bailout of $25 billion for a financial crisis they helped create.

370.    Then to add insult to injury, Wells Fargo Bank insisted on the Loughrans emptying their Individual Retirement Account without any certainty that they would even be approved for a temporary let alone permanent modification.  After the Loughrans refused, Wells Fargo Bank filed a motion to strike their Affirmative Defenses and dismiss their Counterclaim based on knowingly false statements made by their attorney(s) at Mayer Brown and fraudulent affidavits signed by Wells Fargo employees.

### FDCPA VIOLATIONS - FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING – SUMMARY

371.    The FDCPA allows for an action to enforce any liability created thereunder to be brought "within one year from the date on which the violation occurs."  15 U.S.C. 1692k(d).

372.    The statute of limitations is equitably tolled where the Defendant has fraudulently concealed its liability under the FDCPA.  *Hammer v Residential Credit Solutions, Inc.*, 2014 U.S. LEXIS 128104 (N.D. Ill, Sept. 11, 2014).

373.    The truth was never discovered by members of the Class despite due diligence because the fraud is self-concealing and the concealment is difficult to discover where Wells Fargo's foreclosure attorneys, if and when compelled in State foreclosure proceedings, would produce the original Note to the homeowners in Court and omit the material fact that the Note came from Wells Fargo Bank and omit the material fact that their "client" or "Plaintiff" is Wells Fargo Bank, not the third person "trustee" fraudulently named as Plaintiff in the foreclosure action.

374.    The truth was not discovered by the Loughrans until no earlier than June 15, 2018, when Pierce attorney, Eli Calero, admitted, after initial refusal to acknowledge the fact on record in

open court, that his client was Wells Fargo Bank, not US Bank, and that Wells Fargo Bank, not

US Bank, had possession of and produced the original Note.

375.    The Loughrans exercised due diligence in discovering the truth.

376.    Nevertheless, in the Loughrans' case, Wells Fargo Bank and its foreclosure attorneys,

Pierce, took the following affirmative acts and made the following representations to conceal the

truth and to prevent the Loughrans from discovering the truth.

*Fraudulent Concealment – Equitable Tolling of Statute of Limitations*

377.    In the case of the named Plaintiffs, the Loughrans, Pierce **fraudulently concealed** their

cause of action by the following affirmative acts and misrepresentations:  (i) objected to the

production of the PSA based on a pretext; (ii) responded to the Loughrans' motion to compel the

PSA with the false assertion that the PSA was "not relevant" because the Loughrans are neither

parties or third-party beneficiaries to the PSA and that the naked "Assignment of Mortgage"

from Wells Fargo Bank to US Bank NA as Trustee for WFMBS 2006-AR1 was dispositive of

US Bank's standing to file the foreclosure action; and then (iii) filed in Grundy County, Illinois,

an emergency motion to quash a Minnesota subpoena to Wells Fargo Bank and intentionally

mailed it to the wrong address for the Loughrans' lead attorney, Mr. Smith, and signed a false

affidavit of service and paper mailed it (i.e. "snail mail") to the Loughrans' local counsel, Mr.

Anderson, 3 days prior to the hearing of its emergency motion in violation of Illinois Supreme

Court Rules 11 and 12.

378.    In the Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo, foreclosure

Plaintiff claimed that the attorneys at Pierce had the Loughrans' original Note at their office.

They also never admitted that Wells Fargo was their client and that US Bank was not their client.

379.    In the Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo, foreclosure

Plaintiff also referred to Wells Fargo as a "witness" and stated that there was no foundation

stated as to why Wells Fargo would have possession of the Loughrans' original Note when they

knew Wells Fargo possessed the Loughrans' original Note and that US Bank had no involvement

with this foreclosure proceeding.

38.    Then, in contempt or violation of the Minnesota subpoena, Wells Fargo failed to produce

the original promissory note for inspection but instead sent copies via Fedex to the place ordered

in the subpoena.  Later, after being asked to email a color photo of the original promissory note

to Loughrans' lead attorney in lieu of a motion for contempt in the Minnesota district court

(Hennepin County), Wells Fargo instead called the attorneys at Pierce and confirmed to Pierce

that Wells Fargo had possession of the original promissory note, again in contempt or violation

of the subpoena to produce the original signed promissory note for physical inspection to the

Loughrans.

381.    On March 21, 2018, foreclosure Plaintiff filed a Second Emergency Motion to Quash the

Loughrans' Subpoena to Wells Fargo, signed by Pierce attorney Tena Andric, and made many

false statements, including but not limited to the following:

> 11. On or about March 12, 2018, Attorney Smith contacted Plaintiff – not
> through its counsel but directly – and requested to inspect the same
> original documents named in the Subpoena.
>
> 12.  Attorney Smith was previously made aware, on several occasions, that
> the original documents requested in the Subpoena were not held by the
> Plaintiff and were available for viewing with Plaintiff's counsel.  At all
> relevant times, Attorney Smith was aware that Plaintiff was represented by
> its counsel of record.  In fact, Attorney Smith had this information prior to
> the very filing of the Subpoena.
>
> 13.  On or about March 13, 2018, Attorney Smith ***again directly contacted***
> the Plaintiff regarding the Subpoena.

14. In the email of March 13, 2018, Attorney Smith expressly represented to the Plaintiff his pattern and practice of directly contacting the Plaintiff while he had sufficient information that the party was represented by counsel in a matter.

15. Again, on March 14, 2018, less that twenty-four hours following his prior email, Attorney Smith **_again direcly contacted_** the Plaintiff.

16. In the March 14, 2018 email, **_Attorney Smith falsely represented that no motion to quash was filed in the case to the Plaintiff._**
**...**

20. At all relevant times, Attorney Smith was fully aware that Wells Fargo was a party represented by counsel in the case.
**...**
22. At all relevant times, Attorney Smith was fully aware that counsel for the Plaintiff had possession of the original Note and Mortgage and that it would be made available for viewing upon request of the Defendants.

(Emphasis in original.)

382. Thereafter, on April 26, 2018, foreclosure Plaintiff filed a Response to [Loughrans']

Motion for Sanctions and made the following, among many others addressed in Loughrans'

Reply, false statements:

16. Neither can Attorney Smith ignore the fact that he knew fully well prior to traveling to Hennepin County, Minnesota, that the original wet-ink Mortgage and Note were in the possession of Plaintiff's counsel, and not Plaintiff.

17. Attorney Smith additionally had full notice that the Plaintiff was represented by counsel when he filed the Subpoena and when he travelled to Hennepin County, Minnesota.

18. Attorney Smith also knew that he was acting in defiance of the March 1, 2018 Court Order when he reviewed the documents requested in the Subpoena in Hennepin County, Minnesota.

19. For unnecessary reasons, Defendants' counsel has subjected the Loughrans to unnecessary attorney fees in travelling to Hennepin County, Minnesota, and in engaging in frivolous motion practice.

20. Plaintiff's Notice of Motion contains an unintentionally and undeliberate service address on Attorney on Attorney Smith that landed in

the caption of the Notice instead of on the service list. The Notice of Motion was computer-generated and the misplaced addressed occurring because of a temporary software glitch. Contrary to the Defendants' empty assertions, no cutting/pasting of the addresses was involved and there was certainly no attempt by Plaintiff's counsel to omit the Roscoe Address from the Notice of Motion.

383. In response to Defendants' unlawful conduct, Plaintiffs file the instant lawsuit seeking an injunction requiring Defendants to cease unlawful and deceptive foreclosure actions still pending prior to final judgment, and seek actual compensatory, punitive, and statutory damages to themselves and members of the Classes as provided under RICO, together with costs and reasonable attorneys' fees. Plaintiffs further seek to recover actual compensatory, punitive, and statutory damages to members of the Classes as provided under the FDCPA, together with costs and reasonable attorneys' fees. Plaintiffs also seek treble damages under RICO.

384. The Servicer in the PSA for the WFMBS 2006-AR1 is Wells Fargo Bank.

385. Nevertheless, when the Loughrans' mortgage loan was foreclosed upon and a deficiency judgment sought on the Note, Wells Fargo Bank used a name other than its own which would indicate that a third person is collecting or attempting to collect the debt.

386. In this case, Wells Fargo Bank and Pierce foreclosed on the Loughrans' mortgage but used the name of the Trustee in the PSA – US Bank NA – as the Plaintiff.

387. However, US Bank, N.A., made no bona fide collection efforts and, moreover, had no standing as a proper party.

388. Furthermore, Wells Fargo and Pierce made the false representation in the foreclosure complaint that US Bank NA was the trustee for the Note Holder. However, the "Note Holder" was at all times Wells Fargo Bank and Wells Fargo Bank has an unqualified right in the PSA (at Section 3.08) to "Repurchase" the Loughrans' Note at any time after (i) initiation of foreclosure

proceedings; (ii) acquiring possession of the mortgaged property after judicial sale ("REO") or (iii) Servicer [Wells Fargo] accepts a contractual commitment from a third-party to purchase the mortgaged property.

389.    The PSA states that US Bank, N.A., is an independent contractor, and is not an agent of Wells Fargo.  Section 3.08 of the Pooling and Servicing Agreement states as follows:

> The relationship of the Master Servicer [Wells Fargo Bank] to the Trustee [US Bank] under this Agreement is intended by the parties to be that of an independent contractor **and <u>not</u> that of a joint venturer, partner or <u>agent</u>**.

390.    Wells Fargo Bank, the loan originator, remained at all times the holder of the Loughrans' Note entitled to enforce the Note because the Note was payable to Wells Fargo Bank and blank-indorsed no later than October 21, 2015 (the date a copy was filed with the motion to strike the Loughrans' affirmative defenses and dismiss their counterclaim) and  Wells Fargo Bank was also the "Custodian" named in the PSA, in possession of the Note made payable to Wells Fargo Bank.

391.    Wells Fargo Bank had possession of the Loughrans' Note at all times as the "Custodian" in the PSA.

392.    Wells Fargo is the "originator," "Depositor," "Master Servicer," "Servicer," "Custodian,"& "Paying Agent" in the PSA for WFMBS 2006-AR1.

393.    The only other entity identified in the PSA is US Bank, the "Trustee" – an  "independent contractor."

394.    The Trustee's (or a minimum of 66 2/3% of all Certificate Holders) rights in an Event of Default for the WFMBS 2006-AR1 is set forth in §7.01 of the PSA.  Those rights are limited to an uncured "Event of Default" by Wells Fargo, as Master Servicer.

395.     Nevertheless, Wells Fargo Bank filed this and other foreclosure actions not in its own name or in the name of the Servicer (Wells Fargo Bank) as representative of the trust, but rather in the name of US Bank, N.A., -- a third-person nonparty to the Loughrans' Note and Mortgage. (See Loughrans' Note and Mortgage, attached hereto as Exhibit 2 & Exhibit 3.

396.     The Loughrans are not a party to the PSA.

397.     Obviously, US Bank NA is not a third-party beneficiary to the Loughrans' Note and Mortgage.

398.     US Bank was not the holder or nonholder in possession of the promissory notes.

399.     So, the PSA is between Wells Fargo, US Bank, and the Certificate Holders.

400.     The Note and Mortgage are between Wells Fargo Bank ("Note Holder") and the Loughrans.

401.     The notes still are owned and held by Wells Fargo.  So, the Certificate Holders are Wells Fargo's investors, not the Loughrans' investors.

402.     The Certificate Holders and the "Trustee" do not have possession or control of the Note and, therefore, only have an unenforceable security interest in the notes.  810 ILCS 5/9-203(b); *See* UCC § 9-203(b) *generally*.

403.     The Loughrans, like members of the Proposed Class, (collectively "Consumers") did not know or need to know that Wells Fargo Bank had used the promissory Notes it possessed as collateral for the Mortgage-Backed Securities sold to investors as certificates.

### *Fraudulent Concealment – Defendants' Affirmative Acts and Misrepresentations (in Summary)*

404.     Defendants Mayer Brown, Pierce, and Wells Fargo Bank fraudulently and actively concealed the true nature of the facts falsely attested to by Mayer Brown, Pierce, and Wells Fargo Bank – i.e., the truth being that Wells Fargo Bank, N.A., was still the owner and holder of

the Note and US Bank, N.A. "as trustee" or otherwise, had absolutely no role whatsoever in the collection on the Note via foreclosure.

405.     Thus, Wells Fargo Bank and its foreclosure attorneys like, in the Loughrans' case, Pierce, were filing foreclosure complaints in the names of third-party "trustees" that did not have standing, in violation of Articles 3 and 9 of the Uniform Commercial Code ("UCC"), and concealing the violations of the UCC with false affidavits to give the illusion that the third-party "trustee" had standing to collect on the Note when, under the UCC and the Illinois Mortgage Foreclosure Law (IMFL), it did not have standing because it did not have possession of the Note. 810 ILCS 5/3-203(a) & (c); 735 ILCS 5/15-1208; 735 ILCS 1504(a)(3)(N).

406.     The motives of Wells Fargo and Pierce to file this action and fail to properly identify the foreclosing party could be the following: (1) to defeat the counterclaims and affirmative defenses – as they did in the Loughrans' case with "US Bank's" Motion to Strike the Loughrans' Affirmative Defenses and Dismiss the Counterclaim – related to wrongful denial of HAMP modifications; (2) to create and bolster a pretext to deny, as they did in the Loughrans' case, HAMP modifications to eligible residential mortgage borrowers based on "investor" servicing guidelines, and (3) preserve the good will of its name.  For example, at page 4 of "US Bank's" Motion to Strike the Loughrans' Affirmative Defenses and Strike the Counterclaim, it states: "Plaintiff [US Bank as Trustee] certainly is not required to modify Defendants' mortgage because of an agreement between its loan servicer, Wells Fargo, and the federal government." The foregoing Motion to Strike is incorporated herein by reference as if explicitly set forth in full.

407.     The use of the name of a third-party "trustee" (e.g., US Bank, N.A.) as Plaintiff in the foreclosure complaints makes Wells Fargo Bank a "debt collector" subject to the FDCPA

because Wells Fargo Bank was the Loughrans' creditor and never negotiated the Note but maintained possession of the Note and, thereby, used a name other than its own which would indicate that a third person is collecting or attempting to collect such debts.  15 U.S.C. § 1692a(6).

408.    Wells Fargo misrepresented that the trust was the "Note Holder" when Wells Fargo remained the "Note Holder."

409.    The use of the name of the third-party "trustee" as Plaintiff and other false statements in the foreclosure complaints and the false affidavits and fraudulent "assignments of mortgage/deed of trust" claiming possession of the Note by the third-party "trustee" was in violation of the FDCPA § 1692e, which prohibits false, deceptive, or misleading representations or means in connection with the collection of any debt.  *Wallace v. Washington Mutual Bank, F.A.,* 683 F.3d 323, 327 (6th Cir. 2012)("Plaintiff alleges that the statement in the foreclosure complaint that Lerner, Sampson filed against her on behalf of Washington Mutual Bank contains the false statement that Washington Mutual was the holder of her mortgage.")

410.    The misrepresentation was material because it was used to strike and dismiss the Loughrans' affirmative defenses and counterclaim and to deny the Loughrans a HAMP affordable modification.  The FDCPA states at § 1692, inter alia, the following:

> § 1692. Congressional findings and declaration of **purpose**
> …
> (e) **Purposes**.  It is the purpose of this title [15 USCS §§ 1692 et. seq.] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. 1692(e)(Emphasis added.)

411. Section 1692e of the FDCPA prohibits false or misleading representations. The Seventh Circuit has stated that §1692e applies to communications in the form of legal pleadings.

> That **purpose** would be undermined if the FDCPA was inapplicable to communications that occurred in the context of litigation, particularly in the debt collection area in which judgments are overwhelmingly reached through forfeiture, and thus misleading or deceptive statements are more likely to influence the response of the defendant without ever coming to the attention of the court in any meaningful way.

*Marquez v. Weinstein, Pinson & Riley, P.S.,* 836 F.3d 808, 812 (7th Cir. 2016)

412. Defendants Pierce and Wells Fargo Bank wrongfully concealed the truth, which prevented the Loughrans (and all others similarly situated) from discovery of the nature of their claims, by taking affirmative steps to prevent the Loughrans (and all others similarly situated) from discovering their claims and injuries. Moreover, the wrong itself is of such a nature as to be self-concealing, to-wit: using the name of a third party like US Bank, N.A., as Plaintiff, by Wells Fargo and its foreclosure attorneys, like Pierce, and then, if and when compelled, producing a blank indorsed Note without disclosing that the Note came from and is owned by Wells Fargo Bank and was never in the possession of the third party whose name, like US Bank, N.A., was merely used to falsely indicate that the third-party was the Plaintiff and holder of the Note.

413. The Loughrans exercised due diligence in pursuing the discovery of the claim during the period they seek to have tolled.

414. In the case of the Loughrans, Wells Fargo Bank, Mayer Brown, and Pierce took the following affirmative acts and made the following misrepresentations to conceal the truth and to prevent the Loughrans from discovering the truth within the statutory limitations period of one-year from the filing of the foreclosure complaint.

415. The following affirmative acts and misrepresentations are summarized below for allegations of fraudulent concealment by Defendants and already set forth with specificity and particularity, supra.

416. Moreover, the following misrepresentations themselves are violations of the FDCPA, RICO, and ICFA and part of a continuing fraud the last occurrence of which was as recent as January 8, 2019, when Defendants filed a motion for entry of judgment of foreclosure with another false affidavit of Wells Fargo's employee, Richard Penno.

417. Those affirmative steps include the following:

a. Pierce, under Wells Fargo Bank's direction, drafted a foreclosure complaint seeking a deficiency (i.e., debt collection) using the name of "US Bank NA as Trustee for WFMBS 2006-AR1" as Plaintiff to indicate that a third person is collecting or attempting to collect such debts. The foreclosure complaint was filed on December 28, 2011, and the Loughrans were served on January 5, 2012. On January 24, 2012, the court history reflects the summons was returned and filed and, thereafter, on May 25, 2012, a motion for judgment for foreclosure and sale was filed by Defendants, Pierce & Associates on behalf of Wells Fargo. (The foreclosure complaint is incorporated herein by reference as if explicitly set forth in full.)

b. In the foreclosure complaint, Defendants falsely claimed that US Bank, N.A., was the Plaintiff as the "trustee for the holder of the Mortgage and Note" because the holder was not the certificate holders of the trust, but rather Wells Fargo Bank, N.A. US Bank NA was not a trustee or agent for Wells Fargo Bank, N.A; indeed, Defendants denied Wells Fargo was the owner and Note holder via false affidavits through its outside counsel Pierce & Mayer Brown LLP.

c.      Defendants drafted no less than three (3) false affidavits signed by Wells Fargo Bank employees (Welo Ahata-Nelson, Ms. Duckett, Mr. Penno) falsely asserting that US Bank NA was in possession of the note when Wells Fargo Bank possessed the note and never negotiated the note, and one (1) affidavit signed by a Wells Fargo employee (Teri Townsend) omitting the material fact that Wells Fargo Bank, N.A., maintained possession of the Note.

d.      Defendants created a fraudulent assignment of mortgage and filed it in the Grundy County Recorder's Office to further the deception that US Bank NA had standing to bring the foreclosure complaint when an assignment of mortgage (without the note), fraudulent of not, without transfer of the note is a nullity in Illinois.  *Moore v. Lewis,* 51 Ill. App. 3d 388, 391 (1st Dist. 1977)("Indeed a mortgage, which in this State is only regarded as a mere incident to the debt, **is not assignable at law**.")(Emphasis added.); *Yorke v. Citibank,* 125 B.R. 963, 970 (N.D. Ill. 1990)("It is axiomatic that any attempt to assign the mortgage without transfer of the debt **will not pass the mortgagee's interest to the assignee**.")(*citing Commercial Products Corporation v. Briegel*, 101 Ill. App. 2d 156 (3rd Dist.  1968))(Emphasis added.); *Krueger v. Dorr,* 22 Ill. App. 2d 513, 529 (2nd Dist. 1959)("… inasmuch as a mortgage is merely incident to the debt which it secures.")

e.      Mayer Brown filed a motion to strike the Loughrans' affirmative defenses and dismiss the counterclaim falsely claiming that Wells Fargo Bank was not the foreclosure Plaintiff and that US Bank NA as Trustee was the foreclosure Plaintiff and had possession of the note and foreclosure Plaintiff was therefore not responsible for the Loughrans' foreclosure loss mitigation rights, including Loughrans' claims for wrongful denial of a HAMP affordable modification against Wells Fargo Bank.

f. Mayer Brown's attorneys knew that the foregoing claims made in the motion to strike were false.

g. Wells Fargo sent letters via Mayer Brown to the Loughrans on March 9, 2015, and June 1, 2015, falsely minimizing its role as "service[r] [of] the loan for *your* investor US Bank as trustee" when Wells Fargo Bank was the creditor in possession of the note and thereby the owner of the loan. The certificate holders are Wells Fargo's investor, not the Loughrans' investor. The letters, dated March 9, 2015, and June 1, 2015, are incorporated herein by reference as if explicitly set forth in full.

h. Defendants objected to the Loughrans' request for production of the Pooling and Servicing Agreement (PSA) for the trust, which Wells Fargo Bank claimed owned the Loughrans' loan, as "vague, ambiguous, overly broad, and unintelligible," thus forcing the Loughrans to file a motion to compel production of the PSA.

i. Defendants falsely claimed in its response to the Loughrans' motion to compel production of the PSA that the PSA was "not relevant" because the Loughrans were not parties to or third-party beneficiaries of the PSA and that the fraudulent "Assignment of Mortgage" – prepared by Pierce and signed by Wells Fargo on January 6, 2012, and filed with the Grundy County Recorder on January 12, 2012 – was dispositive of the issue of Plaintiff's standing, to-wit: "Plaintiff has additionally provided Defendants with the Assignment of Mortgage from the originator of the loan, Wells Fargo Bank, NA, to the Plaintiff in discovery production."

j. Pierce attorney, Tena Andric, filed an emergency motion to quash the Loughrans' subpoena to Wells Fargo Bank and intentionally mailed it to the wrong address for the Loughrans' lead attorney, Law Office of John Smith, so that the Loughrans' lead attorney would not receive it and therefore have no ability to respond in time. The emergency motion to quash

the subpoena was not mailed electronically (as required by Illinois Supreme Court rule 11) but mailed via the United States Postal Service 3 days before (making it untimely) and included a false affidavit of service – "sewer service" – signed by Pierce attorney, Tena Andric, in violation of 735 ILCS 5/1-109. *See e.g., Spiegel v. Judicial Atty Servs.*, 2011 U.S. Dist. LEXIS 9350 (N.D. Ill)("sewer service – i.e., failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment is entered against him."); *Webb v. Law Office of Ira T. Nevel*, 2016 U.S. Dist. LEXIS 32018 (N.D. Ill)("arguing that fraudulent affidavits of service – i.e., 'sewer service' – violate the FDCPA.")

k.      Pierce attorney, Tena Andric, had incentive to fail to serve the Loughrans' lead attorney, John Smith, with the emergency motion to quash the subpoena served on Wells Fargo Bank. The Loughrans' lead attorney: (i) filed their answer, affirmative defenses and counterclaim before the foreclosure Plaintiff filed its Motion to Strike the affirmative defenses and dismiss the counterclaim with a copy of a blank-indorsed note and a fraudulent affidavit; (ii) was substituted afterward by Edward Anderson; (iii) filed an additional appearance with a new address on June 7, 2017;  (iv) issued written discovery on June 30, 2017; (v) compelled production of the PSA in September, 2017, and (vi) after receiving the PSA on January 30, 2018, had issued and served the subpoena upon Wells Fargo Bank, NA, in Minnesota on February 21, 2018.

l.      Moreover, Pierce attorney, Tena Andric, did not timely serve co-counsel either because Illinois Supreme Court Rule 11 requires service via e-mail and (only when email is unavailable) postal service 4 days prior to motion presentation/hearing. However, Tena Andric mailed the emergency motion (to piggyback on a previously scheduled case status date in court on March 1, 2018) not 4 days but 3 days in advance.

m.      Unaware of the emergency motion to quash, Loughrans' lead attorney travelled to the document production in Minneapolis, Minnesota, and was given copies of the originals in possession of Wells Fargo Bank, which Wells Fargo Bank had sent via Fedex instead of appearing and producing the originals for physical inspection as required by the subpoena.

n.      Loughrans' lead attorney spoke over the phone with Wells Fargo Bank's corporate counsel, Blake Lindevig, about obtaining the original Note from Wells Fargo Bank, who agreed to send color photos of the original but then, thereafter, he or someone else at Wells Fargo Bank contacted the attorneys at Pierce and, rather than produce the original Note to Loughrans' attorney as agreed and pursuant to subpoena, colluded with Tena Andric whose strategy thereafter was to claim Wells Fargo Bank was the Plaintiff all along, accuse the Loughrans' attorneys of wrongdoing, and falsely claim that she had possession at her office of the original Note all along.

o.      After the Loughrans filed a Motion for Sanctions against US Bank NA and Pierce for the false affidavit of service ("sewer service") of its Emergency Motion to Quash the loughrans' Subpoena to Wells Fargo Bank, N.A. – in violation of 735 ILCS 5/1-109 – and  spoke to corporate counsel for Wells Fargo Bank, Blake Lindevig, Pierce attorney, Tena Andric, on March 15, 2018, sent an email to Loughrans' attorneys claiming for the first time that Wells Fargo Bank was her client and demanding that the Loughrans' attorney "cease and desist" discovery efforts from Wells Fargo Bank, N.A.

p.  Pierce attorney, Tena Andric, then filed a Second Emergency Motion to Quash the Subpoena to Wells Fargo and stated: "At all relevant times, Attorney Smith was fully aware that Wells Fargo was a party represented by counsel in the case."[17]

---

[17]  Defendants via Mayer Brown LLP had previously falsely claimed Wells Fargo Bank to be a nonparty to the litigation – e.g., "…Plaintiff did not originate [Loughrans'] mortgage loan." (See Motion to Strike Affirmative Defenses at page 7.)  Wells Fargo Bank, however, did originate the Loughrans' mortgage loan so attorneys for foreclosure Plaintiff previously denied Wells Fargo Bank, N.A. was the foreclosure Plaintiff.
Also, on July 5, 2016, (and again on Sept. 20, 2017, and January 8, 2019) McCalla Raymer Leibert Pierce f/k/a Pierce & Associates filed a motion for default judgment against defendant, Wells Fargo Bank, for failure to file an appearance and an answer to the foreclosure complaint.  Nevertheless, Pierce attorney Tena Andric stated in her 3/15/2018 email "*As you are aware*, my office represents Wells Fargo, NA, in this matter." (See 3/15/2018 email.)

**(i) In its Motion to Strike the Loughrans' affirmative defenses and dismiss their counterclaim, Foreclosure Plaintiff states**, inter alia: "But the mortgage expressly provides that it may be assigned along with the Note, so the fact that Plaintiff was not the original lender does not defeat Plaintiff's claim."  See page 7 of Plaintiff's Motion to Strike.

  **(ii) In it Response to the Loughrans' Motion to Compel production of the Pooling and Servicing Agreement, Foreclosure Plaintiff states**: "Plaintiff [US Bank NA] has possession of the Note." And "Plaintiff has additionally provided Defendants with the Assignment of Mortgage from the originator of the loan, Wells Fargo Bank, NA, to the Plaintiff ("AOM") in discovery production."  See page 3 of 4 of Plaintiff's Response to Motion to Compel.

  **(iii) In its Motion for Summary Judgment filed on July 5, 2016, Foreclosure Plaintiff states**, inter alia: "Plaintiff is in possession of the Note and is therefore authorized to enforce the Note and has standing to initiate these foreclosure proceedings."  In support of this statement, Plaintiff references the affidavit of Welo Ahata-Nelson, an alleged vice-president of loan documentation of Wells Fargo Bank, "the Servicing Agent for the Plaintiff in this action," wherein Welo Ahata-Nelson states: "U.S. Bank National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR1, has possession of the Promissory Note. The Promissory Note was endorsed in blank."  See page 5 pf 7 and Exhibit 1 of Plaintiff's Motion for Summary Judgment.

  **(iv) In its Motion for Judgment of Foreclosure and Sale, filed on September 20, 2017, Foreclosure Plaintiff states**, inter alia: "Plaintiff has established a prima facie case for foreclosure as it has introduced the Promissory Note and Mortgage secured thereby and the Defendant has not established any affirmative defenses."  Attached to the motion for entry of judgment is an affidavit of amounts due and owing signed by Diane Duckett, a vice president of loan documentation of Wells Fargo Bank, N.A., "the Servicing Agent for the Plaintiff in this action." She states: "U.S. Bank National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-AR1, has possession of the Promissory Note.  The Promissory Note was indorsed in blank." See page 1 of 2 and attached Affidavit of Plaintiff's Motion for Judgment of Foreclosure and Sale.

  **(v) In its Motion for Judgment for Foreclosure and Sale, filed on January 8, 2019, Foreclosure Plaintiff states,** inter alia:  "Plaintiff has established a prima facie case for foreclosure as it has introduced the Promissory Note and Mortgage secured thereby and the Defendant has not established any affirmative defenses."  Attached to the motion for entry of judgment is an affidavit of amounts due and owing signed on December 21, 2018, by Richard L. Penno, a vice president of loan documentation of Wells Fargo Bank, N.A., "the Servicing Agent for the Plaintiff in this action."  He states: "U.S. Bank National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2006-AR1, has possession of the Promissory Note.  The Promissory Note was indorsed in blank." See page 1 of 3 and attached Affidavit of Plaintiff's Motion for Judgment of Foreclosure and Sale.

q.      Pierce attorney, Eli Calero, finally admitted, after initial refusal to acknowledge, on June 15, 2018, in open court, the fact that his client was Wells Fargo Bank, not US Bank, and that Wells Fargo Bank required Pierce to file the foreclosure complaints, like the complaint filed against the Loughrans, in such a manner: under the guise of a third party like, in this case, US Bank NA as "Trustee" (for investors/certificate-holders).  Eli Calero also admitted that his law firm obtained the original Note, now allegedly in their possession as of June 15, 2018, from his client, Wells Fargo Bank, N.A., not US Bank, N.A., but refused to admit when they received it – i.e., whether it was after March 2, 2018, the date of the Loughrans' document production pursuant to subpoena in Minneapolis, Minnesota, or after March 13, 2018, the date Blake Lindevig promised Loughrans' lead attorney to send via email a color photo copy (.jpeg file) of the original Note in Wells Fargo Bank's possession.[18]  The attorneys' affidavit of attorney fees filed by Pierce on January 8, 2019, now reveals that Wells Fargo still had possession of the original Note as late as June 20, 2018 – five days after Eli Calero's judicial admission, which is now revealed to be a partial admission and partial fraud upon the court by stating that his law firm received the original Note from Wells Fargo when his law firm had not received the original Note at all and the original Note was still in possession of Wells Fargo Bank.

r.      The PSA for the Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-AR1 was not a document publicly available or not accessible via the sec.gov website.

418.    Therefore, the Loughrans exercised due diligence in pursuing the discovery of the claims against Wells Fargo Bank and Pierce.  If the Loughrans had compelled production of the original Note via motion with the Court, Defendant McCalla Raymer Liebert Pierce would have

---

[18] Upon information and belief, based on recent evidence, the original Note was still in the possession of Wells Fargo Bank on June 15, 2018, despite Pierce attorney Eli Calero's claims to the contrary.

eventually produced it after obtaining it from Wells Fargo Bank while claiming it came from US

Bank, N.A.  Upon information and belief, that is what they did in all previous cases against

homeowners who are members of the proposed class.

419.    Because Pierce had exclusive knowledge of the identity of their client Wells Fargo and

Wells Fargo knew the express terms of the 430 page PSA and access to the truth about the

fraudulently created "Corporate Assignment of Mortgage" and the actual possession of the Note,

withheld such knowledge, and falsely represented that the Note was in the possession of US

Bank NA, the Loughrans did not know and could not have discovered or known of Defendants'

(Mayer Brown, Pierce and Wells Fargo Bank's) fraudulent misrepresentations in violation of the

FDCPA, RICO, & ICFA until discovery *after* receiving the PSA (over foreclosure Plaintiff's

objections) plus a reasonable amount of time to review the PSA and serving Wells Fargo Bank

with a subpoena on February 21, 2018, (which Pierce tried to have quashed by the court without

the Loughrans' lead attorney, John Smith, having knowledge of its emergency motion to quash

by preventing his presence in court via "sewer service" – a false affidavit of service and without

Loughrans' local attorney, Chuck Bretz & Associates, having knowledge of it by untimely

service).

420.    The Loughrans could not reasonably have known of such facts – i.e., that Wells Fargo

Bank retained Pierce and Pierce filed a lawsuit naming "US Bank NA as trustee" as Plaintiff and

falsely claimed that US Bank NA had possession of the Note when, in truth, Wells Fargo Bank

had possession of the Note and was the owner of the Note (not just a "custodian") – until such

time that such facts were made known *after* June 15, 2018, when Pierce attorney, Eli Calero,

admitted in open court that the Plaintiff (and Pierce's client) was Wells Fargo Bank and denied

US Bank was the Plaintiff, and admitted that the original Note, now allegedly in Pierce's

possession as of June 15, 2018, came from Wells Fargo Bank, not US Bank NA.

421.     Before June 15, 2018, Wells Fargo violated the subpoena and Pierce misrepresented (i)

that its client was US Bank, N.A., and (ii) that Pierce possessed the promissory note on February

26, 2018, when it filed its Emergency Motion to Quash the Loughrans' Subpoena.

422.     June 15, 2018, was the first time that the Loughrans learned that US Bank made no bona

fide collection efforts to invoke the false name exception contained at 15 U.S.C. 1692a(6)

against Wells Fargo.

423.     As a result of Pierce's and Wells Fargo Bank's fraudulent concealment of their violations

of relevant law as described above, the applicable statute of limitations governing the Loughrans

rights of action has been tolled.  735 ILCS 5/13-215; *Hagney v. Lopeman*, 147 Ill.2d 458, 463

(1992); *Chicago Park Dist. v. Kenroy, Inc.*, 78 Ill.2d 555, 561 (1980); *Guar. Trust Life Ins. Co.*

*v. Kribbs*, 2016 IL App (1st) 160672, ¶35;  *Shropshear v. Corp. Counsel of Chi.*, 275 F.3d 593,

597 (7th Cir. 2001); *Hammer v. Residential Credit Solutions, Inc.*, 2014 U.S. Dist. LEXIS

128104 at 38 (N.D. Ill. Sept 11, 2014)(citing *Windy City Metal Fabricators & Supply, Inc. v. CIT*

*Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) ).

424.     Due to the fraudulent concealment of the truth – that Wells Fargo Bank was the holder of

the Note with standing to foreclose on the Note, rather than US Bank NA , and US Bank NA

made no bona fide collection efforts in the foreclosure litigation – the statute of limitations of

one (1) year for the FDCPA violations should be equitably tolled until *at least* June 15, 2019.

*Johnson Controls Inc., 129 F. Supp. at 1144 (N.D. Ill  2001)*

425.     As late as January 18, 2019, in foreclosure Plaintiff's motion for entry of judgment and

motion for summary judgment, the Defendants are still representing in signed court filings that

US Bank has possession of the Note and filed a motion for a default judgment against Wells

Fargo Bank for failure to file an appearance and answer to the foreclosure complaint previously

served on Wells Fargo Bank on January 11, 2012, via corporate agent.  The motion for default

judgment was supported with a certificate of service on Wells Fargo Bank signed by Ed L.

Assman on January 11, 2012, notarized by Dona Mae Johnson, a licensed notary in South

Dakota.

426    As late as April 29, 2019, the foreclosure Plaintiff is refusing to designate an employee of

US BANK to testify as to any matters whatsoever – including those enumerated in the

Loughrans' Notice of Deposition of US BANK pursuant to Illinois Supreme Court Rule 206(a)

relating to the filing of the Loughrans' foreclosure lawsuit – but insists on naming a "witness"

from Wells Fargo Bank.

### *The Loughrans' Due Diligence*

427.    The acts of due diligence, exercised by the Loughrans in pursuing the discovery of the

claim during the period they seek to have tolled, include the following:  (1) filed affirmative

defenses against Plaintiff, US Bank N.A. as Trustee, including lack of standing; (2) applied for

HAMP again and complied with Wells Fargo Bank's repeated demands for resubmission of

documents for approximately fourteen months during which several agreed continuance orders

were entered by the court; (3) issued discovery pursuant to Illinois Supreme Court Rule 214

seeking PSA and production of original Note; (4) filed Motion to Compel Production of PSA; (5)

issued and served foreign (Minnesota) subpoena on Wells Fargo Bank to produce the original

Note, after which copies of the originals in the possession of Wells Fargo Bank were produced;

(6) contacted Wells Fargo Bank corporate counsel in lieu of filing motion for contempt in

Minnesota and arranged for production via e-mail of color photos of original Note in possession

of Wells Fargo Bank; (7) filed Motion for Contempt and Sanctions against Pierce and US Bank, NA, for violation of Section 1-109 of the Illinois Code of Civil Procedure and Illinois Supreme Court Rules 137 and 219(c); (8) filed third-party complaint against Wells Fargo Bank; and (9) proved – based on the foregoing and pursuant to admission by Plaintiff's counsel in open court on June 15, 2018 – that US Bank NA had no standing to bring the foreclosure action against the Loughrans and US Bank did not even authorize the filing of the foreclosure action against the Loughrans.

## JURY DEMAND

428.    The Plaintiffs, Daniel Loughran and Margaret Loughran, demand a trial by jury on all claims so triable.

## PROPOSED CLASS & SUB-CLASS

429.    Foreclosure Class: All Consumer Homeowners in the United States who, (i) after implementation of HAMP, (ii) were sued in a judicial foreclosure action (iii) by Plaintiffs identified in caption as "Trustee" for Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, or a Pooling and Servicing Agreement for any Wells Fargo [Asset Securities Corporation] Mortgage-backed securities Trust, (iv) where the "Trustee" was not also the "Custodian," and (v) Wells Fargo was the "Custodian," (vi) Wells Fargo was Originator or Seller or Depositor or Guarantor or Sponsor or Securitization Trustee or Securities Underwriter for the Trust, and (vi) Wells Fargo had a right to "repurchase" the underlying promissory notes at any specified time after a foreclosure action was filed, and (vii) Wells Fargo's foreclosure attorneys filed with the courts affidavits falsely claiming that the "Trustee" had possession of the original promissory note and/or filed with the courts or local county land records offices "assignments of mortgage" that failed to assign the promissory note, and (viii) were subjected to the same conduct of the Enterprise described infra at ¶¶ 662-669 and Counts VI & VII.

<u>Illinois Foreclosure Subclass</u>:  All individuals in the Foreclosure Class who reside in the State of Illinois.

430.    <u>HAMP Class</u>:  All Consumer Homeowners in the United States who, (i) after implementation of HAMP, (ii) applied for a HAMP affordable modification through Wells Fargo Bank or Wells Fargo Home Mortgage ("Wells Fargo"); (iii) who were told by Wells Fargo that Wells Fargo serviced the Consumer Homeowners' loan for "your investor" or something conveying the same idea (the homeowners' investor). (iv)  for the "Trustee" for "WFMBS" or "Wells Fargo Asset Securities Corporation" or a trust created by Wells Fargo as Depositor or Originator or similar (v) with any series of certificates, and (iv) who were told they were denied a HAMP modification because Wells Fargo does not have contractual authority to modify the loan due to limitations in Wells Fargo's servicing agreement.

<u>Illinois HAMP Subclass</u>:  All individuals in the RICO Class who reside in the State of Illinois.

433.    The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any excluded persons.

434.    Numerosity:  The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.  On information and belief, hundreds, maybe thousands, of consumers fall into the definitions of each of the Classes.

Members of the Classes can be easily identified through Defendant's records and verified through public court filings.

435.    Commonality and Predominance:  There are many questions of law and fact common to Plaintiff's and the Classes' claims and those questions predominate over any questions that may affect individual members of the Classes.  Plaintiff and the members of the Classes have all been harmed by the same conduct (i.e., Defendants' unlawful collection practices), and all have claims based on a common application of the same subsection of the same statute (i.e., 15 U.S.C. § 1692(e) & (j)).  Common questions for the Classes include, but are not necessarily limited to the following:

a.      Whether Defendants' conduct violated the FDCPA;

b.      Whether Defendants systematically used a false name, and other false representations and deceptive forms, to indicate that a third person was attempting to collect its debts to create the false belief in a consumer that a person other than the creditor of such consumer was participating in the collection of a debt such consumers allegedly owed the actual creditor;

c.      Whether the members of the Classes are entitled to additional statutory damages as a result of the frequency, persistence, and intentionality of Defendants' conduct.

d.      Whether Defendants engaged in fraudulent concealment;

e.      Whether Defendants engaged in unfair and/or deceptive acts or practices in trade or commerce by the aforementioned and herein described conduct;

f.      Whether Defendants' unfair or deceptive acts or practices harmed the named Plaintiffs or the Class;

g.      Whether Defendants, as part of a racketeering scheme to defraud, filed false or misleading affidavits and assignments of mortgage in an effort to defraud borrowers and courts of the actual identity of the Note Holder and/or the proper party with standing to enforce the Note;

h.      Whether Defendants, through their RICO enterprise, as described below, used the mail or wires in furtherance of a scheme to defraud and thereby committed mail fraud or wire fraud in violation of 18 U.S.C. 1341 and 18 U.S.C. 1343, respectively, and whether they violated 18 U.S.C. §§ 1961-1968.

436.    Adequate Representation:  Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained competent counsel.  Plaintiff's interests are the same as those of the other members of the Classes, in that their claims arise from the same misconduct and share the same essential characteristics as the claims belonging to the other members of the Classes.  Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and will commit the financial resources to do so.  Neither Plaintiffs nor their counsel has any interest adverse to those of the other members of the Classes.

437.    Appropriateness:  This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The injuries suffered by the individual members of the Classes are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions.  Absent a class action, it would be difficult, if not impossible, for the members of the Classes to obtain effective relief from Defendants.

Even if members of the Classes themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

438. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

### COUNT I
**Violation of Fair Debt Collection Practices Act against McCalla Raymer Liebert Pierce and Wells Fargo**
**Brought By the Loughrans, Individually, and on behalf of the Foreclosure Class, against Wells Fargo Bank, NA, d/b/a Wells Fargo Home Mortgage**
(15 U.S.C. §1692, *et. seq.*)

439. Plaintiffs incorporate the foregoing allegations including paragraphs 1 to 438, as if fully set forth herein.

440. Plaintiff and the members of the Classes are natural persons obligated or allegedly obligated to pay debts arising from transactions that were primarily for personal, family, and/or household purposes, and as such are "consumers" within the meaning of 15 U.S.C. § 1692a(3).

441. Defendant, Wells Fargo Bank, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. As such, Wells Fargo is a "debt collector" within the meaning of 15 U.S.C. 1692a(6).

442. Defendant, Wells Fargo Bank, uses a name other than its own which would indicate that a third person is collecting or attempting to collect its debts. As such, Wells Fargo is a "debt collector" within the meaning of 15 U.S.C. 1692a(6).

443.    Defendant, Wells Fargo Bank, designed, compiled, and furnished deceptive forms – false affidavits signed by its employees in support of motions for foreclosure judgment and fraudulent assignments of mortgage – knowing that such forms would be used to create the false belief in a consumer that a person other that the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.  The false affidavits were signed by Wells Fargo employees and upon information and belief, notarized by Wells Fargo employees.  As such, pursuant to 15 U.S.C. § 1692j(b) Wells Fargo is liable to the same extent and in the same manner as a debt colector is liable under 15 U.S.C. § 1692k.

444.    The fraudulent Assignments of Mortgage were used to falsely portray transfers that never occurred and the false affidavits were used to portray possession by the Trustee of the Notes when Wells Fargo Bank had possession.

445.    Defendants used telephones and other instrumentalities of interstate commerce to employ unfair or unconscionable means to collect debts.  Among other things, Defendants used false affidavits and "assignments of mortgage/deed of trust" to collect or attempt to collect its debts and to implicate that accounts have been turned over to innocent purchasers for value and to use a company name other than the true name of the company.

446.    McCalla Raymer Liebert Pierce is a "debt collector" pursuant to the FDCPA, and routinely files foreclosure lawsuits in order to collect debts of others and/or enforce security interests of others.  15 U.S.C. §1692a(6)

447.    Wells Fargo Bank is a "debt collector" pursuant to the FDCPA because it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," pursuant to  15 U.S.C. §1692a(6), *and* it is a "creditor who, in the process of

collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts," pursuant to 15 U.S.C. §1692a(6).

448.   Wells Fargo is liable for damages under 15 U.S.C. §1692k for violating §1692j.

449.   Pierce, by its aforesaid conduct of (i) filing this action in the name of a Plaintiff that was not the actual party and (ii) use of a false and fraudulent "Assignment of Mortgage" and (iii) filing no less than three (3) false affidavits signed by employees of Wells Fargo misrepresenting US Bank had possession of the Note, violated the FDCPA, including FDCPA prohibitions against using any false, deceptive or misleading representation or means in connection with the collection of any debt.  15 U.S.C. §1692e.

450.   The affidavits filed by McCalla Raymer Liebert Pierce on behalf of foreclosure Plaintiff claiming that US Bank National Association has possession of the Note are all false, in violation of 15 U.S.C. 1692e(10), (12), (14), and 15 U.S.C. 1692j.

451.   McCalla Raymer Liebert Pierce, through its employee, attorney Tena Andric, by its aforesaid conduct of (i) filing its Second Emergency Motion to Quash the Subpoena to Wells Fargo which contained language the natural consequence of which is to abuse the reader, and (ii) filing its Response to the Loughrans' Motion for Sanctions which contained language the natural consequence of which is to abuse the reader, violated the FDCPA, and thereby the ICFA, including FDCPA prohibitions against engaging in any conduct the natural consequence of which is to harass, oppress, or abuse "any person" in connection with the collection of a debt.  15 U.S.C. §1692d(2).

452.   Pierce has already been paid at least $2,677.50 and the Loughrans' account has been charged, in violation of 15 U.S.C. 1692f(1) which specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

453.    Wells Fargo Bank, by the aforesaid conduct of charging the Loughrans its unreasonable attorney costs of $2677.50 directly to their mortgage loan balance as indicated on their June 18, 2018, mortgage statement, violated the FDCPA, including FDCPA prohibitions against unfair practices by the collection of any amount not authorized by the agreement creating the debt or permitted by law.  15 U.S.C. §1692f(1).

454.    Pierce and Wells Fargo Bank violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692e, *et. seq.* ("FDCPA") by engaging in the following misconduct:

(a)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. §1692e (10);

(b)  The false representation or implication that accounts have been turned over to innocent purchasers for value. 15 U.S.C. §1692e (12);

(c)  The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. §1692e (14);

(d)  The use of language the natural consequence of which is to abuse the hearer or reader.  15 U.S.C. §1692d(2);

(e)  The collection of any amount not expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. 1692f(1);

(f)  The design, compiling, and furnishing of deceptive forms, including false affidavits in support of motions for judgment of foreclosure and false Assignments of Mortgage, knowing that such forms would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt

such consumer allegedly owes such creditor, when in fact such person is not so participating.  15 U.S.C. 1692j.

455.     As a result of the above violations of the FDCPA, Daniel Loughran & Margaret Loughran were damaged and are entitled to statutory damages pursuant to 15 U.S.C. §1692k, including:

i.       Actual damages including attorney fees and costs incurred in the defense of the improper foreclosure action filed in Grundy County pursuant to 15 USC 1692k(1);

ii.      Actual damages including emotional distress experienced by the Loughrans pursuant to 15 USC 1692k(1);

iii.     Additional damages up to $1,000.00 each (in the case of the Loughrans) pursuant to 15 USC 1692k(2)(A) and up to $500,000 (in the case of the Class) pursuant to 15 USC 1692k(2)(B);

iv.      Costs of this action pursuant to 15 USC 1692k(3);

v.       Reasonable attorney fees as determined by the court pursuant to 15 USC 1692k(3); and

vi.      Any other recoverable damages, including punitive damages.


[The rest of this page intentionally left blank.]

**COUNT II**
**Violation of Illinois' Consumer Fraud Act against Wells Fargo – Foreclosure**
**Brought By the Loughrans, Individually, and on behalf of the Foreclosure Class, against**
**Wells Fargo Bank, NA, d/b/a Wells Fargo Home Mortgage**

(815 ILCS 505/1 *et. seq.*)

456.     The Loughrans reallege and incorporate paragraphs 1 through 455 as if set forth fully

herein.

457.     At all relevant times, there was in full force and effect the Illinois Consumer Fraud and

Deceptive Business Practices Act, 815 ILCS 505/1, *et. seq.* (the "Consumer Fraud Act").

458.     The Consumer Fraud Act of Illinois prohibits misrepresentations and use of unfair

practices in the collection of debts.

459.     Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to *the use or employment of any deception, fraud,*
> *false pretense, false promise, misrepresentation or the concealment,*
> *suppression or omission of any material fact, with intent that others rely*
> *upon the concealment, suppression or omission of such material fact*, or
> the use or employment of any practice described in Section 2 of the
> "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in
> the conduct of any trade or commerce are hereby declared unlawful
> whether any person has in fact been misled, deceived or damaged thereby.
> In construing this section consideration shall be given to the
> interpretations of the Federal Trade Commission and the federal courts
> relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

460.     Section 1 of the Consumer Fraud Act, 815 ILCS 505/1, defines "person" as follows:

> **…** (c)  The term "person" includes any natural person or his legal
> representative, partnership, corporation (domestic and foreign), company,
> trust, business entity or association, and any agent, employee, salesman,
> partner, officer, director, member, stockholder, associate, trustee or cestui
> que trust thereof.
> **… .**

815 ILCS 505/1(c).

461.    Wells Fargo's violation of the FDCPA is a violation of the Illinois Consumer Fraud Act (815 ILCS 505/2).  Pursuant to the Illinois Consumer Fraud Act (815 ILCS 505/2) which incorporates the FTC Act (15 U.S.C. §45) and the FDCPA (15 U.S.C. §1692l(a)) which deems a violation of the FDCPA an unfair and deceptive act or practice in violation of the FTC Act, the Defendants' violations of the FDCPA is a per se violation of the Illinois Consumer Fraud Act, (810 ILCS 505/2).

462.    Also, independent of the FDCPA, Wells Fargo's actions are deceptive and unfair acts or practices in violation of the ICFA, 815 ILCS 505/2.

463.    US Bank NA did not file or direct Pierce to file the foreclosure action but rather Pierce filed it at the direction of Wells Fargo Bank in the name of "US Bank NA as Trustee of the Wells Fargo Asset Securities Corp Mortgage Pass-Through Certificates, Series 2006-AR1."

464.    By filing in the name of US Bank NA as "Trustee," Wells Fargo exploited the misnomer of the term "Trustee" in the New York PSA and the confusion it creates in the mind of the mortgagor/borrowers, like the Loughrans, and the judges and borrowers' attorneys in State courts.

465.    Wells Fargo's pursuit of this foreclosure action and debt collection by use of misrepresentations and false documents implicates consumer protection concerns and violates the Consumer Fraud Act.

466.    Section 10(a) of the Consumer Fraud Act states, in pertinent part:

> (a)  Any person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual damages or any other relief which the court deems proper.  Proof of public injury, a pattern, or an effect on consumers generally shall not be required…
> …

> (c)   Except as provided in subsection (f) of this Section in any action brought by a person under this Section, the Court may grant injunctive relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

467.    Wells Fargo caused the Loughrans to suffer improper foreclosure, severe emotional distress, damage to their credit rating, and to incur attorney fees and court costs in defending the improperly filed foreclosure complaint.

468.    Wells Fargo intended that the Loughrans rely on said misrepresentations and false documents in connection with asserting their purported right to foreclose.

469.    In addition to being deceptive, Wells Fargo's assertion of false documents is also unethical, immoral, oppressive, causes substantial injury, and violates public policy – and is patently unfair in violation of the Illinois Consumer Fraud Act.

470.    The Loughrans had no meaningful choice but to defend the improper foreclosure instigated by Wells Fargo and to incur court costs and attorney fees to defend the improper foreclosure.

471.    As a result of the conduct of Wells Fargo, the Loughrans had their affirmative defenses stricken and counterclaim dismissed with prejudice, which was based upon false documents and not valid, to their detriment, and, on information and belief, to the detriment of their credit rating.

472.    As such, the Loughrans were damaged as a proximate result of Wells Fargo's above-described unfair, fraudulent, misleading and deceptive conduct, in violation of the Consumer Fraud Act, and are entitled to actual and statutory damages allowed by the Consumer Fraud Act.


[The rest of this page intentionally left blank.]

**COUNT III**
**Violation of Illinois' Consumer Fraud Act against Wells Fargo – HAMP**
**Unfair Conduct Under the Illinois Consumer Fraud And Deceptive Business Practices Act,**
**815 ILCS 505/2 & the Fair Debt Collections Practices Act, 15 U.S.C. 1692e**
**Brought By the Loughrans, Individually, and on behalf of the HAMP Class, against Wells**
**Fargo Bank, NA, d/b/a Wells Fargo Home Mortgage**
(815 ILCS 505/1 *et. seq.*)

473.    The Loughrans reallege and incorporate paragraphs 1 through 472 as if set forth fully

herein.

474.    At all relevant times, there was in full force and effect the Illinois Consumer Fraud and

Deceptive Business Practices Act, 815 ILCS 505/1, *et. seq.* (the "Consumer Fraud Act").

475.    The Consumer Fraud Act of Illinois prohibits misrepresentations and use of unfair

practices in the collection of debts.

476.    Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to *the use or employment of any deception, fraud,*
> *false pretense, false promise, misrepresentation or the concealment,*
> *suppression or omission of any material fact, with intent that others rely*
> *upon the concealment, suppression or omission of such material fact*, or
> the use or employment of any practice described in Section 2 of the
> "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in
> the conduct of any trade or commerce are hereby declared unlawful
> whether any person has in fact been misled, deceived or damaged thereby.
> In construing this section consideration shall be given to the
> interpretations of the Federal Trade Commission and the federal courts
> relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

477.    Section 1 of the Consumer Fraud Act, 815 ILCS 505/1, defines "person" as follows:

> **...** (c)  The term "person" includes any natural person or his legal
> representative, partnership, corporation (domestic and foreign), company,
> trust, business entity or association, and any agent, employee, salesman,
> partner, officer, director, member, stockholder, associate, trustee or cestui
> que trust thereof.
> **... .**

815 ILCS 505/1(c).

478.     Wells Fargo's violation of the FDCPA is a violation of the Illinois Consumer Fraud Act (815 ILCS 505/2).  Pursuant to the Illinois Consumer Fraud Act (815 ILCS 505/2) which incorporates the FTC Act (15 U.S.C. §45) and the FDCPA (15 U.S.C. §1692l(a)) which deems a violation of the FDCPA an unfair and deceptive act or practice in violation of the FTC Act, the Defendants' violations of the FDCPA is a per se violation of the Illinois Consumer Fraud Act, (810 ILCS 505/2).

479.     Also, independent of the FDCPA, Wells Fargo's actions are deceptive and unfair acts or practices in violation of the ICFA, 815 ILCS 505/2.

480.     Section 10(a) of the Consumer Fraud Act states, in pertinent part:

> (a)  Any person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual damages or any other relief which the court deems proper.  Proof of public injury, a pattern, or an effect on consumers generally shall not be required…
> …
> (c)  Except as provided in subsection (f) of this Section in any action brought by a person under this Section, the Court may grant injunctive relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

481.     Wells Fargo's denial of the Loughrans' HAMP modification application because "We do not have contractual authority to modify your loan because of limitations in our servicing agreement" is based on a fraudulent misrepresentation.  The foregoing statement was made in its letter (dated March 9, 2015) to the Loughrans attached to the March 20, 2015 email from Woodworth to Smith.  The foregoing statement was reiterated in its denial of the Loughrans' appeal of Wells Fargo's denial of a HAMP modification in its letter (dated April 13, 2015) to the Loughrans attached to the April 29, 2015 email from Woodworth.

482.   If the court, in some way, finds that the foregoing statements by Wells Fargo – i.e., "We do not have contractual authority to modify your loan because of limitations in our servicing agreement" – were true when made, then Wells Fargo knew this when it encouraged the Loughrans to apply for HAMP since October 18, 2011.

483.   Assuming Wells Fargo's statement referenced in the immediately preceding paragraph is true, Wells Fargo, by claiming the Loughrans were eligible for HAMP, made a fraudulent misrepresentation or made a material omission by not telling the Loughrans they could *never* get a HAMP modification because of the Wells Fargo Servicing Agreement.

484.   If the statement made by Wells Fargo referenced in the paragraphs above was true, then it was a material omission not to tell the Loughrans before:

     1)     the Loughrans (or anyone else similarly situated) applied for HAMP;

     2)     Wells Fargo requested Loughrans to resend their documents again and again, and to send updated documents including, but not limited to, more recent pay stubs, more recent tax returns (2010, 2011, 2012, 2013), more recent profit and loss statements, and more explanations of the foregoing documents.

485.   So, either Wells Fargo made a fraudulent misrepresentation in its letter dated March 9, 2015 (sent via email on March 20, 2015) and its subsequent denial of the Loughrans' appeal, or Wells Fargo made a material omission prior to that time, akin to fraud.

486.   In addition, Wells Fargo's statements in its letters dated March 9, 2015, and June 1, 2015, state: "Note: We service your mortgage on behalf of *your investor*, U.S. BANK, N.A. as trustee for WFMBS 2006-AR1."  This statement falsely represents or implies that the Loughrans' accounts have been turned over to innocent purchasers for value and uses a business, company, or organization name other than the true name of the debt collector's business, company, or

organization in violation of 15 U.S.C. §§ 1692e(12) & 1692e(14), respectfully, and is a per se

violation of the ICFA, 815 ILCS 505/2. Moreover, they are deceptive and violate the ICFA

independent of the FDCPA.

487.　　As a result of the conduct of Wells Fargo, the Loughrans were denied a HAMP

affordable modification, which was based upon Wells Fargo's false statements.

488.　　As such, the Loughrans were damaged as a proximate result of Wells Fargo's above-

described unfair, fraudulent, misleading and deceptive conduct, in violation of the Consumer

Fraud Act, and are entitled to actual and statutory damages allowed by the Consumer Fraud Act.

489.　　Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

states, in pertinent part:

> Sec. 2. Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use or employment of any
> deception fraud, false pretense, false promise, misrepresentation or the
> concealment, suppression or omission of any material fact, with intent that
> others rely upon the concealment, suppression or omission of such
> material fact, or the use or employment of any practice described in
> Section 2 of the "Uniform Deceptive Trade Practices Act", approved
> August 5, 1965, in the conduct of any trade or commerce are hereby
> declared unlawful whether any person has in fact been misled, deceived or
> damaged thereby. In construing this section consideration shall be given to
> the interpretations of the Federal Trade Commission and the federal courts
> relating to Section 5 (a) of the Federal Trade Commission Act.

815 ILCS 505/2.

490.　　Wells Fargo's conduct – denying the Loughrans a HAMP modification and instead

offering them a non-HAMP TPP with a first payment of $59,140.00 – violates public policy as

such policy is evidenced in the numerous steps taken by lawmakers to preserve home ownership

and protect home values through mortgage loan modifications that are affordable, most notably

HAMP; as evidenced in the numerous steps taken by lawmakers to protect retirement funds from

claims of creditors, most notably 11 U.S.C. 522 and 735 ILCS 5/12-1006; and as evidenced in

the Servicing Standards incorporated into the Consent Judgment Wells Fargo signed by Michael J. Heid, Executive Vice President for Wells Fargo Bank N.A., Deborah Hagan for the Illinois Attorney General's Office; and Brent Adams for the Illinois Department of Financial and Professional Regulation, and entered by the Court in the United States District Court for the District of Columbia ("Consent Judgment").

491.    Wells Fargo's conduct is immoral, unscrupulous, unconscionable, and unethical in that, instead of taking steps that would allow the Loughrans to keep their home, it deprived them of an affordable modification, including principal reduction and reduced payments, pursuant to HAMP and pursuant to the Servicing Standards in the Consent Judgment.

492.    Wells Fargo's conduct occurred in the course of trade or commerce.


[The rest of this page intentionally left blank.]

## COUNT IV
**Violation of Illinois' Consumer Fraud Act against Wells Fargo – HAMP**
**Deceptive Acts Under The Illinois Consumer Fraud And Deceptive Business Practices Act,**
**815 ILCS 505/2, Brought By the Loughrans, Individually, Against Wells Fargo Bank, NA,**
**d/b/a Wells Fargo Home Mortgage**
(815 ILCS 505/1 *et. seq.*)

493.    The Loughrans incorporate herein by reference all preceding paragraphs including but not limited to paragraphs 1 through 492.

494.    In the letters Wells Fargo Bank NA sent to the Loughrans stating in October 21, 2010, that the Loughrans were eligible for HAMP or stating in March and April, 2015, that the Loughrans  were not eligible for HAMP due to its servicing agreement, Wells Fargo Bank NA used or employed deception, fraud, false pretense, false promise, misrepresentation, suppression and omission of material fact with intent that the Loughrans would rely upon the concealment, suppression or omission of such material fact.

495.    Wells Fargo's conduct occurred in the course of trade or commerce.

496.    The Loughrans relied on said conduct of Wells Fargo Bank NA and were damaged thereby.

497.    As a result of said conduct of Wells Fargo Bank NA, the Loughrans suffered damages including, but not limited to, severe emotional distress, aggravation, inconvenience, marital discord, financial hardship, attorneys' fees, and court and litigation costs.


[The rest of this page intentionally left blank.]

**COUNT V**

**Fraudulent Misrepresentation/Common Law Fraud Brought by the Loughrans, Individually, and on behalf of the HAMP Class, against Wells Fargo Bank, NA, d/b/a Wells Fargo Home Mortgage -- HAMP**

498.     The Loughrans incorporate herein by reference all preceding paragraphs including but not limited to paragraphs 1 through 497.

499.     In the letters Wells Fargo Bank NA sent to the Loughrans stating in October, 2011, that the Loughrans were eligible for HAMP or stating on March 9, 2015 and April 13, 2015, that the Loughrans were not eligible for HAMP due to its servicing agreement, Wells Fargo Bank NA made intentional misrepresentations or material omissions.

500.     Wells Fargo knew that these representations were false or that the omissions were material at the time when they were made by Wells Fargo Bank NA. Therefore, Wells Fargo Bank NA had absolutely no intention to modify the Loughrans' mortgage loan whether the Loughrans were eligible and legally entitled to a HAMP modification or not.

501.     These omissions were also material insofar as the Loughrans would have never applied for a HAMP modification and endured the aggravation and inconvenience and emotional distress and attorneys' fees and court and litigation costs had they known that Wells Fargo could not or would not offer them an affordable HAMP mortgage modification.

502.     If the Loughrans were eligible for a HAMP affordable modification and legally entitled to the same, Wells Fargo made the false misrepresentations to the Loughrans in its letters to the Loughrans in March and April of 2015 in order to coerce and deprive the Loughrans of their retirement funds that are legally protected from creditor claims, pursuant to 11 U.S.C. 522 (Bankruptcy Code) and 735 ILCS 5/12-1006 (Exemptions of Retirement Plans).

**COUNT VI**
**Violation of RICO, 18 U.S.C. § 1692(c)**
**(Operation of Enterprise Through a Pattern of Racketeering)**
**Loughrans, Individually, and on behalf of the Foreclosure Class, against Wells Fargo**
**Bank, N.A., Pierce & Associates, P.C., McCalla Raymer Leibert Pierce LLC, and Mayer**
**Brown LLP**

503.    The Loughrans incorporate herein by reference all preceding paragraphs including but

not limited to paragraphs 1 through 502.

## RICO PREDICATE ACTS

### Mail and Wire Fraud

504.    At all relevant times, 18 U.S.C. §§ 1341 and § 1343 prohibited mail and wire fraud,

respectfully.  In pertinent part, those statutes provide:

> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or
> fraudulent pretenses, representations, or promises … for the purpose of
> executing such scheme or artifice or attempting to do so, places in any
> post office or authorized depository for mail matter, any matter or thing
> whatever to be sent or delivered by the Postal Service, or deposits or
> causes to be deposited any matter or thing whatever to be sent or delivered
> by any private or commercial interstate carrier, or takes or receives
> therefrom, any such matter or thing, or knowingly causes to be delivered
> by mai or such carrier according to the direction thereon … any such
> matter or thing, shall be … [punished according to law].
>
> ***
>
> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or
> fraudulent pretenses, representations, or promises, transmits or causes to
> be transmitted by means of wire, radio, or television communications in
> interstate or foreign commerce, any writings, signs, pictures, or sounds for
> the purpose of executing such scheme or artifice, shall be [punished
> according to law].

505.    Beginning in or prior to 2012, Wells Fargo, Mayer Brown, Pierce, and McCalla devised

and, along with others, implemented a scheme to defraud Plaintiffs and others, and to obtain

money and property by false and fraudulent representations from Plaintiffs and others.  The

scheme included wrongful denial of HAMP modifications to eligible borrowers and improper or wrongful foreclosure on borrowers' homes.

506.    The scheme to defraud included filing foreclosure lawsuits in the names of "Trustees" identified in pooling and servicing agreements for Wells Fargo's mortgage-backed securities when those "Trustees" had no involvement in the foreclosure lawsuits and did not have standing to file the foreclosure lawsuits because they were not the holders of the promissory notes.

507.    The scheme to defraud included the use of false affidavits and fraudulent assignments of mortgage as part of the scheme to deceive.

508.    In furtherance or execution of the scheme to defraud, Wells Fargo, Pierce, McCalla, and Mayer Brown , Tena Andric, and others caused to be used, on numerous occasions, the wires (telephone, fax, internet, and email) in interstate commerce in violation of 18 U.S.C. §1343. These uses of the wires were continuous over a period of more than twelve years and were related to one another and thus constitute a pattern of racketeering.  The uses of the wires originated from, and were directed to, the United States, and were intended to, and did, have effects in the United States, including, but not limited to: (a) enriching Defendants in the United States, including Wells Fargo, Pierce, McCalla, and Mayer Brown; (b) harming United States citizens Daniel Loughran and Margaret Loughran; (c) in the case of members of the Class, permitting the acquisition of REO Properties or homes secured by the loans improperly foreclosed upon and/or improperly denied HAMP affordable modifications after sale of those homes either pursuant to judicial foreclosure sales or deed of trust sales.  These uses of the wires in furtherance of the scheme to defraud included, but were not limited to the foregoing facts described in the preceding paragraphs at ¶¶ 177, 184, 188, 191, 197, 201, 216, 249, 257, 273, 283, 291.

509. In furtherance or execution of the scheme to defraud, Wells Fargo, Pierce, Mayer Brown, and McCalla and others used and caused to be used the U.S. Postal Service and private or commercial carriers in interstate commerce, in violation of 18 U.S.C. § 1341, including but not limited to the foregoing facts described in the preceding paragraphs at ¶¶ 86, 100, 200, 216, 217, 249, 255, 256, 257.

510. These uses of the mail and wires were continuous over a period of more than seven years and were related to one another and thus constitute a pattern of racketeering as defined in 18 U.S.C. § 1961(5). These uses of the mail and wires in the same or like manner continue at present.

511. At all relevant times, the association of the following persons and entities constitutes an association-in-fact enterprise ("Enterprise") as defined in 18 U.S.C. § 1961(4): Wells Fargo Bank, N.A., Mayer Brown LLP, Pierce & Associates, P.C., and McCalla Raymer Leibert Pierce, LLC. From at least 2014 through the present, the Enterprise functioned as a continuing unit with a common purpose

512. Wells Fargo Bank, N.A. ("Wells Fargo"), Mayer Brown LLP ("Mayer Brown"), Pierce & Associates, P.C. ("Pierce"), and McCalla Raymer Leibert Pierce, LLC ("McCalla") are each "persons" as that term is defined in 18 U.S.C. § 1961(3).

513. At all relevant times, Wells Fargo, Mayer Brown, Pierce, and McCalla participated in the operation or management of the Enterprise through a pattern of racketeering activity, specifically, the predicate acts of mail and wire fraud violations described in the preceding paragraphs 659 to 660.

514. The Loughrans were injured in their business or property by reason of the pattern of racketeering conducted by Wells Fargo, Mayer Brown, Pierce, and McCalla which, *inter alia*,

caused the following damages: attorneys fees, court costs, severe anxiety and severe emotional distress, marital discord, damaged credit rating.

**COUNT VII**
**Conspiracy to Violate RICO, 18 U.S.C. § 1692(d)**
**(Conspiracy to Operate Affairs of Enterprise Through a Pattern of Racketeering)**
**Loughrans, Individually, and on behalf of the Foreclosure Class, against Wells Fargo**
**Bank, N.A., Pierce & Associates, P.C., McCalla Raymer Leibert Pierce LLC, and Mayer**
**Brown LLP**

515.    The Loughrans incorporate herein by reference all preceding paragraphs including but not limited to paragraphs 1 through 514.

516.    Wells Fargo, Mayer Brown, Pierce, and McCalla conspired to participate in the operation of the affairs of the Enterprise through a pattern of racketeering activity, specifically the pattern of mail and wire fraud alleged in paragraphs 659 to 660, above.

517.    Wells Fargo Mayer Brown, Pierce, and McCalla agreed to facilitate the activities of those operating the Enterprise through a pattern of racketeering activity by their conduct described in paragraphs 659 to 660, above.  Tena Andric agreed to facilitate the activities of those operating the Enterprise through a pattern of racketeering activity by, *inter alia*, filing and submitting via wire and the mail false affidavits of service, motions and other pleadings with false statements known to be false, instructing local appearance counsel Jerry Justice on February 28, 2018, to make false statements to the court in Grundy County on March 1, 2018, on her Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo Bank, and in her Second Emergency Motion to Quash the Loughrans' Subpoena to Wells Fargo and in her Response to the Loughrans' Motion for Sanctions.

518.    The Loughrans were injured in their business or property by reason of the conspiracy to conduct the affairs of the Enterprises through a pattern of racketeering activity, which, *inter alia*, substantially increased the Loughrans' attorney fees, court costs, caused severe emotional

distress, anxiety, marital discord, frustration and humiliation, greatly impacted their credit score and availability of credit for purposes of co-signing for their college-aged children for college financial assistance.

**COUNT VIII**
**Fraud**
**Loughrans, Individually, and on behalf of the Foreclosure Class, against Wells Fargo Bank, N.A., Pierce & Associates, P.C., McCalla Raymer Leibert Pierce LLC, and Mayer Brown LLP**

519.    The Loughrans incorporate herein by reference all preceding paragraphs including but not limited to paragraphs 1 through 518.

520.    As alleged above, Wells Fargo, Pierce, Mayer Brown, and McCalla knowingly made material misrepresentations and omissions to the Loughrans including, but not limited to:

(1)  False statements in the foreclosure complaint filed on December 28, 2011;

(2)  Fraudulent "Corporate Assignment of Mortgage" signed on January 6, 2012, and filed in the Grundy County Recorder's office on January 12, 2012, with the intent to deceive where there was no transfer or assignment of the Note;

(3)  Wells Fargo sent letters to the Loughrans dated March 9, 2015, and June 1, 2015, via their attorneys, Charles Woodworth, and Mayer Brown, falsely stating that Wells Fargo serviced the loan "for *your investor*, US Bank, N.A. as Trustee for WFMBS 2006-AR1" and that the Loughrans did not qualify for a HAMP affordable modification because of "limitations in their servicing agreement;"

(4)  Knowing false statements made in the Motion to Strike the Loughrans' Affirmative Defenses and Dismiss their Counterclaim filed by Mayer Brown on October 21, 2015, falsely stating that Wells Fargo was not the foreclosure Plaintiff and that US Bank was the foreclosure Plaintiff, falsely stating that US Bank had possession of the Loughrans'

154

promissory note, supported by fraudulent affidavit of Teri Townsend stating that the Loughrans' Note was endorsed in blank and the loan serviced by Wells Fargo while omitting the material facts known to Wells Fargo that the original Note was in possession of Wells Fargo Bank.

The Loughrans did not know and could not know that the foregoing false statements were false because "attorneys who file lawsuits or appear for parties in litigation have no burden to tender their oaths of office on request or to provide written proof that they actually were hired by their clients." *Parkway Bank v. Korzen*, 2013 IL App (1st) 130380, ¶60 (*citing* Gray v. First National Bank, 388 Ill. 124, 129 (1944))("where an attorney appears of record for a party, the presumption is that his appearance in such a capacity was duly authorized by the person for whom he is appearing"). Therefore, Wells Fargo and Mayer Brown intended or reasonably expected the Loughrans to act upon those false statements and material omissions by refraining from filing a response thereto or failing to adequately respond thereto. Therefore, the Loughrans reasonably relied on the false statements of Wells Fargo and Mayer Brown by failing to file a response to the false statements and material omissions made in the Motion to Strike their Affirmative Defenses and Dismiss their Counterclaim. As a result of those false statements and the Loughrans' reasonable reliance the Loughrans have been damaged in that their affirmative defenses were stricken with prejudice, their counterclaim was dismissed with prejudice, they never received an affordable modification of their mortgage loan and they continued to pay attorney fees and court costs and to endure anxiety, severe emotional distress, and marital discord.

(5)  All of the false statements made by Wells Fargo and Tena Andric and McCalla as already stated above with regard to fraudulent concealment of the foregoing fraud.

## COUNT IX
### Civil Conspiracy
### Loughrans, Individually, and on behalf of the Foreclosure Class, against Wells Fargo Bank, N.A., Pierce & Associates, P.C., McCalla Raymer Leibert Pierce LLC, and Mayer Brown LLP

521.   The Loughrans incorporate herein by reference all preceding paragraphs including but not limited to paragraphs 1 through 520.

522.   The Defendants, Wells Fargo, Mayer Brown, Pierce, and McCalla combined for the purpose of denying the Loughrans an affordable modification via HAMP and foreclosing on their home using the unlawful means described above – i.e., false statements in pleadings, false statements in motion filed in court, false statements made in letters denying their HAMP application, fraudulent affidavits filed in support of court documents, fraudulent assignments of mortgage filed in support of court documents and in the Grundy County Recorder's office.

## COUNT X
### Intentional Infliction of Emotional Distress
### Loughrans, Individually, and on behalf of the Foreclosure Class and the HAMP Class, against Wells Fargo Bank, N.A., Pierce & Associates, P.C., McCalla Raymer Leibert Pierce LLC, and Mayer Brown LLP

523.   The Loughrans incorporate herein by reference all preceding paragraphs including but not limited to paragraphs 1 through 522.

524.   The Defendants foregoing described conduct was extreme and outrageous.

525.   The Defendants intended to inflict severe emotional distress or knew that there was a high probability that their conduct would cause severe emotion distress.

526.   The Defendants conduct actually caused severe emotional distress including but not limited to marital discord, aggravation and frustration, humiliation and embarrassment, inability

to concentrate at work such that Daniel Loughran was prescribed methylphenidate by his physician to help him concentrate at work.

## PRAYER FOR RELIEF

WHEREFORE, the Loughrans pray for the following relief:

A.     That the court adjudge and decree that Pierce and Wells Fargo engaged in the misconduct alleged herein;

B.     That the court enjoin and restrain Wells Fargo, McCalla Raymer Leibert Pierce, and Mayer Brown, and their officers, agents, and employees, and those in active concert or participation with them, from continuing or engaging in such or similar conduct as alleged herein;

C.     That the court adjudge and decree that Wells Fargo's, McCalla's, Mayer Browns, and Pierce's conduct complained of herein violated the law as alleged in each cause of action;

D.     That the court order that Wells Fargo, McCalla Raymer Leibert Pierce, and Mayer Brown pay restitution to the Loughrans which would restore them to the financial position they would have been in, absent the foregoing described misconduct;

E.     That the court order that Wells Fargo, McCalla Raymer Leibert Pierce, and Mayer Brown pay compensatory damages (including statutory damages) as a result of their unlawful conduct;

F.     That the court order that Wells Fargo, McCalla Raymer Leibert Pierce, and Mayer Brown pay punitive damages as a result of their unlawful conduct;

G.     That the court order that Wells Fargo, McCalla Raymer Leibert Pierce, and Mayer Brown pay for the cost of this action and reasonable attorneys' fees pursuant to 15 U.S.C. 1692k(a)(3) and 815 ILCS 505/10a.

H.     That the court enjoins the Defendants from further engaging in the same improper

conduct in foreclosure lawsuit against the Loughrans in Grundy County pursuant to 18 U.S.C.

1964(a);

I.     That the court enjoins the Defendants from further engaging in the same or similar

conduct in cases of all those similarly situated as the Loughrans pursuant to 18 U.S.C. 1964(a);

and

J.     That the court award the Loughrans threefold the damages they sustained and the cost of

this suit, including a reasonable attorney's fee pursuant to 18 U.S.C. 1964(c).

Dated:  June 14, 2019            Respectfully Submitted:


By:     _____*/S/* John Smith (electronically)_____
                        Attorney for the Loughrans

John Smith
(ARDC #6270884)
Law Office of John Smith
5062 Rockrose Court, # 4
Roscoe, IL  61073
Ph: (847)242-8401
Primary E-mail: john@johnsmithlawyer.com
Secondary E-mail: johnpsmithlaw@gmail.com

# EXHIBIT 1

*Of Class Action*
*Loughran v Wells Fargo et. al.*
*N.D. Ill – Filed June 14, 2019*

Questioned
As of: June 14, 2019 8:29 PM Z

## *Oppong v. First Union Mortg. Corp.*

United States Court of Appeals for the Third Circuit

January 4, 2007, Submitted Under Third Circuit LAR 34.1(a) ; January 26, 2007, Filed

No. 06-1388

**Reporter**
215 Fed. Appx. 114 *; 2007 U.S. App. LEXIS 1912 **

ATUAHENE OPPONG, v. FIRST UNION MORTGAGE CORPORATION; WELLS FARGO HOME MORTGAGE INC.; FRANCIS S. HALLINAN

**Notice:** [**1] NOT PRECEDENTIAL OPINION UNDER THIRD CIRCUIT INTERNAL OPERATING PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT REGARDED AS PRECEDENTS WHICH BIND THE COURT.

PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Subsequent History:** On remand at, Judgment entered by, Summary judgment denied by, Motion to strike denied by *Oppong v. First Union Mortg. Corp., 2008 U.S. Dist. LEXIS 55995 (E.D. Pa., July 24, 2008)*

**Prior History:** On Appeal From the United States District Court For the Eastern District of Pennsylvania. (D.C. Civ. No. 02-cv-02149). District Judge: Honorable Eduardo C. Robreno.

*Oppong v. First Union Mortg. Corp., 407 F. Supp. 2d 658, 2005 U.S. Dist. LEXIS 37551 (E.D. Pa., 2005)*

## Core Terms

collects, debt collector, law law law, regularly, mortgage, debt collection, foreclosure action, res judicata, merits, district court, notice, foreclosure, summary judgment, adjudicated, default, activities, services, appears, attorneys, engages, entity, issues, counterclaims, post-verdict, proportion, validation, courts, repeal, eighteen-month, constituting

## Case Summary

**Procedural Posture**

Appellee mortgagor sued appellant loan servicer in the United States District Court for the Eastern District of Pennsylvania, alleging violations of the Fair Debt Collection Practices Act (FDCPA), *15 U.S.C.S. § 1692 et seq.* After a grant of summary judgment in favor of the servicer was remanded, the district court granted the servicer's renewed motion for summary judgment. The mortgagor appealed.

**Overview**

A Pennsylvania state court had ruled in the servicer's favor in a mortgage foreclosure action in which the mortgagor had asserted an FDCPA claim. The district court in the instant suit found that, although the servicer qualified as a "debt collector" under *15 U.S.C.S. § 1692a(6)*, the FDCPA claim was barred by res judicata. The court of appeals held that res judicata did not apply, as the mortgagor's FDCPA claim had not been decided on the merits in the foreclosure action. The state court did not address the FDCPA claims, and those claims could not have been adjudicated as counterclaims in the foreclosure action; because the FDCPA claims arose after the mortgagor was in default, they were not proper counterclaims pursuant to Pa. R. Civ. P. 1148. The district court correctly determined that the servicer was a debt collector because it regularly collected debts owed to another. Such a finding was not precluded by the fact that collection of others' debts constituted a small proportion of the servicer's business, nor did *15 U.S.C.S. § 1692(a)(6)* exclude businesses enforcing security interests from the definition of debt collector.

**Outcome**

The district court's judgment was affirmed as to the finding that the servicer was a debt collector under the FDCPA and was vacated as to the res judicata finding. The matter was remanded for further proceedings.

215 Fed. Appx. 114, *114; 2007 U.S. App. LEXIS 1912, **1

# LexisNexis® Headnotes

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

*HN1*[⬇] **Standards of Review**

A court of appeals exercises plenary review over an order granting a motion for summary judgment.

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

*HN2*[⬇] Summary judgment is appropriate when the record shows that there is no need for a trial because there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

Civil Procedure > ... > Preclusion of Judgments > Full Faith & Credit > Full Faith & Credit Statutes

Civil Procedure > Judgments > Preclusion of Judgments > Res Judicata

*HN3*[⬇] **Full Faith & Credit Statutes**

Under *28 U.S.C.S. § 1738*, the rulings of state courts shall have the same full faith and credit in every court within the United States as they have by law or usage in the courts of such state from which they are taken. Thus, in determining the preclusive effect of a state court judgment, a federal court applies the rendering state's law of res judicata.

Civil Procedure > Judgments > Preclusion of Judgments > Res Judicata

*HN4*[⬇] **Res Judicata**

Under Pennsylvania law, for the defense of res judicata to prevail, it is necessary that, between the previous action and the present action, there be an identity of issues decided, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality or capacity of the parties suing or sued. In order for there to be an identity of issues between the previous action and the current one, the previous action must have been decided by a judgment on the merits. It is apparent that a non pros for failure to answer a trial listing is not an adjudication on the merits and thus may not form the basis for application of res judicata. Further, res judicata does not preclude a litigant from bringing in a second action a claim that he could not have raised in the first action.

Civil Procedure > Judgments > Preclusion of Judgments > Res Judicata

*HN5*[⬇] **Res Judicata**

Orders dismissing claims for lack of jurisdiction do not constitute judgments on the merits for the purposes of res judicata. *Fed. R. Civ. P. 41(b)*.

Civil Procedure > ... > Pleadings > Counterclaims > General Overview

Real Property Law > Financing > Foreclosures > Judicial Foreclosures

*HN6*[⬇] Claims that arose only after a defendant was in default are not proper counterclaims to bring in a mortgage foreclosure action. Pa. R. Civ. P. 1148.

Civil Procedure > ... > Pleadings > Counterclaims > General Overview

Real Property Law > Financing > Foreclosures > Judicial Foreclosures

*HN7*[⬇] See Pa. R. Civ. P. 1148.

Civil Procedure > ... > Pleadings > Counterclaims > General Overview

215 Fed. Appx. 114, *114; 2007 U.S. App. LEXIS 1912, **1

Real Property
Law > Financing > Foreclosures > Judicial
Foreclosures

*HN8*[⬇] Pa. R. Civ. P. 1148 has been interpreted as permitting to be pled in a mortgage foreclosure action only those counterclaims that are part of or incident to the creation of the mortgage itself.

Banking Law > Consumer Protection > Fair Debt
Collection > Liability for Violations

*HN9*[⬇] **Liability for Violations**

The only remedy provided in the Fair Debt Collection Practices Act, *15 U.S.C.S. § 1692 et seq.*, for private litigants is damages.

Banking Law > Consumer Protection > Fair Debt
Collection > General Overview

*HN10*[⬇] *15 U.S.C.S. § 1692a(6)* of the Fair Debt Collection Practices Act defines a debt collector as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Thus, a business may be a "debt collector" because its "principal purpose" is the collection of debts or because it "regularly" engages in the collection of debts. This definition of "debt collector" excludes creditors who attempt to collect their own debts, but does not exclude an entity who has acquired a debt that was already in default.

Banking Law > Consumer Protection > Fair Debt
Collection > General Overview

*HN11*[⬇] For purposes of determining whether a person is a "debt collector" under *15 U.S.C.S. § 1692a(6)* of the Fair Debt Collection Practices Act, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity.

Banking Law > Consumer Protection > Fair Debt

Collection > General Overview

*HN12*[⬇] For purposes of determining whether a person is a "debt collector" under *15 U.S.C.S. § 1692a(6)* of the Fair Debt Collection Practices Act, debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not.

Banking Law > Consumer Protection > Fair Debt
Collection > Communications With Debtors

Banking Law > Consumer Protection > Fair Debt
Collection > General Overview

*HN13*[⬇] **Communications With Debtors**

The argument that businesses enforcing security interests are excluded from the definition of "debt collector" under *15 U.S.C.S. § 1692a(6)* of the Fair Debt Collection Practices Act (FDCPA) is without merit. Communication threatening foreclosure is covered by the FDCPA.

**Counsel:** ATUAHENE OPPONG, Appellant, Pro se, Philadelphia, PA.

For WELLS FARGO HOME MTG, Appellee: Daniel S. Bernheim, III, Jonathan J. Bart, Silverman, Bernheim & Vogel, Philadelphia, PA.

**Judges:** Before: FISHER, ALDISERT and WEIS, Circuit Judges.

# Opinion

**[*115]** PER CURIAM

Atuahene Oppong appeals from the District Court's order granting Defendant Wells Fargo Home Mortgage, Inc.'s ("Wells Fargo") motion for summary judgment. For the reasons that follow, we will vacate in part and affirm in part the District Court's judgment.

This action stems from a loan that Oppong obtained in 1996, which is now owned by the Federal Home Loan Mortgage Company. The loan was secured by his residence. Oppong appears to have been in default on the loan since 1997. In January 2000, First Union Mortgage Corporation **[*116]** ("First Union"), the

company that serviced the loan, instituted a [**2] foreclosure action. Effective March 15, 2001, First Union assigned the servicing rights to Oppong's mortgage to Wells Fargo, and Wells Fargo was substituted as a party in the foreclosure action.

On August 2, 2001, Oppong filed a motion to dismiss the foreclosure action, claiming, inter alia, that Wells Fargo violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. (App. Ex. I). On January 28, 2002, after a bench trial, Judge Cohen of the Court of Common Pleas of Philadelphia County found in favor of Wells Fargo in the amount of $117,549.22. (App. Ex. J at Tr. 1/28/02 39:4-20.) Oppong filed a post-verdict motion reiterating his arguments, including his FDCPA claim. (App. Ex. K.) The post-verdict motion was denied on March 19, 2002 (App. Ex. M), and Oppong appealed.

During the pendency of his appeal, Oppong filed for bankruptcy. The Pennsylvania Superior Court dismissed his appeal without prejudice, to be reinstated after the bankruptcy proceedings concluded. (App. Ex. U.) The bankruptcy case was closed in March 2003. (App. Ex. T, Bankr. Docket.)

On April 16, 2002, Oppong filed this action in federal court against Wells Fargo, [**3] First Union, and Francis Hallinan, an attorney retained by Wells Fargo who had attempted to negotiate a settlement in the foreclosure action. Oppong's complaint alleged that the Defendants violated the FDCPA by sending him misleading documents in violation of 15 U.S.C. § 1692j and failing to properly validate the debt as required by 15 U.S.C. § 1692g. Oppong also brought state claims.

The District Court granted summary judgment in favor of the defendants on all claims. Oppong appealed, and we affirmed the grant of summary judgment in favor of First Union and Hallinan but remanded the FDCPA claims against Wells Fargo because there was an issue of material fact about whether Wells Fargo was a "debt collector" within the meaning of the FDCPA. Oppong v. First Union Mortg. Corp., 112 Fed. Appx. 866, slip op. at 9 (3d Cir. 2004) (nonprecedential opinion). After further discovery, Wells Fargo renewed its motion for summary judgment, arguing that it was not a debt collector and that Oppong's claims were barred by res judicata. The District Court found that Wells Fargo was a "debt collector," but granted the motion, holding that Oppong's [**4] FDCPA claims were precluded by res judicata. Oppong appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and HN1[↑] exercise plenary review over an order granting a motion for summary judgment. See Kelly v. Drexel University, 94 F.3d 102, 104 (3d Cir. 1996). HN2[↑] Summary judgment is appropriate when the record shows that there is no need for a trial because "there is no genuine issue of material fact and []the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

I.

HN3[↑] Under 28 U.S.C. § 1738, the rulings of state courts "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken." Thus, in determining the preclusive effect of a state court judgment, we apply the rendering state's law of res judicata. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, [*117] 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985).

HN4[↑] Under Pennsylvania law, for the defense [**5] of res judicata to prevail, it is necessary that, between the previous action and the present action, there be an identity of issues decided, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality or capacity of the parties suing or sued. E.g., Duquesne Slag Products Co. v. Lench, 490 Pa. 102, 415 A.2d 53, 55 (Pa. 1980). In order for there to be an identity of issues between the previous action and the current one, the previous action must have been decided by a judgment on the merits. See Gutman v. Giordano, 384 Pa. Super. 78, 81, 557 A.2d 782 (Pa. Super. 1989) ("It is apparent that a non pros for failure to answer a trial listing is not an adjudication on the merits and thus may not form the basis for application of res judicata.") Further, res judicata does not preclude a litigant from bringing in a second action a claim that he could not have raised in the first action. See McCarter v. Mitcham, 883 F.2d 196, 199 (3d Cir.1989) (finding that Title VII action not barred by judgment on Pennsylvania civil rights suit because Title VII claims cannot be brought in state court).

[**6] Oppong's FDCPA claims are not precluded by res judicata because they were never decided on the merits in any of the prior litigation. Oppong first raised his FDCPA claims in his August 2, 2001, motion to dismiss the foreclosure action. (App. Ex. I.) The docket of the Court of Common Pleas indicates that Oppong's motion to dismiss was denied as moot because he had

removed the case to federal court. (App. Ex. O at 10.)

When Judge Cohen found in favor of Wells Fargo in the foreclosure action, he did not rule on Oppong's FDCPA claims on the merits. The oral verdict is short, and does not refer to Oppong's FDCPA claim. The verdict, in its entirety says:

> The Court finds that the plaintiff has complied with the act 6 of the mortgage foreclosure law, and the Court is convinced that the assignment and proof of assignment has been filed of record. And notice was given to defendant in this matter incorporating the evidence presented in trial as well as the pretrial statements of both plaintiff and defendant. Court will make a finding in favor of plaintiff against the defendant in the complaint in mortgage foreclosure amount of $117,549.22 including interest, costs and attorneys fees. **[**7]**

(Id. at Tr. 1/28 39:5-19.) Contrary to Wells Fargo's argument, the "notice" that Judge Cohen found to have been given to Oppong does not seem to refer to the notice required by the FDCPA. See *§ 1692g*. Judge Cohen does not mention the FDCPA, or terms such as "validation" that were integral to Oppong's argument. Rather, Cohen's "notice" refers to the notice of an intention to foreclose required by Act 6 of the mortgage foreclosure law, 41 Pa. Conn. Stat. § 403. This notice was necessarily provided by First Union prior to its initiation of the foreclosure action (see App. Ex. F at 1), and says nothing about whether Wells Fargo complied with the FDCPA notice requirements or whether Wells Fargo engaged in other practices prohibited by *§§ 1692j* and *1692g* as alleged in Oppong's complaint.

Judge Cohen's order denying Oppong's post-verdict motion also did not adjudicate the FDCPA claims on the merits. Rather, Judge Cohen expressly stated that, regarding the FDCPA claims, "[t]he Court will not address these issues." [1] (App. Ex. **[*118]** M at 2.) Accordingly, because none of these orders constituted a judgment of the FDCPA claims on the merits, Oppong's claims in the instant complaint **[**8]** are not barred by res judicata. [2]

Wells Fargo's argument that, because Oppong presented his FDCPA claims in the Court of Common Pleas and the court ruled against him in the foreclosure action, his **[**9]** claims were necessarily adjudicated on the merits, is unavailing. There is no evidence that Judge Cohen considered Oppong's FDCPA claims; he never mentioned the FDCPA or used any terms such as "validation" in his opinions that would indicate that he was ruling on those issues. Further, Oppong's FDCPA claims against Wells Fargo were procedurally barred from being adjudicated in the foreclosure action. *HN6*[⬆] Because the FDCPA claims arose only after Oppong was in default, they were not proper counterclaims to bring in a mortgage foreclosure action. See *Pa. R. Civ. P. 1148* (*HN7*[⬆]) "A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose."); *Chrysler First Business Credit Corp. v. Gourniak, 411 Pa. Super. 259, 264, 601 A.2d 338 (Pa. Super. 1992)* (*HN8*[⬆]) "[*Rule 1148*] has been interpreted as permitting to be pled only those counterclaims that are part of or incident to the creation of the mortgage itself."). Further, *HN9*[⬆] the only remedy provided in the FDCPA for private litigants is damages, see *Weiss v. Regal Collections, 385 F.3d 337, 342 (3d Cir. 2004),* **[**10]** and thus, success on these claims would not necessarily have prevented the foreclosure. Accordingly, Oppong's FDCPA claims are not barred by res judicata because they were never adjudicated on the merits.

II.

Wells Fargo argues that the requirements of the FDCPA, such as *§ 1692g* at issue here, do not apply because it is not a "debt collector" as defined in *15 U.S.C. § 1692a(6)*. *HN10*[⬆] *Section 1692a(6)* defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Thus, a business may be a "debt collector" because its "principal

---

[1] Judge Cohen refers to unnamed rulings from the state and federal courts that had already disposed of those claims. However, none of these rulings adjudicated Oppong's FDCPA claims on the merits.

[2] Wells Fargo appears to argue that the FDCPA claims were previously adjudicated in Oppong's bankruptcy action as well

as by the District Court when Oppong removed the foreclosure action to federal court. (See Appellee Br. at 21.) However both those *HN5*[⬆] orders dismissed Oppong's claims for lack of jurisdiction, (See App. Ex. Q and U.), and do not constitute judgments on the merits for the purposes of res judicata. See *Fed. R. Civ. P. 41(b)*; *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 360 (3d Cir. 1983)*.

purpose" is the collection of debts or because it "regularly" engages in the collection of debts. This definition of "debt collector" excludes creditors who attempt to collect their own debts, but does not exclude an entity in Wells Fargo's position who has acquired a debt that was already in default. See *Pollice v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000).* [**11]

Wells Fargo is not an entity whose "principal purpose" is to collect others' debts. Rather, the declaration by Kristina Nagel submitted to the District Court along with the renewed summary judgment motion shows that, in a three-month period, only 89, out of 141,597, of the loans **[*119]** that Wells Fargo acquired were in default. (Ex. T. Tab A.) However, the District Court was correct to conclude that Wells Fargo is a debt collector under the FDCPA because it "regularly" collects debts owed to another.

Wells Fargo's primary argument appears to be that, because the proportion of its business that involves collecting others debts is so small in relation to its other business of originating mortgages, as a matter of law it does not "regularly" collecting debts. However, even though this issue is an open in this circuit, Wells Fargo provides no authority from any other circuit that supports their interpretation of the law. [3] The authority from our sister circuits weighs heavily against Wells Fargo's position. The Fifth Circuit, in *Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997),* held that *HN11*[⬆] "if the

---

[3] The District Court noted that Wells Fargo's position was supported by the Sixth Circuit Court of Appeals in *Schroyer v. Frankel, 197 F.3d 1170, 1176 (6th Cir. 1999).* However, *Schroyer* is inapposite to this case. *Schroyer* involved interpreting the effect of the 1986 repeal of the exemption of attorneys from the coverage of the FDCPA. The Sixth Circuit held that the House reports regarding the repeal revealed that Congress intended for the FDCPA to apply only to attorneys engaging in litigation who, in essence, play the role that non-attorney debt collectors played prior to the passage of the FDCPA in 1975. Because Wells Fargo is not an attorney or law firm, the debates surrounding the repeal of the attorney exemption are irrelevant to the issue of whether, under the 1977 Act, Wells Fargo "regularly" engages in debt collection. Further, the Sixth Circuit held that an attorney "regularly" collects debts when "the attorney or law firm collects debts as a matter of course for its clients *or* for some clients, *or* collects debts as a substantial, but not principal, part of his or its general law practice." *Id.* (emphasis added). Since Wells Fargo appears to engage in debt collection "as a matter of course," *Schroyer* would not support Wells Fargo's claim even if it were applicable.

volume of a person's debt collection services is great enough, it is irrelevant **[**12]** that these services only amount to a small fraction of his total business activity." The Ninth Circuit, without inquiring into the proportion of its business consisted of debt collection activities, found that Western Union "regularly" collected debts because it engaged in debt collection in the usual course of its business. *Romine v. Diversified Collection Services, Inc., 155 F.3d 1142, 1146 (9th Cir. 1998).* And the Second Circuit recently overturned a district court that had found in favor of Wells Fargo's position. In *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertollotti, 374 F.3d 56, 62-63 (2d Cir. 2004),* the Second Circuit held that a law firm was "regularly" engaged in debt collection by assessing "facts closely relating to ordinary concepts of regularity" regardless of whether the entity derives significant portion of its business from debt collection.

**[**13]** Wells Fargo wishes us to disregard these analyses, as well as the common usage of the term "regularly" to find that even though it regularly "collects . . . debts owed to another," it should not be considered a debt collector under the FDCPA because it also engages in other activities. We decline that invitation. In *Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir. 1989),* we found that an attorney who had a long-term relationship with four creditor clients and filed 175 foreclosure or other collection suits in an eighteen-month period "regularly" collected debts owed to another. According to the certification of Kristina Nagel, Wells Fargo acquires approximately 89 home mortgages that are in default in a typical three-month period. (Ex. T.) Thus, in a typical eighteen-month period, it appears that Wells Fargo acquires 534 mortgages in default. Presumably Wells Fargo attempts to collect these debts, meaning that they attempt to collect **[*120]** three times the number of debts as the lawyer in *Crossley,* who we found to regularly collect debts. See *868 F.2d at 570.* Because Wells Fargo, "the nation's leading originator of mortgages," (Appellee Br. at 30), **[**14]** is clearly a much larger operation than Lieberman's law firm, its debt collection activities represent a smaller proportion of its revenues. However, this disparity in size, by itself, is not dispositive of whether Wells Fargo "regularly" collects debts. See *Goldstein, 374 F.3d at 63* (*HN12*[⬆]) "[D]ebt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not.").

Wells Fargo's remaining argument, is that *§ 1692(a)(6)*

215 Fed. Appx. 114, *120; 2007 U.S. App. LEXIS 1912, **14

excludes "security enforcement activities" from the definition of debt collector. However, this argument is squarely foreclosed by our precedents. In *Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005)*, we found that attorneys who were enforcing a lien for unpaid water bills were collecting a debt such that the notice provisions of the FDCPA applied. In the process, we considered **HN13**[⬆] the same argument Wells Fargo raises here - that businesses enforcing security interests were excluded from the definition of "debt collector" under *§ 1692a(6)* - and found that argument without merit. *Id. at 236.* **[**15]** Further, in <u>Crossley</u> we held that communication threatening foreclosure was covered by the FDCPA and looked at foreclosure filings to determine whether the defendant "regularly" engaged in debt collection activities. See *868 F.2d at 570*. Accordingly we agree with the District Court that Wells Fargo is a "debt collector" under the FDCPA.

For the foregoing reasons, Wells Fargo was not entitled to judgment as a matter of law. Although we agree with the District Court that Wells Fargo is a debt collector, we disagree with the District Court's ruling as to the res judicata defense. Accordingly, the District Court's judgment will be affirmed in part and vacated in part. We will remand for further proceedings.

---

**End of Document**

John Smith

# EXHIBIT 2

*Of Class Action*
*Loughran v Wells Fargo et. al.*
*N.D. Ill – Filed June 14, 2019*

Office of Plaintiff's counsel
Pierce & Associates P.C.
redacted the SS# and/or
loan number.



EXHIBIT
B

# FIXED/ADJUSTABLE RATE NOTE

### (One-Year Treasury Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**DECEMBER 28, 2005**         **JOLIET**        **ILLINOIS**
[Date]        [City]        [State]

**26509 W HIGHLAND DRIVE, CHANNAHON, IL 60410**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **\*\*\*\*\*395,280.00**      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **WELLS FARGO BANK, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.250** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **MARCH 01, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **FEBRUARY 01, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **\*2,182.75**. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **FEBRUARY, 2016**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

**MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae UNIFORM INSTRUMENT**



843N (0006)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5
Form 3522 1/01

Initials: _____

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.250** % or less than **2.750** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.250** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

 -843N (0005)

Form 3522 1/01
Initials: DL·MZ

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.000**    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**(A)** Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

 **843N** (0005)

Page 4 of 5

Form 3522 1/01
Initials: _OL._

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DANIEL F LOUGHRAN          -Borrower

_____ (Seal)
MARGARET M LOUGHRAN        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*[Sign Original Only]*

VMP-843N (0005)                    Page 5 of 5                    Form 3522 1/01

# EXHIBIT 3

*Of Class Action*
*Loughran v Wells Fargo et. al.*
*N.D. Ill – Filed June 14, 2019*

FILED
5/11/2018 3:19 PM
Corri Trotter
Grundy County Circuit Clerk
**9662**
By: SM

CIRCUIT COURT OF ILLINOIS
THIRTEENTH JUDICIAL CIRCUIT
GRUNDY COUNTY, ILLINOIS

US BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR WELLS FARGO
ASSET SECURITIES CORPORATION
MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2006-AR1,
     PLAINTIFF,

     VS.

DANIEL F. LOUGHRAN; MARGARET M
LOUGHRAN; THE HIGHLANDS
SUBDIVISION COMMUNITY
ASSOCIATION; WELLS FARGO BANK,
N.A.; UNKNOWN OWNERS AND NON-
RECORD CLAIMANTS,
     DEFENDANTS.

NO. 11 CH 373
26509 WEST HIGHLAND DRIVE
CHANNAHON, IL 60410
JUDGE PETERSON

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS

NOW COMES the Plaintiff, US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR1 (the "Plaintiff"), by and through its attorney, McCalla Raymer Leibert Pierce, LLC, and for its Response to Defendants' Daniel and Margaret Loughran's Motion for Sanctions, states as follows:

### ARGUMENT

**I.    DEFENDANTS' COUNSEL HAD NOTICE OF THE MARCH 1, 2018 HEARING DATE AT ALL RELEVANT TIMES.**

1.    Plaintiff file the Complaint on December 28, 2011 in this matter.

2.    Attorney John P. Smith ("Attorney Smith") and Attorney Edward Anderson ("Attorney Anderson") are currently counsel of record in this case.  See Exhibits A and B,

respectively, Court Order of June 24, 2015 and Additional Appearance by Attorney Smith, respectively. This Response brief refers to Attorney Smith and Attorney Anderson as "Defendants' counsel" at times throughout.

3.      On February 12, 2018, Defendants' counsel circumvented Plaintiff's counsel and filed a Subpoena in a Civil Case with Hennepin County, State of Minnesota, (the "Subpoena") requesting to review the original wet-ink Mortgage and Note on the loan being foreclosed on in this case. See Exhibit C, Notice of Filing and Subpoena in a Civil Case.

4.      Plaintiff's counsel received notice of the Subpoena only on February 20, 2018 when Attorney Smith electronically filed the Notice of Filing with the Subpoena with this Court. See Exhibit B, Notice of Filing. Plaintiff's counsel's office received the file-stamped Notice of Filing only on February 27, 2018, only three days prior to the stated deposition date in the Subpoena.

5.      In response to the Subpoena, on February 26, 2018, Plaintiff's counsel filed its Emergency Motion to Quash the Subpoena (the "First Emergency Motion") and noticed the date of hearing on the First Emergency Motion for March 1, 2018. See Emergency Motion to Quash Subpoena in a Civil Matter.

6.      Plaintiff noticed the hearing on the First Emergency Motion for March 1, 2018 because the case was scheduled for a mandatory status conference for that date. Defendants' counsel and Plaintiff's counsel were required to attend the status conference. See Exhibit D, Court Order of December 13, 2017.

7.      A clerk from the office of Plaintiff's counsel additionally telephoned Judge Peterson's law clerk and received permission from her to schedule the First Emergency Motion

for hearing on March 1, 2018. This date was convenient for the parties and approaching soon enough to address the Subpoena.

8.      Thereafter, Plaintiff's counsel electronically filed the First Emergency Motion and corresponding Notice of Motion (the "Notice of Motion"), which triggered Odyssey.com and Judici.com to send notice to **all counsel** of record of the filings.

9.      Defendants' counsel, Attorney Smith, claims that he had no notice of the March 1, 2018 hearing date previously scheduled for status; that he received no notice of the filing of the First Emergency Motion; that he had knowledge that the First Emergency Motion was scheduled for hearing on March 1, 2018; and that the minor computer-generated technical error in the Notice of Motion are sufficient grounds for sanctions.

10.     Not only are the above representations patently false they are a continuance of a slew of misrepresentations by Defendants' counsel that this Court should take serious note of in this matter.

11.     Attorney Smith received electronic notice of Plaintiff's filing of the First Emergency Motion and the Notice of Motion, scheduling the Motion for the March 1, 2018 hearing date. Attorney Smith, by his own admission, is a registered user of e-filing for Grundy County, and was a registered user of e-filing for Grundy County at all relevant times. See Exhibit D, Email Correspondence from John Smith, dated 2/20/18. Per Gundy County Clerk's Office, pleadings may be filed electronically *only* as of January 1, 2018 and Attorney Smith is required to electronically file his pleadings in this case.

12.     Attorney Smith additionally received electronic notice of Plaintiff's filing of the First Emergency Motion and the Notice of Motion from Judici.com. Upon information and belief, Attorney Smith is also registered with Judici.com, has subscribed to this case on

Judici.com, and receives automatic notifications immediately following the filing of any
pleading with Grundy County's Clerk.

13.     The History Statement from Judici.com references Plaintiff's filing of the First
Emergency Motion and the Notice of Motion –

| 02/26/2018 | NOTICE OF MOTION SET FOR 3-1-18 AT 9:00 A.M. PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' SUBPOENA IN A CIVIL CASE FILED. NOTICE OF FILING FILED. |

See Exhibit E, Judici.com, Grundy County, Illinois, History Page.

14.     Attorney Smith had notice of the March 1, 2018 hearing for the additional reason
that his co-counsel Attorney Anderson, co-counsel to Attorney Smith, received the Notice of
Motion that piggy-backed the First Emergency Motion onto the status hearing set on December
12, 2017.

15.     Attorney Smith cannot claim ignorance of the outcome of the March 1, 2018
hearing as his co-counsel Attorney Anderson was present at the hearing and stated, in open Court
and on the record, that all matters related to the Subpoena were resolved by the parties. See
Plaintiff's Second Emergency Motion to Quash Defendants' Subpoena in a Civil Case.
Defendants' counsel implied that the Subpoena was moot and this Court agreed.  See Exhibit F,
Court Order of March 1, 2018.

16.     Neither can Attorney Smith ignore the fact that he knew fully well prior to
traveling to Hennepin County, Minnesota, that the original wet-ink Mortgage and Note were in
the possession of Plaintiff's counsel, and not Plaintiff.

17.     Attorney Smith additionally had full notice that the Plaintiff was represented by
counsel when he filed the Subpoena and when he traveled to Hennepin County, Minnesota.

18.     Attorney Smith also knew that he was acting in defiance of the March 1, 2018 Court Order when he reviewed the documents requested in the Subpoena in Hennepin County, Minnesota.

19.     For unnecessary reasons, Defendants' counsel has subjected the Loughrans to unnecessary attorney fees in travelling to Hennepin County, Minnesota, and in engaging in frivolous motion practice.

20.     Plaintiff's Notice of Motion contains an unintentionally and undeliberate misplaced service address on Attorney Smith that landed in the caption of the Notice instead of on the service list.  The Notice of Motion was computer-generated and the misplaced addressed occurring because of a temporary software glitch.  Contrary to the Defendants' empty assertions, no cutting/pasting of the addresses was involved and there was certainly no attempt by Plaintiff's counsel to omit the Roscoe Address from the Notice of Motion.

21.     Contrary to the Defendants' allegations, 735 ILCS 5/1-109 does not apply here because Plaintiff's counsel had no reason to believe that Attorney Smith's service address would land outside of the service list but on the Notice of Motion.  Attorney Smith has additionally previously received mail at the Gunnison Address and the Notice of Motion and First Emergency Motion have not been returned by mail to Plaintiff's office.

22.     The service list does include, however, a prior address where Attorney Smith previously received service.[1]  Plaintiff received no returned mail on any mail sent to Attorney Smith.

---

[1] On February 26, 2018, Plaintiff's counsel had three different addresses in its computer records for Attorney Smith, as follows:

5062 Rockrose Court, Suite 4,
Roscoe, Illinois 61073

7101 West Gunnison, Post Office Box 56965

Page 5 of 8
11 CH 373

23.     It is also worth mentioning that besides the numerous addresses on file for Attorney Smith, he has also been on and of record in this case twice but has been actively defending it since he first appeared in November 2013.

24.     One year later, on or about November 4, 2013, attorney John P. Smith filed his substitute appearance for Defendants Daniel and Margaret Loughran.  On June 24, 2015, attorney John P. Smith withdrew as attorney of record and was substituted by attorney Edward Anderson in the matter.  See Exhibit G, Motion for Substitution of Attorney, and Order of June 24, 2015.  On or about June 5, 2017, attorney John P. Smith filed an additional appearance in the matter.  See Exhibit B.

25.     Although Attorney Smith previously withdrew, he has been actively representing the Defendants even after he withdrew from the case in June 2015.  On or about May 22, 2017, the Defendants sent the Notice of Motion, dated May 22, 2017, from a facsimile from the "Law Center", from number of 1-888-317-1738 (the "Notice of May 22, 2017").  See Exhibit H, Notice of Motion of May 22, 2017.  Upon information and belief, Attorney Anderson, who was of record at the time, has had a facsimile number of (815) 740-1546, and not 1-888-317-1738, at all relevant times.

26.     Attorney Smith had sent the Notice of May 22, 2017 to Plaintiff's Counsel.  See Exhibit H.  Attorney Smith was not attorney of record on May 22, 2017.

27.     Additionally worth mentioning is that Defendants misrepresent that they "… [keep] track of Plaintiff's attorneys' change of firm corporate name, address, or the like" in mailing notices to the Plaintiff.  See Motion for Sanctions.  Prior notices from the Defendants

---

Chicago, Illinois 60656

8770 West Bryn Mawr Avenue, Suite 1300-107
Chicago, Illinois 60631

sent to Plaintiff's counsel have been deficient. On or about May 22, 2017, Attorney Smith sent

the Notice of May 22, 2017 not to Plaintiff's counsel – McCalla Raymer Leibert Pierce, LLC –

but to ***Pierce & Associates*** (the "Notice of May 22, 2017"). See Exhibit H.

28.     Defendants' counsel – Attorney Smith and Attorney Anderson – had actual notice

of the filing of the First Emergency Motion and had actual notice of the court results of the

hearing on March 1, 2018 on the First Emergency Motion. Even prior to the filing of the

Subpoena, the Defendants had notice that Plaintiff's counsel had possession of the original wet-

ink documents and that may view the documents at the Chicago Office of Plaintiff's counsel. At

all relevant times, Attorneys Smith and Anderson have additionally had notice that Plaintiff is

represented by counsel in this case.

29.     The Defendants' Motion for Sanctions is brought in bad faith and must be denied

its entirety and with prejudice.

(this space left intentionally blank)

Wherefore, Plaintiff respectfully requests that this Honorable Court deny Defendants'

Motion for Sanctions with prejudice and additional relief as this Court deems just and equitable.

> Respectfully Submitted,
> US BANK NATIONAL ASSOCIATION, AS
> TRUSTEE FOR WELLS FARGO ASSET
> SECURITIES CORPORATION MORTGAGE
> PASS-THROUGH CERTIFICATES SERIES 2006-
> AR1

> /s/ Tena Andric
> Tena Andric
> Attorney for Plaintiff

Tena Andric
McCalla Raymer Leibert Pierce, LLC
Attorney for Plaintiff
1 N. Dearborn St. Suite 1200
Chicago, IL 60602
Ph. (312) 346-9088
File No. 9662-36976
Primary Email: Tena.Andric@mccalla.com
Secondary Email: pleadings@mccalla.com
ARDC# 6307647

Electronic mail (e-mail) notice may be sent to McCalla Raymer Leibert Pierce, LLC at
pleadings@mccalla.com.

**Pierce & Associates, P.C. and McCalla Raymer, LLC combined Firms to form the Firm
McCalla Raymer Pierce, LLC. McCalla Raymer Pierce, LLC and Hunt Leibert Jacobson
P.C. combined Firms to form the Firm McCalla Raymer Leibert Pierce, LLC.**

**This communication is from a debt collector.**

# EXHIBIT-A

IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT
GRUNDY COUNTY, ILLINOIS

NO. 11 CH 373

U.S. Bank NA,

_Plaintff_,

vs.

Daniel Loughran, etal,

_Defendants_.

## ORDER

_____ NO ONE APPEARED      _____ DEFENDANT DID NOT APPEAR
__X__ PLAINTIFF APPEARED      _____ PLAINTIFF DID NOT APPEAR
    __X__ BY ATTY _____ IN PERSON
__X__ DEFENDANT APPEARED      _____ SUMMONS
    __X__ BY ATTY _____ IN PERSON      _____ CITATION
_____ NO SERVICE RETURN      _____ RULE
_____ SERVICE RETURN INDICATES "NOT FOUND"
_____ SERVICE RETURN INDICATES SERVICE

**ORDERED:**
__X__ CONTINUED TO _September 9, 2015_ at _9:00_ A.M. FOR:
    _____ DISMISSAL      _____ PRESENTATION OF ORDER
    __X__ STATUS      _____ OBTAINING COUNSEL
    _____ MOTION HEARING      _____ PROOF OF SERVICE
    _____ TRIAL      _____ ALIAS TO ISSUE
    _____ PRETRIAL      _____ CASE MANAGEMENT CONF.

_____ DISMISSED:
    _____ FOR WANT OF PROSECUTION
    _____ ON PLAINTIFF'S MOTION      _____ WITH PREJUDICE
    _____ PER STIPULATION      _____ WITHOUT PREJUDICE

_____ JUDGMENT FOR _____ PLAINTIFF(S) _____ DEFENDANT(S) IN THE
AMOUNT OF $ _____
    _____ PLUS COSTS, CURRENTLY TOTALLING $ _____
    _____ PLUS $ _____ IN ATTORNEY FEES, FOUND TO BE REASONABLE
AND NECESSARY AS TO TOTAL AMOUNT, HOURLY RATE, TIME SPENT AND WORK DONE

Miscellaneous orders: _Edward Anderson / Chuck Bretz v Assoc is granted leave to_
_substitute for John Smith as counsel of record for Defendants._

Drafted by: _Karl V Meyer of Pierce Associates_     DATED: _June 24, 2015_

ENTER: _____

# EXHIBIT-B

9662

### IN THE CIRCUIT COURT OF FOR THE THIRTEENTH JUDICIAL DISTRICT
### GRUNDY COUNTY – MORRIS, ILLINOIS

US BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR WELLS FARGO ASSET
SECURITIES CORPORATION MORTGAGE
PASS-THROUGH CERTIFICATES SERIES
2006-AR1

          Plaintiff

Case No.: 11 CH 373

DANIEL LOUGHRAN & MARGARET LOUGHRAN,
ET. AL.

          Defendants.

### APPEARANCE

I HEREBY ENTER MY ADDITIONAL APPEARANCE FOR

Daniel Loughran and Margaret Loughran, Defendants

SIGNED _John Smith_

JOHN P. SMITH

John P. Smith
ARDC # 6270654
Attorney for Defendants, Daniel Loughran
& Margaret Loughran
5062 Rockrose Court, Ste. 4
Roscoe, IL 61073
Ph: 847-242-8401

# EXHIBIT-C

IN THE CIRCUIT COURT OF FOR THE THIRTEENTH JUDICIAL DISTRICT
GRUNDY COUNTY – MORRIS, ILLINOIS

US BANK NATIONAL ASSOCIATION, AS )
TRUSTEE FOR WELLS FARGO ASSET )
SECURITIES CORPORATION MORTGAGE )
PASS-THROUGH CERTIFICATES SERIES )
2006-AR1 )
)
)
Plaintiff, )
)
v. ) Case No.: 11 CH 373
)
DANIEL LOUGHRAN & MARGARET LOUGHRAN, )
ET, AL. )
)
)
Defendants. )

## NOTICE OF FILING

To: McCalla Raymer Pierce    Mayer Brown LLP        Edward Anderson
One North Dearborn,          71 South Wacker Drive   Chuck Bretz & Associates
Suite 1200                   Chicago, IL 60606       58 N. Chicago Street
Chicago, IL 60602            Fax: (312)701-7711      2nd Floor
Fax: (312)551-4400                                   Joliet, IL 60432
                                                     Fax: (815)740-1546

Please take notice that on February 20, 2018, I mailed to be filed with the Clerk of the
Circuit Court of Grundy County, Illinois, a copy of Subpoena to Wells Fargo Bank N.A., copies
of which are attached and served upon you.

Respectfully submitted,

John P. Smith
Plaintiff's Attorney

## PROOF OF SERVICE

I certify, under penalties as provided by law pursuant to 735 ILCS 5/1-109, that I served
this notice, and all attached copies, by mailing a copy to the above-listed attorney(s) at the
address indicated by depositing a copy of same in the U.S. Mail in Chicago, Illinois before the
hour of 5:00 p.m. on February 20, 2018, with proper postage prepaid, and that this statement as
set forth is true and correct.

_John P. Smith_

John P. Smith

Law Offices of John P. Smith
5062 Rockrose Court, Ste. 4
Roscoe, IL 61073
Ph: 847-242-8401

| State of Minnesota | | District Court |
| County of Hennepin | | |

| | | |
| --- | --- | --- |
| | Judicial District: | Fourth |
| | Court File Number: | |
| | Case Type: | |

U.S. Bank N.A.
Plaintiff / Petitioner

Grundy County, Illinois Case No. 2oll cH 373

and

SUBPOENA IN A CIVIL CASE
(COMMAND TO APPEAR)
Minn. R. Civ. Pro. 45

Daniel Loughran & Margaret Loughran
Defendant / Respondent

TO:

Wells Fargo Bank N.A. Document Custody Dept. 751 Kasota Ave. SE Flor 1
Name                                    Address                    Minneapolis, MN 55414-2842

☐ You are commanded to appear as a witness in the district court to give testimony at the place, date, and time specified below.

| Place of Testimony | Courtroom |
| --- | --- |
| | Date and Time |

☑ You are commanded to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| Place of Deposition | Date and Time |
| --- | --- |

☒ You are commanded to produce and permit inspection and copying of the listed documents or objects at the place, date and time specified below (attach list of documents or objects if necessary):

| Place: 222 South Ninth Street Ste 450 Minneapolis MN 55402 | Date and Time: MARCH 2, 2018 / 2:00 PM |
| --- | --- |

☐ You are commanded to permit inspection of the following premises at the date and time specified below.

| Premises | Date and Time |
| --- | --- |

Person requesting subpoena: John P. Smith (IL Attorney # 6270884)

Telephone no.: (847) 242-8401

WARNING: FAILURE TO OBEY A SUBPOENA WITHOUT BEING EXCUSED IS A CONTEMPT OF COURT.

| Sarah Lindahl-Pfieffer | 5-12-18 |
|---|---|
| Signature of Court Administrator / Plaintiff's Attorney / Defendant's Attorney (specify) | Date |
| *Mille Atkins* Sr. court clerk | |
| Name, Address and Phone Number (if issued by Attorney as an Officer of the Court) | SEAL (if issued by Court Administration) |

IMPORTANT: Both pages of this document must be served on the person receiving the summons.

## RETURN OF SERVICE

State of Minnesota          )
                            ) SS
County of _____   )

I hereby certify and return that on _____ I served a copy of this subpoena upon the person named thereon. Service was made by:

☐  personally handing to and leaving with him or her a true and correct copy; or

☐  leaving a true and correct copy at his or her usual place of residence.

_____
Address

with _____ a person of suitable age and
                        Name of Person
discretion.

I declare under penalty of perjury that everything I have stated in this document is true and correct. Minn. Stat. § 358.116.

Date _____          Signature _____
                                      Printed Name: _____
                                      Title, if any: _____
                                      Address: _____
                                      City/State/Zip: _____
                                      Telephone: _____
                                      E-mail Address: _____

CIV101    State    ENG    Rev.07/15    www.mncourts.gov/forms    Page 2 of 3

<u>List of Documents to be Produced Pursuant To Subpoena Attached</u>

1.    The **original** Mortgage Note signed with moist ink by Daniel Loughran and Margaret Loughran, from the Custodial File for Wells Fargo Mortgage Loan Trust (Mortgage Pass-Through Securities), Series 2006-AR1;

2.    The **original** recorded Mortgage signed with moist ink by Daniel Loughran and Margaret Loughran, from the Custodial File for Wells Fargo Mortgage Loan Trust (Mortgage Pass-Through Securities), Series 2006-AR1;

3.    The **original** Assignment of Mortgage signed with moist ink by assignor, from the Custodial File for Wells Fargo Mortgage Loan Trust, Series 2006-AR1.

Case Name, Court, and Case Number:

U.S. Bank N.A. as Trustee v. Daniel Loughran & Margaret Loughran, Grundy County, Illinois, Case Number 2011CH373)

# EXHIBIT-D

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**

**GRUNDY COUNTY, ILLINOIS**

**NO.**

U.S. Bank

vs.

Loughran

**ORDER**

This matter coming to be heard on Defendant's motion to Compel Pooling & Servicing Agreement, all parties of record having notice, the court being advised on the premises, it is hereby ordered: Defendant's motion to compel is hereby granted based on the relevance of the PSA may have on the "TAMI's" affirmative defense. Plaintiff shall provide Defendants a copy of the PSA within 45 days. Cause continued for status to March 1, 2018 at 9:00 Am.

DATE 12/13/17

JUDGE

# EXHIBIT-E

# Grundy County, IL

NOTICE: By clicking the 'Search' button below, or otherwise using the Judici.com website, you are agreeing to abide by its **terms of use**.

My Cases | Schedule | Filings | Account                                    Login
2011CH373 LOUGHRAN, DANIEL F          Last Search | Information | Dispositions | History | Payments | Fines & Fees

| Date | Entry | Judge |
|---|---|---|
| | Entered Under: LOUGHRAN, DANIEL F | |
| 04/20/2018 | Review set for 06/08/2018 at 8:00 in courtroom E. Motion hearing set for 06/15/2018 at 9:30 in courtroom E. | UNASSIGNED |
| 04/20/2018 | ATTY MATT WARNER PRESENT FOR PLTF. ATTY EDWARD ANDERSON PRESENT FOR DFDT. CAUSE COMES ON FOR MOTION FOR LEAVE TO FILE. ORDER ENTERED SETTING SCHEDULE AND SETTING MOTION FOR HEARING ON PREVIOUSLY SET DATE OF 6/15/18 AT 9:30. COURTESY COPIES TO THE COURT ONE WEEK PRIOR. SSO | LRP |
| 04/16/2018 | Payment of $106.25 posted on 04/16/2018. NOTICE OF FILING FILED. | UNASSIGNED |
| 04/13/2018 | Payment of $100.00 posted on 04/13/2018. THIRD PARTY COMPLAINT FILED. | UNASSIGNED |
| 04/12/2018 | NOTICE OF MOTION SET FOR 4-20-018 AT 9:00 A.M. MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT FILED. $100.00 PD JURY DEMAND OF 6 JURORS FILED. $106.25 PD NOTICE OF FILING FILED. | UNASSIGNED |
| 03/29/2018 | Motion hearing set for 06/15/2018 at 9:30 in courtroom E. | UNASSIGNED |
| 03/29/2018 | ATTY PRESENT FOR PLTF. ATTY EDWARD ANDERSON PRESENT FOR DFDT. CAUSE COMES ON FOR MOTION HEARING. STATUS SET FOR 5/3/18 IS STRICKEN. AGREED ORDER ENTERED AND HEARING SET FOR 6/15/18 AT 9:30. SSO | LRP |
| 03/23/2018 | RE-AMENDED RE-NOTICE OF MOTION SET FOR 3-29-18 AT 9:00 A.M. | UNASSIGNED |
| 03/22/2018 | NO PARTIES APPEARING AND NO PLEADINGS/NOTICE FILED, NO ACTION TAKEN. | LRP |
| 03/21/2018 | PLAINTIFF'S SECOND EMERGENCY MOTION TO QUASH DEFENDANTS' SUBPOENA IN A CIVIL CASE FILED. NOTICE OF MOTION SET FOR 3-29-18 AT 9:00 A.M. NOTICE OF FILING FILED. | UNASSIGNED |
| 03/14/2018 | AMENDED NOTICE OF MOTION SET FOR 4-6-18 AT 9:00 A.M. DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO SECTION 1-109 OF THE CODE OF CIVIL PROCEDURE AND SUPREME COURT RULES 137 AND 219(C) AGAINST U.S. BANK, N.A. AND MCCALLA RAYMER LIEBERT PIERCE FILED. | UNASSIGNED |
| 03/05/2018 | NOTICE OF FILING FILED. | UNASSIGNED |
| 03/01/2018 | Status hearing set for 05/03/2018 at 9:00 in courtroom E. | UNASSIGNED |
| 03/01/2018 | ATTY JERRY JUSTICE PRESENT ON BEHALF OF PLTF'S ATTORNEY. ATTY NEIL PATEL PRESENT FOR DFDT. CAUSE COMES ON FOR STATUS AND PLTF'S EMERGENCY MOTION. ORDER ENTERED THAT MATTER IS CONTINUED FOR STATUS. SSO | LRP |
| 02/26/2018 | NOTICE OF MOTION SET FOR 3-1-18 AT 9:00 A.M. PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' SUBPOENA IN A CIVIL CASE FILED. NOTICE OF FILING FILED. | UNASSIGNED |
| 02/22/2018 | NOTICE OF FILING FILED. AMENDED AFFIDAVIT REGARDING ATTORNEYS FEES FILED. AMENDED AFFIDAVIT AS TO MILITARY SERVICE FILED. AMENDED ATTORNEY AFFIDAVIT FILED. | UNASSIGNED |
| 02/20/2018 | NOTICE OF FILING FILED. | UNASSIGNED |
| 12/13/2017 | Status hearing set for 03/01/2018 at 9:00 in courtroom E. | UNASSIGNED |
| 12/13/2017 | ATTY RASCOPF PRESENT FOR PLTF. ATTY SMITH PRESENT FOR DFDT. CAUSE COMES ON FOR HEARING ON MOTION TO COMPEL. ARGUMENTS HEARD. COURT MAKES FINDINGS. MOTION GRANTED. SSO | LRP |
| 12/06/2017 | NOTICE OF FILING FILED. DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES FILED. | UNASSIGNED |
| 11/27/2017 | NOTICE OF FILING FILED. RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FILED. | UNASSIGNED |
| 11/22/2017 | Motion/compel reset to 12/13/2017 at 9:30 in courtroom E. | UNASSIGNED |
| 11/22/2017 | ATTY WALLIN PRESENT FOR PLTF. ATTY ANDERSON PRESENT FOR DFDT. CAUSE COMES ON FOR STATUS. ORDER ENTERED THAT HEARING DATE OF 12/6/17 IS STRICKEN; SCHEDULE SET AND HEARING ON DFDT'S MOTION TO COMPEL SET FOR 12/13/17 AT 9:30. SSO | LRP |
| 10/30/2017 | PLTF NOT PRESENT. ATTY ANDERSON PRESENT FOR DFDT. CAUSE COMES ON FOR MOTION HEARING. AGREED ORDER ENTERED SETTING BRIEFING AND HEARING ON MOTION TO COMPEL. SSO | LRP |
| 10/20/2017 | RE-NOTICE OF MOTION SET FOR 10-30-17 AT 9:00 A.M. | UNASSIGNED |
| 10/11/2017 | NOTICE OF MOTION SET FOR 10-11-17 AT 9:00 A.M. THIRD-PARTY PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES FILED. NOTICE OF MOTION SET FOR 10-11-17 AT 9:00 A.M. DEFENDANTS' MOTION PURSUANT TO 616 OF THE ILLINOIS CODE OF CIVIL PROCEDURE (735 ILCS 5/2-616) FOR LEAVE TO FILE AMENDED ANSWER & AFFIRMATIVE DEFENSE FILED. | UNASSIGNED |
| 10/11/2017 | ATTY FULLER PRESENT FOR PLTF. ATTY ANDERSON PRESENT FOR DFDTS. CAUSE COMES ON FOR MOTION HEARING. ORDER ENTERED SETTING STATUS. SSO Status hearing set for 11/22/2017 at 09:00 in courtroom E. | LRP |
| 09/20/2017 | NOTICE OF MOTION SET FOR 10-11-17 AT 9:00 A.M. NOTICE OF FILING FILED. AFFIDAVIT AS TO MILITARY SERVICE FILED. ATTORNEY AFFIDAVIT FILED. AFFIDAVIT REGARDING ATTORNEYS FEES FILED. PLAINTIFF'S MOTION TO SUBSTITUTE ATTORNEY FILED. MOTION FOR JUDGMENT FOR FORECLOSURE AND SALE FILED. CERTIFICATE FILED. MOTION TO APPOINT SELLING OFFICER FILED. MOTION FOR ORDER OF DEFAULT FILED. MOTION TO DISMISS PARTY DEFENDANTS FILED. | UNASSIGNED |
| 08/09/2017 | Status hearing set for 10/11/2017 at 9:00 in courtroom E. | UNASSIGNED |

# EXHIBIT-F

IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT
GRUNDY COUNTY, ILLINOIS

NO. 11 CH 373

US Bank,

_____,

vs.

Lauchin Clad

_____.

## ORDER

_____ NO ONE APPEARED

__X__ PLAINTIFF APPEARED

__X__ BY ATTY _____ IN PERSON

__X__ DEFENDANT APPEARED

__X__ BY ATTY _____ IN PERSON

_____ NO SERVICE RETURN

_____ SERVICE RETURN INDICATES "NOT FOUND"

_____ SERVICE RETURN INDICATES SERVICE

_____ DEFENDANT DID NOT APPEAR

__X__ PLAINTIFF DID NOT APPEAR

_____ SUMMONS

_____ CITATION

_____ RULE

**ORDERED:**

__X__ CONTINUED TO __5/3/18_____ at __9:00 am__ .M. FOR:

_____ DISMISSAL

__X__ STATUS

_____ MOTION HEARING

_____ TRIAL

_____ PRETRIAL

_____ PRESENTATION OF ORDER

_____ OBTAINING COUNSEL

_____ PROOF OF SERVICE

_____ ALIAS TO ISSUE

_____ CASE MANAGEMENT CONF.

_____ DISMISSED:

_____ FOR WANT OF PROSECUTION

_____ ON PLAINTIFF'S MOTION

_____ PER STIPULATION

_____ WITH PREJUDICE

_____ WITHOUT PREJUDICE

_____ JUDGMENT FOR _____ PLAINTIFF(S) _____ DEFENDANT(S) IN THE
AMOUNT OF $ _____
_____ PLUS COSTS, CURRENTLY TOTALLING $ _____
_____ PLUS $ _____ IN ATTORNEY FEES, FOUND TO BE REASONABLE
AND NECESSARY AS TO TOTAL AMOUNT, HOURLY RATE, TIME SPENT AND WORK DONE

Miscellaneous orders: _____

_____

Drafted by: _____

DATED: __03/__/18__

ENTER: _____

J U D G E

# EXHIBIT-G

STATE OF ILLINOIS )
                   ) SS.
COUNTY OF GRUNDY )

## IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT GRUNDY COUNTY, MORRIS, ILLINOIS

US BANK, NA )
            )
      Plaintiff, )
            )            CASE NO. 11 CH 373
   vs.      )
            )
DANIEL LOUGHRAN ET AL., )
      Defendants )

This Is A True Copy Of An Original
Filed Herein On

JUN 2 4 2015

KAREN E. SLATTERY, Circuit Clerk

### MOTION FOR SUBSTITUTION OF ATTORNEY

NOW COMES the Law Firm of Chuck Bretz & Associates, P.C., and respectfully requests this Honorable Court for leave to substitute as attorneys of record for Daniel Loughran and Margaret Loughran in the above captioned cause.

_____
Chuck Bretz & Associates, P.C.
Attorneys for Defendant

### MOTION TO WITHDRAW

NOW COMES John Smith, and respectfully requests this Honorable Court for leave to withdraw as attorney of record for Daniel Loughran and Margaret Loughran in the above captioned cause.

_____  5/9/15
John Smith

Edward T. Anderson
Chuck Bretz & Associates, P.C.
58 N. Chicago Street, 2nd Floor
Joliet, Illinois 60432
(815) 740-1545
ARDC No. 6187896

# EXHIBIT-H

# FAX COVER SHEET

| TO | Pierce &amp; Associates |
|---|---|
| COMPANY | |
| FAXNUMBER | 13125514400 |
| FROM | LawCenter |
| DATE | 2017-05-22 17:12:11 GMT |
| RE | Motion May 24, 2017 (US Bank v Loughran) |

## COVER MESSAGE

Please find motion to follow.

IN THE CIRCUIT COURT OF FOR THE THIRTEENTH JUDICIAL DISTRICT
GRUNDY COUNTY – MORRIS, ILLINOIS

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR1 | ) ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.:  11 CH 373 ) |
| DANIEL LOUGHRAN & MARGARET LOUGHRAN, ET. AL. | ) ) ) |
| Defendants. | ) ) |

## NOTICE OF MOTION

To:  Pierce & Associates    Mayer Brown LLP
     One North Dearborn,    71 South Wacker Drive
     Thirteenth Floor       Chicago, IL  60606
     Chicago, IL  60602     Fax: (312)701-7711
     Fax: (312)551-4400

PLEASE TAKE NOTICE that on **May 24, 2017** at **9:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before Judge John Peterson, or another judge acting in his stead, of the Circuit Court of Grundy County, in the room ordinarily occupied by the judge at 111 East Washington Street, Morris, Illinois, and shall then and there present **DEFENDANTS' MOTION, PURSUANT TO SUPREME COURT RULE 183 FOR GOOD CAUSE SHOWN, FOR EXTENSION OF TIME TO FILE RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** a copy of which is attached hereto.

Respectfully submitted,

Edward Anderson
Defendants' Attorney

Edward Anderson
Chuck Bretz & Associates

58 N. Chicago Street
2nd Floor
Joliet, IL 60432

## PROOF OF SERVICE

  John P. Smith certifies, under penalties as provided by law pursuant to 735 ILCS 5/1-109, that he served this notice by **faxing** and **personally serving** a copy to the above-listed attorney at the address and fax number indicated on May 22, 2017, before the close of business or before 5:00 p.m., and that this statement as set forth is true and correct.

_John P. Smith_

Edward Anderson
Chuck Bretz & Associates
58 N. Chicago Street
2nd Floor
Joliet, IL 60432

# EXHIBIT 4

*Of Class Action*
*Loughran v Wells Fargo et. al.*
*N.D. Ill – Filed June 14, 2019*

IN THE CIRCUIT COURT OF FOR THE THIRTEENTH JUDICIAL DISTRICT
GRUNDY COUNTY – MORRIS, ILLINOIS

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR1 | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.:  11 CH 373 ) |
| DANIEL LOUGHRAN & MARGARET LOUGHRAN, ET. AL. | ) ) ) |
| Defendants. | ) ) |

**Defendants' Reply to the Plaintiff's Response to Defendants' motion for sanctions pursuant to Section 1-109 and Supreme Court Rules 137 and 219(c) against U.S. Bank, N.A. and McCalla Raymer Liebert Pierce**

**NOW COME** the Defendants, DANIEL LOUGHRAN & MARGARET LOUGHRAN, by and through their attorneys, Law Office of John Smith and Chuck Bretz & Associates, and, in reply to the Plaintiff's Response to Defendants' Motion for Sanctions pursuant to Section 1-109 and Supreme Court Rules 137 and 219(c) against U.S. Bank N.A. and McCalla Raymer Liebert Pierce ("Loughrans' Motion for Sanctions"), state as follows:

1.      Plaintiff's Response to the Loughrans' Motion for Sanctions ignores the Loughrans' motion for sanctions for violations of Supreme Court Rules 137 and 219(c) and is thereby conceded and the Loughrans' motion for said violations should be granted including:

I.      Enter an appropriate sanction on the Plaintiff and its attorneys pursuant to Supreme Court Rule 219(c)(iv) striking the portion of Plaintiff's complaint stating that U.S. Bank has possession of the note and dismiss the case;

- 1 -

II.     Enter an appropriate sanction pursuant to Supreme Court Rule 137 for all of the Defendants' attorneys' fees and costs in having to defend this lawsuit;

III.    Enter a sanction pursuant to Supreme Court Rule 219(c) for attorneys fees and costs and a monetary penalty for willful violation of the rules (including Rule 201(c)(2), Rule 201(k), Rule 204(a)(2).

2.      Plaintiff's Response focuses solely on the Loughrans' motion for sanctions for violation of §1-109 of the Code of Civil Procedure (§1-109) and then attributes its attorney's violation of §1-109 to a "minor computer-generated technical error" and then proceeds with a series of verifiably false ad-hominem attacks on the Defendants' attorney, John Smith.

3.      Before refuting each false accusation (lie) one-by-one, it would be enlightening, perhaps, for the court and anyone else reading this to understand what they are witnessing.

4.      In his book, *People of the Lie*, a follow-up to his best seller *The Road Less Traveled*, the author, M. Scott Peck, an M.D. in psychiatry, states: "Lies confuse. The evil are 'the people of the lie,' deceiving others as they also build layer upon layer of self-deception."[1] He further states: "A predominant characteristic, however, of the behavior of those I call evil is scapegoating. Because in their hearts they consider themselves above reproach, they must lash out at anyone who does reproach them. They sacrifice others to preserve their self-image of perfection."[2]

5.      After refuting each false accusation one-by-one, the court should grant the Loughrans' motion for sanctions and, in addition to the conceded violations of Supreme Court Rules 137 and 219(c), find the Plaintiff's attorney, Tena Andric, guilty of violating §1-109 because, left unchecked, her behavior will continue.  As M. Scott Peck, in *People of the Lie* states:

I have learned nothing in twenty years that would suggest that evil people

---

[1] Peck, M. Scott, M.D., *People of the Lie*, New York: Simon & Schuster, 1983. Print. Page 66.
[2] Id., Page 72.

can be influenced by any means other than raw power. They do not
respond, at least in the short run, to either gentle kindness or any form of
spiritual persuasion with which I am familiar.[3]

6.     Now the Loughrans' attorney will proceed to refute every false accusation made against

him which is something they don't prepare you for in law school.  Also, since Plaintiff filed its

"Second Emergency Motion to Quash the Subpoena" in response to Loughrans' Motion for

Sanctions, the Loughrans' Response to the Plaintiff's "Second Emergency Motion to Quash the

Subpoena" is hereby incorporated into this Reply by reference as though specifically set forth

herein for the sake of judicial economy and time efficiency.

7.     Just prior to refuting every false accusation, however, it should be noted at the outset that

Plaintiff's counsel violates Supreme Court Rule 12 in her proof of service by failing to verify her

proof of service pursuant to section 1-109.  "Where a proof of mailing contains nothing that is

certified or sworn to, it is "simply insufficient" under Rule 12(b)."  *Howard v. John Doe*, 2016 IL

App (3d) 150346-U, ¶14 (quoting *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232

Ill.2d 209, 216 (2009)).

8.     Also, Plaintiff cites to eight (8) exhibits A-H which she didn't serve upon the Defendants.

Predictably she will deny this and claim Odyssey.com or Judici.com sent them to us, or that she

served them upon Ed Anderson, when she did not.  Though tiresome, the undersigned attaches as

Exhibit A, an email to and from Ed Anderson confirming that no exhibits were served upon

Defendants and a copy of the letter sized envelope from Plaintiff dated April 26, 2018, which

was used to deliver the Plaintiff's Response to Motion for Sanctions and the undersigned signs

this pleading subject to Rule 137 (by operation of law).  See Exhibit B, a copy of letter-sized

---

[3] Id., Page 68.

envelope post-marked April 26, 2018, attached hereto.

9.      Furthermore, Plaintiff's Notice of Filing includes the undersigned's fax number and, for the record, the undersigned did not receive a fax with Plaintiff's Response to Defendants' Motion for Sanctions.  Therefore, without the exhibits referenced therein, Plaintiff's Response to Defendants' Motion for Sanctions should be stricken.  Otherwise, the Defendants will rely on the description of each exhibit (A-H) within Plaintiff's Response with the inability to see what the Plaintiff actually attached as the exhibit to Plaintiff's Response.  Yes, the exhibits are designated a description in Plaintiff's Response and are seemingly otherwise available to Defendants based on the designated description, but to what extent, if any, the exhibits attached by Plaintiff differ from their designated description is unknown at the time of this writing.

10.     Plaintiff's attorney then verifies, not her proof of service but, her statements set forth in Plaintiff's Response pursuant to section 1-109 (735 ILCS 5/1-109), even though Plaintiff's attorney's statements are already certified pursuant to Supreme Court Rule 137.  Nevertheless, Plaintiff's attorney has voluntarily subjected herself to the heightened penalties provided by section 1-109.

11.      At ¶8 of Plaintiff's Response, the Plaintiff's attorney states that she filed the First Emergency Motion on February 26, 2018, and corresponding Notice of Motion which "triggered Odyssey.com and Judici.com to send notice to **all counsel** of record of the filings."  (Emphasis in original.)  This is false.  Plaintiff's attorney has received electronic filings from the undersigned via Odyssey.com (or i2file.com) because the undersigned has entered her email address into the filing field for "courtesy copies"; however, the undersigned has **never** received an electronic filing via Odyssey.com or any other e-filing service used by the Grundy County Clerk (of which there are many) from Plaintiff's attorney.  See Odyssey.com Screenshot for electronic filing and

"courtesy copies" FIELD attached hereto as <u>Exhibit C</u>.   In other words, Tena Andric receives e-filings from me because I sent her courtesy copies by typing into the field "tena.andric@mccalla.com" (as wells as "eanderson@bretzlawoffice.com").[4]   This is in addition to sending them in accordance with Supreme Court Rule 12, either by email or postal service, as Plaintiff's Attorney McCalla Raymer Liebert Pierce (f/k/a Pierce & Associates) previous facsimile number no longer works.   However, Tena Andric has <u>never</u> sent me an e-filed document (pleading or otherwise) via Odyssey.com or any other e-filing service, not on or before February 26, 2018, or any time since.

12.     At ¶12 of Plaintiff's Response, the Plaintiff's attorney states that the undersigned received electronic notice of her filing of the First Emergency Motion and Notice of Motion from Judici.com.  She states, upon information and belief, that the undersigned has subscribed to this case on Judici.com and receives automatic notifications following the filing of any pleading with Grundy County's Clerk.  This is false.  The undersigned did not subscribe, nor was aware of any such "premium service" on judici.com website, until March 14, 2018.  See copy of Email from Judici.com confirming subscription on March 14, 2018, attached hereto as <u>Exhibit D</u>.

13.     Plaintiff's attorney would have known that the undersigned was not subscribed to judici.com on February 26, 2018, because she had received an email from the undersigned on October 4, 2017, informing her that she had used the wrong physical address and to discard the old physical address and update my current address for future notices.  See Defendants' Motion for Sanctions, Exhibit E, and accompanying text at ¶10.

---

[4] The emails for Plaintiff's other counsel of record, Mayer Brown LLP, keep coming back undeliverable.  Those emails that come back undeliverable are "cwoodworth@mayerbrown.com" and "akapai@mayerbrown.com."  Therefore, I have to send notices and pleadings to Mayer Brown LLP using facsimile.

14.     Since the Grundy County Court Clerk's website offers no less than eleven (11) Electronic

Filing Service Providers (EFSP), including but not limited to Odyssey.com, how would

Odyssey.com have the undersigned's email address for automatic service of filings unless the

attorney e-filing the document provided it to Odyssey.com?  Do all eleven (11) EFSP's have my

email address?  If not all, why Odyssey.com?  This is just another tiresome ridiculous false

accusation made by the Plaintiff's attorney to try to mask her own crime.[5]  See

http://efile.illinoiscourts.gov/service-providers.htm

15.     Plaintiff's Response then states that Attorney Smith's claim that he had no notice of the

March 1, 2018 emergency motion is "patently false" and "a continuance of a slew of

misrepresentations by Defendants' counsel that this Court should take serious note of in this

matter."

16.     So, Plaintiff's attorney is alerting the Court to a continuous slew of misrepresentations by

Defendants' counsel that this Court should take serious note of in this matter.  This "continuous

---

[5]  In *People of the Lie*, the author states:

    It is a sad state of affairs, but the fact of the matter is that the healthiest people –
the most honest, whose patterns of thinking are least distorted – are the very ones
easiest to treat with psychotherapy and most likely to benefit from it. Conversely,
the sicker the patients – the more dishonest in their behavior and distorted in their
thinking – the less able we are to help them with any degree of success.  When they
are very distorted and dishonest, it seems impossible. Among themselves therapists
will not infrequently refer to a patient's psychopathology as being "overwhelming."
We mean this literally.  **We literally feel overwhelmed by the labyrinthine mass
of lies and twisted motives and distorted communication into which we will be
drawn** if we attempt to work with such people in the intimate relationship of
psychotherapy.  We feel, usually quite accurately, that not only will we fail in our
attempts to pull them out of the morass of their sickness but that we may also be
pulled down into it ourselves. **We are too weak to help such patients – too blind
to see an end to the twisted corridors into which we will be led**, too small to
maintain our love in the face of their hatred.

Peck, M. Scott, M.D., *People of the Lie*, New York: Simon & Schuster, 1983. Print. Page 63-64.

slew" consists of my singular factual assertion that I had no notice of her emergency motion filed on February 26, 2018, and mailed to the wrong address.

17.     However, the Court is expected by Tena Andric to take judicial notice of the AI 'phantom menace" – i.e. "minor computer-generated technical error" – word processing program that Tena Andric uses to draft her first notice of emergency motion to quash the subpoena issued to Wells Fargo Bank, N.A., which, up to and including at that time, was not disclosed to be the Plaintiff or her client.

18.     By Plaintiff's own admission, electronic filing became mandatory on January 1, 2018.

19.     As proven by Exhibit D, attached hereto, the undersigned wasn't subscribed to Judici.com and didn't receive automatic alerts via email when something is filed in this case. Moreover, even after subscribing to automatic alerts on March 14, 2018, the undersigned does not receive the actual document filed.  The service subscribed to on March 14, 2018, doesn't provide a copy of the actual motion (or other document) filed.  That requires another subscription to "premium services" which costs $155.70 every six (6) months.  See copy of Jucici.com screenshot for Premium Services attached hereto as Exhibit E.

20.     The Illinois Supreme Court does not require Attorney Smith to subscribe to Judici.com premium services for $155.70 every six months. However, the Illinois Supreme Court requires Plaintiff's attorney, Tena Andric, to timely serve her pleadings upon all parties of record in accordance with Illinois Supreme Court Rule 12.  The Illinois Supreme Court has stated: "As we have often noted, 'our rules are not mere suggestions.' Indeed, they have the force of law and are to be construed in the same manner as statutes."  *In re Denzel W., a minor*, 237 Ill.2d 285, 291 (2010).

21.     So, Attorney Smith did not have notice, actual or otherwise, of the March 1, 2018,

emergency motion e-filed on February 26, 2018, by Plaintiff's counsel. Let the Court "take serious note." The undersigned did <u>not</u> have notice of the emergency motion on March 1, 2018, or any time prior. The undersigned did not have notice of the emergency motion on March 2, 2018, or any order entered on March 1, 2018. **Moreover, the March 1 order, which I received on March 5, 2018, courtesy of co-counsel, Ed Anderson, says nothing about the emergency motion!** (<u>See</u> copy of Mar 5 email from Ed Anderson, attached hereto as <u>Exhibit F</u>.) Nevertheless, Plaintiff's counsel – only after receiving Loughrans' Motion for Sanctions and alerting the Loughrans' attorneys for the first time via a "cease and desist" email that her client was Wells Fargo Bank, N.A. – keeps accusing the undersigned of travelling to the document production in Minneapolis, MN, in defiance of the March 1 order.[6]

---

[6]Actually, the lie is designed not so much to deceive others as to deceive themselves. They cannot or will not tolerate the pain of self-reproach. The decorum with which they lead their lives is maintained as a mirror in which they can see themselves reflected righteously. Yet the self-deceit would be unnecessary if the evil had no sense of right and wrong. We lie only when we are attempting to cover up something we know to be illicit. Some rudimentary form of conscience must precede the act of lying. There is no need to hide unless we first feel that something needs to be hidden.

…

The problem is not a defect of conscience but the effort to deny the conscience its due. We become evil by attempting to hide from ourselves. The wickedness of the evil is not committed directly, but indirectly as part of the cover-up process. Evil lies not in the absence of guilt but in the effort to escape it.

It often happens, then, that the evil may be recognized by its very disguise. The lie can be perceived before the misdeed it is designed to hide – the cover-up before the fact. We see the smile that hides the hatred, the smooth and oily manner that masks the fury, the velvet glove that covers the fist. Because they are such experts at disguise, it is seldom possible to pinpoint the maliciousness of the evil. The disguise is usually impenetrable.

…

In summary, to a greater or lesser degree, all mentally healthy individuals submit themselves to the demands of their own conscience. Not so the evil, however. In the conflict between their guilt and their will, it is the guilt that must go and the will that must win. The reader will be struck by the extraordinary willfulness of evil

22.     Next, at ¶16 of Plaintiff's Response, Plaintiff states Attorney Smith knew fully well prior to traveling to Hennepin County, Minnesota, that the original wet-ink mortgage and Note were in the possession of Plaintiff's counsel and not Plaintiff.

23.     The preceding accusation is amazing since it offers no factual evidence for its truth. Furthermore, this has been answered by the undersigned in Defendants' Response to Plaintiff's Second Emergency Motion to Quash the Subpoena.  The statement about my beliefs at the time that I drove all the way to Minneapolis for the document production is false.  Furthermore, upon information and belief, Plaintiff's attorney did not have possession of the original Note at that time. Wells Fargo Bank, N.A. produced copies on March 2, 2018, of the originals that were in its possession. Plaintiff's counsel never called me or emailed me or "snail" mailed me to inform me that she had possession of the original mortgage and Note.  She didn't bring the original Note to court on March 1, 2018, when her emergency motion to quash was, instead, presented by her local appearance counsel. Her emergency motion to quash doesn't say that the Plaintiff was Wells Fargo Bank, N.A. and, as a matter of fact, Plaintiff has produced three (3) affidavits of amounts due and owing all claiming that the original note was in the possession of U.S. Bank, N.A., the Plaintiff. But now she claims that Wells Fargo Bank, N.A. is the Plaintiff, not U.S. Bank, N.A.

24.     As stated in Defendants' Motion for sanctions, Plaintiff's attorney would try to use the undersigned's previous address as "plausible deniability" even though the undersigned was substituted by Chuck Bretz & Associates thirty (30) months prior to February 26, 2018, and the

---

    people. They are men and women of obviously strong will, determined to have their own way. There is a remarkable power in the manner in which they attempt to control others.

Id., Page 75-78.

undersigned had specifically told Tena Andric in an email on October 4, 2017, to discard the old address and not use it any longer.

25.     Tena Andric states at ¶22 "Plaintiff received no returned mail on any mail sent to Attorney Smith." First, the obvious question would be why would her office be sending mail to me when I was no longer an attorney of record.  Then the next question would be why send me mail to an old address after I filed an additional appearance with a new address. The next question would be why send me mail to an old address after she was notified directly on October 4, 2017, not to do so.

26.     The final straw is the fact that the court record/history online at judici.com states the following:

(i) On 6-24-2015, Attorney Smith withdrew when he was substituted by Chuck Bretz & Associates;

(ii) On 9-9-2015, it states: "ORDERED THAT PLTF'S ATTORNEY REPORTS IT IS INVESTIGATING A POTENTIAL SERVICE ISSUE."

(iii) On 12-23-2015, six months after the undersigned was withdrawn and substituted by Chuck Bretz & Associates, it states: "NOTICE SENT TO JOHN P SMITH RETURNED AND FILED, UNABLE TO FORWARD."

(See Screenshot of online court history for 12-23-2015, attached hereto as Exhibit G.)

27.     So, the mail from the court was returned by the postal service as undeliverable on December 23, 2015, but Tena Andric tells the court that, while it was a "minor computer-generated technical error" that caused the emergency motion on February 26, 2018, to be mailed to the wrong address, it's either Attorney Smith's fault for having a prior address, or it's the postal service's fault for not returning the undeliverable mail even though we have evidence in

the court history of mail returned by the post office from Attorney Smith's old address on December 23, 2015.

28.     The Court should remain mindful of Tena Andric's admonishment to "take serious note of such a continuance of a slew of misrepresentations."

29.     Next at ¶23, Plaintiff's counsel states under penalties of perjury the following:

> Although Attorney Smith previously withdrew, he has been actively representing the Defendants even after he withdrew from the case in June 2015." On or about May 22, 2017, **[23 months later]** the Defendants sent the Notice of Motion, dated May 22, 2017, from a facsimile from the "Law Center", from number of 1-888-317-1738 (the "Notice of May 22, 2017"). See Exhibit H, Notice of Motion of May 22, 2017. Upon information and belief, Attorney Anderson, who was of record at the time, has had a facsimile number of (815)740-1546, and not 1-888-317-1738, at all relevant times.

(Emphasis added.)

30.     She then states that "Attorney Smith was not attorney of record on May 22, 2017.

31.     The Notice of Motion proof of service is signed by John Smith and verified that I served the Plaintiff's attorney both **by faxing and personally serving** the Plaintiff at One North Dearborn, Thirteenth Floor, Chicago, Illinois. I distinctly remember personally serving this because the other counsel of record, Mayer Brown LLP – unlike McCalla Raymer Liebert Pierce (f/k/a Pierce & Associates) – would not let me personally serve it because the attorneys (Charles Woodworth and Amrit Kapai) I had names for no longer worked there and I was only able to serve Mayer Brown via facsimile. The motion is signed by co-counsel Ed Anderson, the attorney of record. The proof of service is signed my me. It was sent via myfax.com. I filed my additional appearance June 7, 2017 – two (2) weeks later. See copy of Notice of Emergency Motion, faxed and personally served by the undersigned, attached hereto as Exhibit H.

32.     So Plaintiff's Attorney states that I was actively defending this case after I withdrew. In

the two (2) years – between June 24, 2015 and June 7, 2017 – that I was no longer the attorney of record because I withdrew and mailed the physical paper file to the Loughrans, there were no pleadings filed by the Defendants and there were only three (3) appearances in court by the Defendants. Nevertheless, Tena Andric, the super sleuth, was able to ascertain under penalties of perjury that the undersigned was actively defending this case and his withdrawal was a ruse.  She would have the Court believe that Tena Andric and the Plaintiff aren't committing fraud upon the Court, it's Attorney Smith!  **PLEASE SEE** copies of email between the undersigned and Defendant, Daniel Loughran (not waiving the Attorney-Client privilege), dated March 25, 2015, through April 6, 2015, five (5) pages total, attached hereto as Exhibit I.

33.    The Court should remain mindful of Tena Andric's admonishment to "take serious note of such a continuance of a slew of misrepresentations."

34.    Moreover, the Loughrans' Motion for Sanctions insofar as it relates to violations of section 1-109 is supported by the factual basis that Plaintiff's attorney, Tena Andric, sent an "emergency" motion via "snail mail" to the Loughrans' attorney, John Smith, at the wrong address intentionally with knowledge but verified that she served John Smith.  But now, Plaintiff's attorney is attempting to demonize the undersigned for *personally serving and faxing* a motion on May 22, 2017, two (2) days prior to the May 24, 2017, motion, even though she "snail" mailed a motion she designated an "emergency" just three (3) days prior via United States Postal Service (U.S.P.S.) to *the wrong address* when Supreme Court Rule 12 requires 4 days advance mailing via U.S.P.S. to be timely.

35.    At ¶27, Plaintiff's attorney states that Attorney Smith misrepresents that I "[keep] track of Plaintiff's attorneys' change of firm corporate name, address, or the like" in mailing notices to the Plaintiff.  She states, "Prior notices from the Defendants sent to Plaintiff's counsel have been

deficient." Her basis for this alleged deficiency is that the aforementioned May 22, 2017, Defendants' Notice of Motion was sent to "Pierce & Associates" when admittedly "Attorney Smith was not attorney of record on May 22, 2017." See July 26, 2017, email from John Smith to Ed Anderson (without waiving attorney work product doctrine privilege) inquiring if McCalla Raymer Liebert Pierce was attorney of record, attached hereto as Exhibit J.

36. The Court history online for this case reveals that there was a notice of change of firm name and address filed on 2/23/2017. So, three (3) months later on May 22, 2017, Attorney Smith not only faxed but personally served the Plaintiff's attorney a notice of motion at its physical address (One North Dearborn, Chicago, Illinois). And Plaintiff's attorney admits she received the fax, but she claims this service was deficient because it was sent to "Pierce & Associates," rather than her firm's new name of McCalla Raymer Liebert & Pierce. Perhaps the receptionist forgot the former name of its employer when I personally served it and didn't know what to do. Perhaps the day Pierce & Associates decided to change its firm name through merger or otherwise, all mail to Pierce & Associates immediately stopped from all others but me and I am the only person who continued to send mail to the same law firm by its former name recently changed. Perhaps the world at large has constructive notice any time a law firm like Pierce & Associates changes modifies its corporate name due to merger with another law firm.

37. Plaintiff's attorney, nevertheless, at ¶19 states that Attorney Smith, not Plaintiff, is engaging in "frivolous motion practice," and at ¶10 admonishes the Court to take serious note of such a "continuance of a slew of misrepresentations."

38. Plaintiff's attorney's wild accusation of the undersigned's "actively representing the Defendants even after he withdrew from the case in June 2015" is evidence of her motive for deliberately sending the emergency motion to quash the subpoena to the wrong address, to-wit:

she knew that Attorney Smith was driving this litigation since no pleadings had been filed while I was no longer the attorney of record after June 24, 2015, and several pleadings were filed and discovery was initiated ***by me*** after I filed my additional appearance on June 7, 2017.

39.     The only admonishment I can give the Court is that it provide Plaintiff's attorney a mental fitness examination before ruling on her violations of section 1-109, which is a class 3 felony.

40.     In addition to her violation of §1-109 on February 26, 2018, which was the basis for the Loughrans' Motion for Sanctions, Plaintiff's Attorney, Tena Andric,  violated section 1-109 again in her response to this Motion for Sanctions by verifying her statements pursuant to section 1-109 and: (1) falsely stating I had notice of the March 1, 2018, emergency motion because I subscribed to judici.com, when I undeniably did not; (2) stating that I had notice of the March 1 2018 emergency motion because her e-filing triggered Odyssey.com to send notice to "all counsel," which it did not; (3) stating that I knew fully prior to travelling to Hennepin County, Minnesota, that the original wet-ink Mortgage and Note were in her possession, which I did not and, upon information and belief, which were not in her possession on March 2, 2018; (4) stating that I knew Plaintiff was represented by counsel while trying to assert that the Plaintiff is now Wells Fargo Bank, N.A., and not U.S. Bank N.A. as Trustee for the certificate holders – i.e., the investors – when this revelation is clearly fraud upon the court and an admission of the Loughrans' affirmative defense of lack of standing by U.S. Bank, N.A.; (5) stating that mail sent to my old address does not get returned by the post office when the court history clearly shows that it did as early as December 23, 2015; (6) stating that I have been actively defending this case after I withdrew from the case in June 2015 when I verifiably was not; (7) stating that my service of notice of motion on May 22, 2017, was deficient because it said "Pierce & Associates" when

clearly it was received by her law firm which only three months prior had filed a notice of change of firm name from Pierce & Associates to McCalla Raymer Liebert Pierce and the physical address (One North Dearborn) did not change and the facsimile number had not changed (she admittedly received it).

41.     As an affirmative defense, the Plaintiff's lack of standing is the Defendant's burden to plead and prove. *Deutsche Bank National Trust v. Iordanov*, 2016 IL App (1st) 152656, ¶34. The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit and assures that issues are raised only by those parties with a real interest in the outcome of the controversy. *Id.*

42.     Plaintiff wanted the Loughrans and the Court to take its word for it that U.S. Bank N.A. had standing to bring this foreclosure action and wants the Court to preclude the defendants from being able to prove their affirmative defense.

43.     Now, through the course of discovery and Plaintiff's admission, it has been revealed that the Plaintiff is Wells Fargo Bank, N.A. – not U.S. Bank N.A. as trustee for the certificate holders ("investors") of Wells Fargo Asset Securities Corporation Trust, Series 2006-AR1.

44.     This is fraud upon the court. Manufacturing evidence favorable to a plaintiff, or concealing evidence favorable to a defendant, and the concealment of that scheme would constitute fraud on the court. Bank of America v. Adeyiga, 2014 IL App (1st) 131252 at ¶78. "It is axiomatic that fraud ["upon the court"] vitiates everything." In re a Petition to Annex Certain Territory to the village of Willowbrook v. Lawrence, 37 Ill.App.2d 393, 402 (2nd Dist. 1962) The Servicer, Wells Fargo Bank, N.A., initiated the foreclosure action on December 28, 2011, not U.S. Bank, N.A. Wells Fargo Bank, N.A., merely used "U.S. Bank N.A., as Trustee" as the name of the Plaintiff, rather than its own name. Therefore, the Loughrans' affirmative defense of

lack of standing should be affirmed by the Court and the Court should dismiss this action based on U.S. Bank, N.A.'s lack of standing at the time that this lawsuit was filed on December 28, 2011, based on, among others, the second district appellate court's holding in <u>Deutsche Bank National Trust Co. v. Gilbert</u>, 2012 IL App (2d) 120164 at ¶24. ("We merely hold that where, as here, a foreclosure plaintiff fails to produce competent evidence rebutting the defendant's showing that the plaintiff lacked standing at the time the foreclosure action was filed, the action must be dismissed.")  The Court should grant all of the Loughran's attorneys fees and costs pursuant to 735 ILCS ILCS 5/15-1510 (a).

**WHEREFORE**, the Defendants, DANIEL LOUGHRAN & MARGARET LOUGHRAN, respectfully request that this honorable Court GRANT their motion for sanctions pursuant to Section 1-109 against Tena Andric and pursuant to Supreme Court Rules 137 and 219(c) against Plaintiff, U.S. Bank N.A. as Trustee for Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates Series 2006-AR1 and order the following:

    I.   Enter an appropriate sanction on the Plaintiff and its attorneys pursuant to Supreme Court Rule 219(c)(iv) striking the portion of Plaintiff's complaint stating that U.S. Bank has possession of the note and dismiss the case;

    II.   Enter an appropriate sanction pursuant to Supreme Court Rule 137 for all of the Loughrans' attorney fees and costs in having to defend this lawsuit;

    III. Enter a sanction pursuant to Supreme Court Rule 219(c) for attorney fees and costs and a monetary penalty for willful violation of the rules (including Rule 201(c)(2), Rule 201(k), Rule 204(a)(2));

    IV. Enter an order for an appropriate remedy of violation of section 1-109;

V. Award all of the Loughrans' attorney fees and costs pursuant to 735 ILCS 5/15-

    1510; and

VI. Grant any additional relief as justice demands under these circumstances.

Respectfully Submitted:

DANIEL LOUGHRAN & MARGARET LOUGHRAN

John Smith, One of the Attorneys for Defendants

John Smith
Law Office of John Smith
5062 Rockrose Court, Suite 4
Roscoe, IL 61073
Ph: 847-242-8401
Primary Email: john@johnsmithlawyer.com
ARDC #: 6270884

# EXHIBIT A

Loughrans' Reply to Response to Motion for Sanctions



 **Gmail**

**John Smith <johnpsmithlaw@gmail.com>**

## Tena Andric's Reponse to Motion for Sanctions

**Edward Anderson** <eanderson@bretzlawoffice.com>
To: John Smith <johnpsmithlaw@gmail.com>

Thu, May 3, 2018 at 2:48 PM

nope

**From:** John Smith <johnpsmithlaw@gmail.com>
**Sent:** Thursday, May 03, 2018 2:45 PM
**To:** Edward Anderson <eanderson@bretzlawoffice.com>
**Subject:** Tena Andric's Reponse to Motion for Sanctions

Ed,

I got her response in the mail, but no exhibits despite their references (A-H) in the body of the text.

Did you receive any Exhibits with the copy of response she served on you?

--

John Smith

Law Office of John Smith

5062 Rockrose Court, #4

Roscoe, IL 61073

Ph: (847)242-8401

www.JohnSmithLawyer.com

# EXHIBIT B

Loughrans' Reply to Response to Motion for Sanctions



Ex B

**MRLP**

McCalla Raymer Leibert Pierce, LLC
1 North Dearborn, Suite 1200
Chicago, IL 60602

Alabama • Georgia
Georgia • Illinois

Law Office of John Smith
5062 Rockrose Court, Suite 4
Roscoe, IL 61073

6107387797 R0S1

US POSTAGE >>> PITNEY BOWES
ZIP 60602
02 4W
0000345251 APR 22 2018
$ 001.21°

# EXHIBIT C

Loughrans' Reply to Response to Motion for Sanctions

*Ex. C*



ODYSSEY
**eFileIL**



Enter the details for this filing

**Filing Type**

EFileAndServe

**Filing Code**

Click to select Filing Code

**Filing Description**

**Client Reference Number**

**Comments to Court**

**Courtesy Copies**

ⓘ

Undo    Save Changes

Ex. C
Page 1 of 2



# EXHIBIT D

Loughrans' Reply to Response to Motion for Sanctions

 **Gmail**

John Smith <johnpsmithlaw@gmail.com>

## Judici Account Creation Information

**subscribe@judici.com** <subscribe@judici.com>
To: johnpsmithlaw@gmail.com

Wed, Mar 14, 2018 at 2:25 PM

Thank you for your interest in Judici.com

Please make a note of your login information.  Your password cannot be retrieved or seen by us.

We have assigned the following User Id to this account:

User ID:    29219

The information that was provided is below:


Name:   John Smith

Address:

Street 1:    5062 Rockrose Court
Street 2:    Suite 4
City:  Roscoe
State:  IL
Zip Code:    61073
Country:    US

$Ex\ D$

$p\ 1/2$

Contact Information:

Email: johnpsmithlaw@gmail.com
Phone:  847-242-8401

Business Information:

Type Of Business:    Legal


This is for notification ONLY, and you have not been charged for any services at this time.

If any purchases are made with this account, you will be notified by a seperate email.  All charges can be viewed from your account screen at any time.

To view your account information, make changes to your account, to view subscribed services or to view your billing history, please copy and paste the following URL into your browser:

http://www.judici.com/user/preferences.jsp

You will be prompted to login with the User Id and Password provided above.

 **Gmail**

John Smith <johnpsmithlaw@gmail.com>

## Judici Payment Confirmation

**subscribe@judici.com** <subscribe@judici.com>
To: johnpsmithlaw@gmail.com

Wed, Mar 14, 2018 at 2:26 PM

Judici.com
PO Box 803338 #66574,
Chicago, Illinois 60680-3338

Phone: 618-549-9846

Dear John Smith,

Thank you for your subscription request placed with Judici.com on 03/14/2018 14:26.

To get started off on the right foot, please consider joining us for a live training webinar. Check out
http://subscribersupport.judici.com/800 for the details.

Your payment is currently being processed. As soon as the payment for your order is approved, you will be emailed
the payment receipt.
Your confirmation number is: 281981.

Below are the order details.

$Ex \ D$

$p. \ 2/2$

For your convenience, you can also check your subscription order status online at:
https://www.judici.com/user/preferences.jsp

Please keep this email for future reference.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Order Details
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Website: www.judici.com

Confirmation Number: 281981
Payment Method: MASTERCARD
Transaction Date: 03/14/2018 14:26
Total: $2.99 USD

\*\*\*\*\*\*\*\*\*\*\*\*\*

Subscription Name:      Grundy County, IL 2011CH373 Case Watch
Price:      $2.99

\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT E

Loughrans' Reply to Response to Motion for Sanctions

$E_K E$

HOME | COURTS | SUBSCRIBERS | PREMIUM SERVICES


JUDICI

My: Cases | Schedule | Filings | Account

Login

This page is operated by Judici.com, not a court. Links to this page do not constitute endorsement by any court of the content, policies, or services offered here.

## Subscribe to Courtlook

| Subscription Information | | Six-Month Contract* | Monthly Equivalent |
|---|---|---|---|
| **Courtlook Subscription** Includes all participating courts. | Subscribe Now | $155.70 | $25.95 |
| * Court waiver | | | Refund Policy |

### Courtlook Overview:

A Courtlook subscription lets attorneys and their staff access info compiled from every case on which an attorney is listed by the court. This enables useful features such as:

- **24/7 case file access** in courts which offer Documents to the attorney of record (attorney accounts only)

- **Calendar feeds to automatically sync all hearings** on one or more attorney schedules right into Outlook and other calendar tools.

The service also lets you:

- **NEW! Subscribe to receive automatic e-mails** whenever the case is updated by the court, at no additional cost, using our Case Watch service. Just click **Subscribe to Case** on the Case Information page.

- **Search across 75+ Illinois courts** with one name or case search.

Visit subscribersupport.judici.com to learn how Courtlook can help attorneys, admin staff and judges, then sign up for a live online demo webinar if you want to know even more.

### Courtlook Screenshot:

# EXHIBIT F

Loughrans' Reply to Response to Motion for Sanctions

 **Gmail**

**John Smith <johnpsmithlaw@gmail.com>**

## Loughran - Notice re Plaintiffs motion to quash?

**Edward Anderson** <eanderson@bretzlawoffice.com>
To: John Smith <johnpsmithlaw@gmail.com>

Mon, Mar 5, 2018 at 7:38 AM

John,

In response to your queries:

I received Notice of Plaintiff's Motion to Quash late on the 28th. It had been mailed.

Nothing happened in Court with regard to the Motion.

I am not aware of a renewed Motion for Summary Judgment.

Attached is a copy of the Order entered on Thursday.

I've also attached copies of the Motion to Quash and other filings received recently.

Edward T. Anderson

Chuck Bretz & Associates, P.C.

58 N. Chicago St., 2nd Floor

Joliet, IL 60432

815-740-1545

eanderson@bretzlawoffice.com

**From:** John Smith [mailto:johnpsmithlaw@gmail.com]
**Sent:** Saturday, March 03, 2018 11:32 AM
**To:** Edward Anderson <eanderson@bretzlawoffice.com>
**Subject:** Loughran - Notice re Plaintiffs motion to quash?

[Quoted text hidden]

**3 attachments**

📄 **20180305080147.pdf**

86K

**20180305083934.pdf**
1698K

**20180305083801.pdf**
853K

# EXHIBIT G

Loughrans' Reply to Response to Motion for Sanctions

*Ex G*

PRIOR TO HEARING. SSO Motion/sumry jdgmt set for 11/16/2016 at 09:30 in courtroom E.

08/29/2016 NOTICE OF FILING FILED. AMENDED AFFIDAVIT AS TO MILTIARY SERVICE FILED. AMENDED AFFIDAVIT AS TO MILITARY SERVICE FILED. **UNASSIGNED**

08/08/2016 NOTICE OF MOTION SET FOR 8-31-16 AT 9:00 A.M. **UNASSIGNED**

07/05/2016 AFFIDAVIT REGARDING ATTORNEYS FEES FILED. ATTORNEY AFFIDAVIT FILED. MOTION FOR JUDGMENT FOR FORECLOSURE AND SALE FILED. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FILED. MOTION TO DISMISS PARTY DEFENDANTS FILED. MOTION FOR ORDER OF DEFAULT FILED. CERTIFICATE FILED. AFFIDAVIT AS TO MILITARY SERVICE FILED. AFFIDAVIT AS TO MILITARY SERVICE FILED. NOTICE OF FILING FILED. **UNASSIGNED**

02/17/2016 ATTY. LINDA SHEA FOR PLTF. PRESENT. DFDT. NOT PRESENT. CAUSE COMES ON FOR HEARING ON MOTION TO DISMISS. ORDERED THAT PLTF.S MOTION TO DISMISS IS GRANTED; DFDT.S AFFIRMATIVE DEFENSES ARE STRICKEN WITH PREJUDICE AND DFDT.S COUNTERCLAIM IS DISMISSED WITH PREJUDICE. SSO **LRP**

12/23/2015 NOTICE SENT TO JOHN P SMITH RETURNED AND FILED, UNABLE TO FORWARD **UNASSIGNED**

11/25/2015 ON COURT'S OWN MOTION, HEARING SET FOR 2/5/16 IS STRICKEN AND RESET TO 2/17/16 AT 9:30. SSO **UNASSIGNED**

10/28/2015 ATTY PRESENT FOR PLTF/COUNTER-DFDT. DFDT/COUNTER-PLTF NOT PRESENT. CAUSE COMES ON FOR STATUS/MOTION HEARING. BRIEFING SCHEDULE SET AND HEARING ON MOTION TO DISMISS SET FOR 2/5/16 AT 9:30. SSO Motion/dismiss set for 2/05/2016 at 09:30 in courtroom E. **LRP**

10/21/2015 NOTICE OF MOTION SET FOR 10-28-15 AT 9:00 A.M. PLAINTIFF'S MOTION TO STRIKE THE AFFIRMATIVE DEFENSES AND DISMISS THE COUNTERCLAIM FILED. **UNASSIGNED**

09/09/2015 ATTY CARL MEYER PRESENT FOR PLTF. ATTY ED ANDERSON PRESENT FOR DFDTS. CAUSE COMES ON FOR STATUS. ORDERED THAT PLTF'S ATTORNEY REPORTS IT IS INVESTIGATING A POTENTIAL SERVICE ISSUE AND STATUS SET FOR 10/28/15 AT 9:00. SSO Status hearing set for 10/28/2015 at 09:00 in courtroom E. **LRP**

06/24/2015 MOTION FOR SUBSTITUTION OF ATTORNEY FILED. **UNASSIGNED**

06/24/2015 ATTY KARL MEYER PRESENT FOR PLTF. ATTY NAMINKAS PRESENT FOR DFDT. CAUSE COMES ON FOR STATUS. ORDER ENTERED GRANTING SUBSTITUTION AND SETTING STATUS 9/9/15 AT **LRP**

# EXHIBIT H

Loughrans' Reply to Response to Motion for Sanctions

# FAX COVER SHEET

| TO | Pierce &amp; Associates |
| --- | --- |
| COMPANY | |
| FAXNUMBER | 13125514400 |
| FROM | LawCenter |
| DATE | 2017-05-22 17:12:11 GMT |
| RE | Motion May 24, 2017 (US Bank v Loughran) |

## COVER MESSAGE

Please find motion to follow.

WWW.MYFAX.COM

IN THE CIRCUIT COURT OF FOR THE THIRTEENTH JUDICIAL DISTRICT
GRUNDY COUNTY – MORRIS, ILLINOIS

US BANK NATIONAL ASSOCIATION, AS )
TRUSTEE FOR WELLS FARGO ASSET )
SECURITIES CORPORATION MORTGAGE )
PASS-THROUGH CERTIFICATES SERIES )
2006-AR1 )
)
)
               Plaintiff, )
) Case No.: 11 CH 373
   v. )
)
DANIEL LOUGHRAN & MARGARET LOUGHRAN, )
ET. AL. )
)
)
              Defendants. )

## NOTICE OF MOTION

To:   Pierce & Associates     Mayer Brown LLP
     One North Dearborn,   71 South Wacker Drive
     Thirteenth Floor      Chicago, IL 60606
     Chicago, IL 60602    Fax: (312)701-7711
     Fax: (312)551-4400

PLEASE TAKE NOTICE that on **May 24, 2017** at **9:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before Judge John Peterson, or another judge acting in his stead, of the Circuit Court of Grundy County, in the room ordinarily occupied by the judge at 111 East Washington Street, Morris, Illinois, and shall then and there present **DEFENDANTS' MOTION, PURSUANT TO SUPREME COURT RULE 183 FOR GOOD CAUSE SHOWN, FOR EXTENSION OF TIME TO FILE RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** a copy of which is attached hereto.

                         Respectfully submitted,

                         Edward Anderson
                         Defendants' Attorney

Edward Anderson
Chuck Bretz & Associates

58 N. Chicago Street
2nd Floor
Joliet, IL 60432

## PROOF OF SERVICE

John P. Smith certifies, under penalties as provided by law pursuant to 735 ILCS 5/1-109, that he served this notice by **faxing** and **personally serving** a copy to the above-listed attorney at the address and fax number indicated on May 22, 2017, before the close of business or before 5:00 p.m., and that this statement as set forth is true and correct.

John P. Smith

Edward Anderson
Chuck Bretz & Associates
58 N. Chicago Street
2nd Floor
Joliet, IL 60432

IN THE CIRCUIT COURT OF FOR THE THIRTEENTH JUDICIAL DISTRICT
GRUNDY COUNTY – MORRIS, ILLINOIS

US BANK NATIONAL ASSOCIATION, AS )
TRUSTEE FOR WELLS FARGO ASSET )
SECURITIES CORPORATION MORTGAGE )
PASS-THROUGH CERTIFICATES SERIES )
2006-AR1 )
                                   )
                                     )
                 Plaintiff, )
                                     ) Case No.: 11 CH 373
      v. )
                                       )
DANIEL LOUGHRAN & MARGARET LOUGHRAN, )
ET. AL. )
                                     )
                 Defendants. )

## DEFENDANTS' MOTION, PURSUANT TO SUPREME COURT RULE 183 FOR GOOD CAUSE SHOWN, FOR EXTENSION OF TIME TO FILE RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CONDUCT FURTHER DISCOVERY

**NOW COME** the Defendants, Daniel Loughran and Margaret Loughran, by and through

their attorneys, Chuck Bretz & Associates, and move this honorable court for an extension of

time to respond to the Plaintiff's motion for summary judgment for good cause shown and in

support thereof, state the following:

1.     Illinois Supreme Court Rule states:

**Rule 183. Extensions of Time**

The court, for good cause shown on motion after notice to the opposite party, may extend the
time for filing any pleading or the doing of any act which is required by the rules to be done
within a limited period, either before or after the expiration of the time.

2.     The defendants were originally represented and defended by attorney John Smith of Law

Office of John Smith, Ltd.

3. On June 24, 2015, a motion for substitution of attorneys was filed and defendants were thereafter represented and defended by Edward Anderson and the law firm of Chuck Bretz & Associates.

4. Thereafter, on October 21, 2015, Plaintiff filed a motion to strike the Defendants' affirmative defenses and dismiss their counter-claim.

5. On February 17, 2016, the Plaintiff's motion to strike the Defendants' affirmative defenses and dismiss their counter-claim was granted.

6. In its motion to strike the affirmative defenses filed October 21, 2015, Plaintiff for first time introduced a copy of the Note which differed from the "true copy of the Note" attached to the original complaint to foreclose mortgage which was filed December 28, 2011. Thus, almost 4 years after filing the original complaint to foreclose mortgage, the Plaintiff produced a copy of the Note endorsed in blank when the "true copy of the Note" attached to the original complaint was not endorsed in blank.

7. Defendants raised the affirmative defense of lack of standing of US Bank in their answer, so the issue was not waived. The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. A party's standing to sue must be determined as of the time the suit is filed. A party either has standing at the time the suit is brought or it does not. Deutsche Bank National Trust Co. v. Gilbert, 2012 IL App (2d) 120164, ¶15. The Note attached to the original complaint to foreclose listed Wells Fargo Bank N.A. as the mortgagee, not U.S. Bank N.A. If U.S. Bank lacked standing at the time of filing, the defendants were entitled to judgment in their favor on this issue. Id at ¶21.

8. Since the filing of Plaintiff's motion to strike Defendants' affirmative defenses and dismiss their counterclaim was filed shortly after the Defendants' substitution of attorney, and contained a copy of the Note that differed from the "true copy of the Note" attached to the original complaint to foreclose mortgage filed almost 4 years earlier, good cause is shown for the granting of an extension of time to file Defendants' response to Plaintiff's motion for summary judgment and conduct further discovery.

9. In Daleanes v. Bd. of Education of Benjamin Elementary School Dist., the court allowed the late filing of a response to a request to admit, and stated: "While the board or its attorneys might possibly have taken some different action to avoid their ignorance of pending judicial matters, confusion resulting from the changing of attorneys is an understandable phenomenon. Moreover, Daleanes fails to demonstrate significant prejudice resulting from the delay." Daleanes, 120 Ill. App. 3d 505, 510 (1983).

10. Similarly, where the issue of standing to bring an action must be determined as of the time the suit was filed, and the affirmative defense was raised in Defendants' answer, there is no undue or significant prejudice on the Plaintiff for the granting of Defendants' motion herein where the Note upon which the Plaintiff claims standing was not endorsed in blank at the time its original complaint to foreclose mortgage was filed on December 28, 2011. Deutsche Bank v. Gilbert at ¶21.

WHEREFORE the Defendants, Daniel Loughran and Margaret Loughran, respectfully request that this honorable court GRANT their motion for an extension of time to file their response to the Plaintiff's motion for summary judgment and conduct further discovery.

Respectfully Submitted:

_____
One of the Defendants' attorneys

Edward Anderson
Chuck Bretz & Associates
58 N. Chicago Street
2nd Floor
Joliet, IL 60432

# EXHIBIT I

Loughrans' Reply to Response to Motion for Sanctions

*Ex 1*

 **Gmail**

John Smith <johnpsmith...

## Loughran - Correspondence regarding Non-HAMP TPP

**John Smith** <johnpsmithlaw@gmail.com>                                    Wed, Mar 25, 2015 at 4:03 PM
To: Loughrand <loughrand@att.net>, loughranm <loughranm@att.net>

Dan,
I just received this from Charles Woodworth which is an attachment with the property appraisal used during the review process.
By the way, you should have your file in the mail Sat or Mon. I intend to send you a tracking number tomorrow, Thursday.
Truly,
John

---------- Forwarded message ----------
From: **Woodworth, Charles M.** <CWoodworth@mayerbrown.com>
Date: Wed, Mar 25, 2015 at 3:41 PM
Subject: RE: Loughran - Correspondence regarding Non-HAMP TPP
[Quoted text hidden]

---

**2 attachments**

📄 **Loughran - 20150313141027015 [emailed 2015-03-25].pdf**
7637K

📄 **Loughran - 20150313141027015 [emailed 2015-03-25] (1).pdf**
7637K

*Ex I*
*p. 1 of 5*

 **Gmail**

## Loughran - Correspondence regarding Non-HAMP TPP

**Loughrand** <loughrand@att.net>                                    Thu, Mar 26, 2015 at 8:18 AM
To: John Smith <johnpsmithlaw@gmail.com>

Thanks for all your help John. I may have the next attorney call you if he has any questions. I will send you the contact information so you can forward this to Charles and he stops sending the emails to you. I appreciate all your help and hope the future brings us both to a healthier and better place.

Dan Loughran
Cell # (630) 774-4388

[Quoted text hidden]

    [Quoted text hidden]

    [Quoted text hidden]
    [Quoted text hidden]
    [Quoted text hidden]

    [Quoted text hidden]
    [Quoted text hidden]
    [Quoted text hidden]

    [Quoted text hidden]

    [Quoted text hidden]
    [Quoted text hidden]

    <image001.png>

$Ex\ I$
$p.\ 2\ of\ 5$

Please consider the environment before printing this e-mail. If you need to print it, please consider printing it double-sided.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

 **Gmail**

John Smith

---

## Loughran - Correspondence regarding Non-HAMP TPP

**John Smith** <johnpsmithlaw@gmail.com>                                      Thu, Mar 26, 2015 at 11:46 AM
To: Loughrand <loughrand@att.net>

Thanks Dan. I hope so too. I'm glad to have met.
[Quoted text hidden]

$$E_X \ \ I$$
$$p. \ 3 \ of \ 5$$

 Gmail

John Smith <johnpsmithlaw@...

---

## Loughran - Correspondence regarding Non-HAMP TPP

**Loughrand** <loughrand@att.net>
To: John Smith <johnpsmithlaw@gmail.com>

Mon, Apr 6, 2015 at 3:22 PM

John,

I received the file in the mail last Friday.

Thank You,

Dan Loughran
Cell # (630) 774-4388


[Quoted text hidden]

> [Quoted text hidden]

> [Quoted text hidden]
> [Quoted text hidden]
> [Quoted text hidden]


> [Quoted text hidden]
> [Quoted text hidden]
> [Quoted text hidden]


> [Quoted text hidden]


> [Quoted text hidden]
> [Quoted text hidden]

> <image001.png>

Ex I
p. 4 of 5

Please consider the environment before printing this e-mail. If you need to print it, please consider printing it double-sided.

---

This email and any files transmitted with it are intended solely for the use of the individual or entity to

Case: 1:19-cv-04023 Document #: 1 Filed: 06/14/19 Page 252 of 255 PageID #:252  5/9/18, 9:54 PM

 Gmail

## Loughran - Correspondence regarding Non-HAMP TPP

**John Smith** <johnpsmithlaw@gmail.com>
To: Loughrand <loughrand@att.net>

Mon, Apr 6, 2015 at 3:56 PM

Okay.
Did you find a new attorney?
Just let me know when he's filing his appearance with court.
Thanks Dan.
[Quoted text hidden]

$E_x \; I$
$p. 5 \; of \; 5$

# EXHIBIT J

Loughrans' Reply to Response to Motion for Sanctions

 **Gmail**

John Smith <johnpsmithlaw@gmail.com>

## 9662 (11-CH-373) - Extension Request to Respond to Request to Produce

**John Smith** <johnpsmithlaw@gmail.com>
To: Edward Anderson <eanderson@bretzlawoffice.com>

Wed, Jul 26, 2017 at 10:54 AM

Hi Ed,

I received this request for extension from this firm. Are they attorneys of record? IAug 9 is the next court date. Do you have an opinion on their request for extension? I sent request to produce the pooling and servicing agreement and documents related to the securitization of the mortgage and note.

Please advise.

Thanks,
John Smith

---------- Forwarded message ---------
From: Tena Andric <Tena.Andric@mccalla.com>
Date: Wed, Jul 26, 2017 at 9:39 AM
Subject: 9662 (11-CH-373) - Extension Request to Respond to Request to Produce
To: john@johnsmithlawyer.com <john@johnsmithlawyer.com>
Cc: Nicholas Holzkopf <Nicholas.Holzkopf@mccalla.com>


9662


Hello John,


On the above-referenced file, we seek an extension through, and including, August 9, 2017 to respond to the Request to Produce issued to Plaintiff by Defendants Daniel and Margaret Loughran on June 30 , 2017. Please confirm your agreement to the same. Thank you.


Tena Andric
**Litigation Attorney**

McCalla Raymer Leibert Pierce, LLC
1 N. Dearborn Suite 1200
Chicago, IL 60602
Office: +1 (312) 476-5168
Tena.Andric@mccalla.com

Ex J
p. 1 of 2

Please note the change in my email addresses to **Tena.Andric@mccalla.com**. While my previous email address will continue to function, please use this new email address in further correspondence to avoid delays.

### "Pursuant to the Fair Debt Collection Practices Act, you are advised that this office is deemed to be a debt collector and any information obtained may be used for that purpose."

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

--
John Smith
Law Office of John Smith
5062 Rockrose Court, #4
Roscoe, IL 61073
Ph: (262)220-9293
www.JohnSmithLawyer.com

**MRLP**

McCalla Raymer Leibert Pierce, LLC
Alabama • Connecticut • Florida
Georgia • Illinois • Mississippi

**image001.png**
18K

$Ex \ J$

$p - 2 \ of \ 2$