## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DANIEL LOUGHRAN and MARGARET LOUGHRAN, on behalf of themselves and all others similarly situated,<br><br>　　　　*Plaintiffs,*<br><br>　　　v.<br><br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE, et al.,<br><br>　　　　*Defendants.* | No. 19 C 4023<br><br>Judge Virginia M. Kendall |

## <u>MEMORANDUM OPINION AND ORDER</u>

Daniel and Margaret Loughran are homeowners who are parties to state-court foreclosure proceedings in Grundy County, Illinois. Those proceedings, the Loughrans allege, are a sham—an argument they have also advanced in state court. Apparently unhappy with the state court's handling of the case so far, they have filed this federal lawsuit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Racketeer Influenced and Corrupt Organizations Act ("RICO") and more. They also seek class certification on behalf of a class who might have similar claims, but their motion for class certification was stayed pending adjudication of any motions to dismiss. (Dkt. 40).

Defendants Wells Fargo & Company and Wells Fargo Bank, N.A., and Defendants McCalla Raymer Liebert Pierce, LLC ("McCalla"), Pierce & Associates, P.C. ("Pierce"), and Mayer Brown LLP ("Mayer Brown") (collectively, the "Law

Firm Defendants") have filed separate motions to dismiss, joining in each other's motions. While the Wells Fargo Defendants' motion focuses on the substance of the complaint (Dkt. 48), the Law Firm Defendants' motion primarily argues that a stay is appropriate pending resolution of the Grundy County case (Dkt. 43). Given the parallel proceedings in state court, the Court grants the Defendants' motion to stay the case.

## BACKGROUND

The following factual allegations are taken from the Loughrans' amended complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Although the amended complaint spans nearly 200 pages, only a summary of the alleged facts is necessary. The Court disregards the multitude of legal conclusions the Loughrans have presented as facts. *See Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015).

In 2005, the Loughrans built the home they currently reside in, taking out a short-term loan to do so. (Dkt. 5 ¶ 103). In December 2005, the Loughrans refinanced that loan with a $395,280, 30-year mortgage on their home from Wells Fargo Bank, N.A. ("Wells Fargo"). (*Id.* at ¶ 104). The Loughrans' mortgage (allegedly, they say) became part of a pool of loans that were securitized through a trust called "Wells Fargo Asset Securities Corporation Mortgage Backed Pass-Through Certificates, Series 2006-AR1." (*Id.* at ¶ 43). The trust is governed by a Pooling and Servicing Agreement ("PSA"), which provides that U.S. Bank is the Trustee for the trust. (*Id.*

at ¶¶ 43, 117). The Loughrans continued making their monthly payments to Wells Fargo. (*Id.* at ¶ 107).

In 2011, the Loughrans defaulted on their mortgage. (*Id.* at ¶¶ 109–110). The Loughrans sought a modification of their mortgage under the Home Affordable Modification Program ("HAMP") but were denied in what they call a "shake down." (*Id.* at ¶ 112).

In December 28, 2011, the Loughrans were named as defendants in a foreclosure action filed in Grundy County Circuit Court. (*Id.* at ¶ 116). The named plaintiff in the foreclosure action was U.S. Bank, the trustee named in the PSA. (*Id.* at ¶ 116).

The Loughrans allege that U.S. Bank has no standing and therefore the whole foreclosure proceeding is "illusory." (*Id.* at ¶ 401; s*ee also, e.g., Id.* at ¶¶ 391–95). Wells Fargo, not U.S. Bank, the Loughrans say, is actually the trustee. (*Id.* at ¶ 265). Instead, Wells Fargo is pulling the strings and using U.S. Bank as a front to foreclose on the Loughrans. Wells Fargo's motive in fraudulently filing suit under U.S. Bank's name, the Loughrans say, is to avoid the affirmative defenses and counterclaims that borrowers might otherwise be able to assert against Wells Fargo. (*Id.* at ¶ 3). Wells Fargo's attorneys, the Loughrans claim, perpetuated the fraud by filing actions and pleadings in the improper suit. (*Id.* at ¶¶ 411–12, 423(a)–(r)).

As the Loughrans state, and as the Law Firm Defendants have highlighted (and attached as an exhibit (Dkt. 43-1)[1]), in January 2019, the Loughrans filed

---

[1] The Court may take judicial notice of court orders, public records, and items appearing in the record of another court proceeding. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

affirmative defenses in the state-court case, asserting "(i) lack of standing by US Bank, N.A.; (ii) complaint filed without authorization is null; (iii) fraud (upon the court)." (Dkt. 5 ¶ 338). (This was their second set of affirmative defenses, the first was stricken (*Id.* at ¶ 235)).

In June 2019, the Loughrans brought this suit in federal court, alleging in their amended complaint ten counts against Wells Fargo, Wells Fargo & Company, and the Law Firm Defendants. These counts, discussed further below, almost entirely mirror arguments the Loughrans have made in the state-court proceedings.

## DISCUSSION

Defendants argue that a stay pursuant to the *Colorado River* abstention doctrine is appropriate here. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Motions seeking abstention under the *Colorado River* doctrine are typically filed pursuant to Federal Rule of Civil Procedure 12(b)(1), and the Court will construe the Defendants' motion as one filed pursuant to that rule. When evaluating such a motion, the Court must accept all well-pleaded facts as true and draw reasonable inferences in favor of the plaintiff when determining whether it should decline to exercise jurisdiction and stay the proceeding. *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). In its consideration, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City*

*of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

"Generally speaking, 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court.'" *Huon v. Johnson & Bell, Ltd.*, 657 F3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817). "The *Colorado River* doctrine, however, creates a narrow exception to that rule, allowing federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817). The Court's duty "is not to find some substantial reason for the exercise of federal jurisdiction but instead to ascertain whether there exist exceptional circumstances. . . to justify the surrender of that jurisdiction." *Id.* (internal quotation marks omitted).

In determining whether to abstain under the *Colorado River* doctrine, the Court conducts a two-part inquiry. First, it must decide whether the state and federal actions are parallel. *Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018). The two suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum" and there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018–19 (7th Cir. 2014) (internal quotation marks omitted).

Second, if the Court finds that the suits are parallel, it must weigh ten non-exclusive factors to determine the appropriateness of abstention:

> (1) whether the state has assumed jurisdiction over property;
> (2) the inconvenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the order in which jurisdiction was obtained by the concurrent forums;
> (5) the source of governing law, state or federal;
> (6) the adequacy of state-court action to protect the federal plaintiff's rights;
> (7) the relative progress of state and federal proceedings;
> (8) the presence or absence of concurrent jurisdiction;
> (9) the availability of removal; and
> (10) the vexatious or contrived nature of the federal claim.

*Id.* at 1018. There is no single determinative factor, instead, all of the factors must be carefully weighed. *Id.* at 1018.

## A. The State and Federal Actions are Parallel

Both the foreclosure action and the instant suit involve substantially the same parties contemporaneously litigating similar factual and legal issues. The parties are not identical; although the Loughrans are parties to both suits, Wells Fargo and the Law Firm Defendants are not parties to the state-court foreclosure action. "[W]hile the various defendants are not identical in the two cases, their *interests* are nearly identical." *Id.* at 1019. Wells Fargo, the Loughrans allege, is the party actually controlling the state-court case. Wells Fargo itself describes that it was responsible for bringing the foreclosure action because, under the servicing agreement, it was required to bring suit against the Loughrans in the name of U.S. Bank. (Dkt. 48 at 13-14). *See, e.g., Nieves v. Bank of Am., N.A.*, No. 14-CV-2300, 2015 WL 753977, at *4 (N.D. Ill. Feb. 20, 2015) (finding state court foreclosure action to be substantially

similar when the loan servicers, who were not named in the state suit, were named in the federal suit). And the Law Firm Defendants are only named in the federal suit as a function of their involvement in the state suit. *See, e.g., Kinzy v. Howard & Howard*, PLLC, No. 16 C 8230, 2017 WL 168480, at *4 (N.D. Ill. Jan. 17, 2017)

Despite the Loughrans' arguments to the contrary, the foreclosure action and this action also involve substantially the same factual and legal issues. In the foreclosure action, the Loughrans have asserted affirmative defenses alleging that the foreclosure action should not have been brought in U.S. Bank's name and that Wells Fargo employees perpetuated a fraud on the court by creating false documents used in the foreclosure action. (Dkt. 43-1 at 2–3). Count I of the amended complaint filed in this Court alleges a violation of the FDCPA against Wells Fargo, McCalla, and Pierce based on their filing of the foreclosure suit, including filing on behalf of a plaintiff "that was not the actual party" and submitting false documents. (Dkt. 5 ¶¶ 449–456). Count II alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against Wells Fargo also for the filing of the foreclosure action by an improper party and submitting false documents. (*Id.* at ¶¶ 470–72). Counts VI, VII, and IX allege a violation of RICO and a RICO and civil conspiracy against Wells Fargo and the Law Firm Defendants, specifically that they engaged in a scheme to defraud borrowers by filing foreclosure suits in the name of improper trustees without standing and by filing false documents. (*Id.* at ¶¶ 506–07, 517, 522–23). Count VIII alleges a state-law fraud claim against Wells Fargo and the Law Firm Defendants for the falsities in their filings in the state-court action. (*Id.* at ¶ 520).

And finally, Count X alleges a state-law claim for the Intentional Infliction of Emotional Distress as a result of the various actions of Wells Fargo and the Law Firm Defendants. (*Id.* at ¶¶ 526–29).

Counts III–V assert violations of the FDCPA and the Illinois Consumer Fraud and Deceptive Business Practices Act and state-law fraud claims against Wells Fargo. These claims are premised on the denial of the Loughrans' HAMP modification. The issues in these claims "while not identical, are substantially the same." *Freed*, 756 F.3d at 1020. These counts are heavily premised on the questions of whether Wells Fargo was making misrepresentations when it stated that it was limited in what it could do to modify the Loughrans' loan given its servicing agreement and whether the trust was in fact the holder of the mortgage. (Dkt. 5 ¶¶ 481–482, 486, 494, 499). These arguments are the same as those advanced by the Loughrans in their state-court lawsuit through their affirmative defenses, and that case is well underway. Additionally, the FDCPA claim is called into question by the issues presented in the state-court suit. Specifically, Wells Fargo could only be a debt collector for the purposes of the FDCPA if it is a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Again, whether Wells Fargo is a creditor attempting to collect a debt using a name other than its own is an argument squarely at issue in the state-court litigation. Therefore, the "factual allegations and legal analyses" involved in Counts III–V and the state-court case

"largely overlap, and the issues will be resolved largely by referencing the same facts and evidence." *Freed*, 756 F.3d at 1020.

Should the state court determine that none of the Loughrans' affirmative defenses are viable and that foreclosure is proper, the Loughran's federal suit would be largely resolved, which is the "critical question" in considering whether a state and federal case are parallel. *See Huon*, 657 F.3d at 646. Given the overlap between the cases, the Court concludes that the actions are parallel.

### B. The Factors Weigh in Favor of Abstention

Because the foreclosure action and the instant action are parallel, the Court must next determine whether extraordinary circumstances militate in favor of abstention by considering the ten nonexclusive factors described above. The Seventh Circuit has noted that this Court "is given the discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand." *Freed*, 756 F.3d at 1021.

The majority of the *Colorado River* factors weigh in favor of abstention. Relevant to the first, fourth, and seventh factors, the state court has assumed jurisdiction over the property at issue in a suit filed in 2011 in which there have been multiple hearings and discovery is ongoing. Conversely, the federal action was filed only a few months ago and is only at the motion-to-dismiss stage. These factors weigh heavily in favor of abstention. The third factor, regarding the desirability of avoiding piecemeal litigation, also weighs in favor of abstention because the foreclosure action will likely dispose of a majority of the factual and legal issues presented in this case.

Abstaining would prevent the parties from simultaneously litigating mirror issues in state and federal court and save judicial resources as *Colorado River* intended. *See* 424 U.S. at 817. The sixth factor weighs in favor of abstention; the Court is staying, not dismissing, the case, which allows the Loughrans the "possibility to revive [their] federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate." *Freed*, 756 F.3d at 1023. The tenth factor, "the vexatious or contrived nature of the federal claim," *Id.* at 1018, weighs heavily in favor of abstention as it appears from the Loughran's complaint and pleadings that they filed this suit, in part, because they do not like how the state court has been handling the foreclosure action and are seeking to forum shop. *See* Dkt. 5 ¶ 326 (noting that the Loughrans have tried to have the judge presiding over the state-court proceedings removed for cause); Dkt. 58 at 13–19 (detailing a contentious exchange with the state court). The fifth factor is neutral; although the Loughrans assert federal claims they also assert multiple state-law claims. The Eighth factor is also neutral, there is concurrent jurisdiction for the claims. As to the HAMP-related claims, the Loughrans could have, and did, assert a third-party complaint against Wells Fargo alleging these claims in the state-court action but chose to withdraw that complaint, further evidence of their forum-shopping (Dkt. 5 ¶¶ 315, 320, 329, 335). *Cf. Brown v. City of Chicago*, 771 F.3d 413, 416 (7th Cir. 2014) (discussing the need to prevent forum shopping in cases where a litigant seeks to dismiss a case after receiving an unfavorable ruling). Only two factors weigh against abstention, the second and ninth, as Defendants concede the Loughrans could not have removed the

state-court case and both cases are pending in a relatively close geographical area. *See Freed*, 756 F.3d at 1021. These two factors, however, do not outweigh the significant reasons to abstain.

The Court determines that abstention is appropriate and stays this case to allow a final judgment to be rendered in the state-court foreclosure action.

<u>**CONCLUSION**</u>

The Law Firm Defendants' motion to stay (joined by the other Defendants) is granted pursuant to *Colorado River*. The Court dismisses Defendants' motions to dismiss without prejudice; Defendants may refile those motions to dismiss upon resolution of the state-court foreclosure action. The Court strikes the Loughrans' motion for class certification (Dkt. 26) with leave to refile pending resolution of the state-court foreclosure action.

Virginia M. Kendall
United States District Judge

Date: November 27, 2019